UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

      - against -                                         S2 10 CR 228 (LTS)

DANIEL BONVENTRE,

           Defendant.

---

### REPLY MEMORANDUM IN SUPPORT OF
### DANIEL BONVENTRE'S PRETRIAL MOTIONS

 

Andrew J. Frisch
Jeremy B. Sporn
The Law Offices of Andrew J. Frisch
40 Fulton Street, 23rd Floor
New York, New York 10038
(212) 285-8000
(646) 304-0352 (facsimile)
afrisch@andrewfrisch.com

July 9, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    - against -                                  S2 10 CR 228 (LTS)

DANIEL BONVENTRE,

    Defendant.

---

## REPLY MEMORANDUM IN SUPPORT OF DANIEL BONVENTRE'S PRETRIAL MOTIONS

1. **The Government's Refusal to Specify Whether the Theory of the Indictment is that Mr. Bonventre Knowingly Participated in the Ponzi Scheme, if Permitted to Stand, Further Supports His Motion for a Severance from Co-Defendants and Requires that Allegations Against Hm About the Ponzi Scheme be Struck as Unduly Prejudicial Surplusage**

      When Your Honor denied Mr. Bonventre's motion to dismiss the indictment, it said that Mr. Bonventre and his co-defendants "are former employees of BLMIS who are charged with participating in the Ponzi scheme uncovered at about the time of Bernard L. Madoff's December 11, 2008 arrest." Amended Order of April 5, 2011, at 2. The Court's statement of the case was apparently based on the indictment and the government's description of its theory in its various submissions. See, e.g., Gov't Memo of Jan. 28, 2011, at 6-8.

      According to the government's response to Mr. Bonventre's motion for particularization, however, the Court's statement of the case may or may not be accurate. On the one hand, the government advises that the charged crimes do not require the jury's finding of Mr. Bonventre's knowing participation in the Ponzi scheme. On the other hand, having saturated the indictment with detailed allegations about the Ponzi scheme, the government claims that the jury

2

might find that Mr. Bonventre participated in the Ponzi scheme even though not required to do so. Gov't Response at 82. Further, notwithstanding an indictment so overbroad and unclear so as to confuse Your Honor about the government's theory of liability, the government claims that Mr. Bonventre is not entitled to know whether or not the government's theory is that he participated in the Ponzi scheme. Gov't Response at 81-82.

Peter Madoff's recent guilty plea helps illustrate the government's violation of Mr. Bonventre's rights under the Due Process Clause to be fairly advised of the charges against him. Peter Madoff told Your Honor as follows:

> [A]t no time before December 2008 was I ever aware that my brother Bernard Madoff, or anyone else at BLMIS, was engaged in a Ponzi scheme. I truly believed that my brother was a brilliant securities trader ho successfully traded for his customers' accounts. . . .
>
> [I] dedicated almost 40 years to building a legitimate securities market-making business that I was proud of and that was well regarded in the industry . . . . I worked long hours for my brother to build a market-making business that challenged the larger exchanges and was the envy of Wall Street firms . . . .
>
> My respect and admiration for my brother only grew over the decades, as he became one of the most successful and best regarded traders on Wall Street. He held important positions within the industry, including chairman of the NASDAQ. Among the most prominent members of te securities industry – including high-ranking officials at the SEC – my brother was widely viewed as one of the most honorable as well as the most successful traders of our time, and no one believed it more than I did. I revered him and trusted him implicitly.

Plea Minutes at 30-32.

As Peter explained at his guilty plea, he was a senior member of BLMIS and played a role in the investment advisor business: among other things, he signed or approved certain documents about purported oversight of the business and others related to BLMIS's registration with the SEC as an investment advisor. Peter, however, "was not involved in [his]

3

brother's trading or investment activity for customer funds." Plea Minutes at 31, 35-38.

Mr. Bonventre, like Peter Madoff, worked at BLMIS for decades and had functions that involved the investment advisory business, but they both had no involvement in the investment advisory trading or activity in customer funds. Peter could no more be charged with the Ponzi scheme than Mr. Bonventre, but Your Honor has reasonably read the indictment as so charging Mr. Bonventre, while the government declines to tie itself to any particular theory.

Due process forbids this kind of gamesmanship. In seeking an answer to the simple question of whether Mr. Bonventre is charged with the Ponzi scheme, he is not seeking evidentiary detail or an expansive preview of the government's case-in-chief. *See* Govt's Response at 47-51. Rather, Mr. Bonventre wants and needs to know whether he is charged with knowing participation in the Ponzi scheme. The government's strategy is unmistakably plain: it wants to associate Mr. Bonventre with the most stunning Ponzi scheme in history and reap the benefits of all the prejudice that such an association would cause, while declining to specify whether the securities fraud with which he is charged is based on the Ponzi scheme or something else. Mr. Bonventre is entitled to know whether the government's theory of securities fraud is based on the Ponzi scheme, his alleged role in falsifying books records, his alleged trades in his BLMIS investment account, something else, or some combination thereof. The government cannot be permitted to throw everything against the wall, see what might stick and then claim in retrospect that the indictment provided adequate notice.

The consequences of the government's refusal to particularize its theory, if permitted to stand, creates a variety of unacceptable consequences, creates the need for certain new motions described below, and complicates the Court's ability to preside over the case

effectively:

    1. Mr. Bonventre cannot adequately prepare for trial if the government does not specify its theory of securities fraud. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). Particularization is especially necessary where, we here, the crimes charged encompass a broad range of conduct. *See Federal Criminal Practice: A Second Circuit Handbook* (11th Ed. 2011), Gordon Mehler, John Gleeson, & David C. James, § 14-3, at 230 (citing *United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2d Cir. 1988) and *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998)). By seeking this particularization about the government's theory of securities fraud, Mr. Bonventre seeks only the most fundamental information about the government's charges: which of the indictment's allegations is truly the basis for the government's charge against him of securities fraud.

    2. If the jury can convict Mr. Bonventre of securities fraud without finding that he knowingly participated in the Ponzi scheme, many of the indictment's allegations are surplusage and should be struck, including, but not limited to, those based on Bernard Madoff's split-strike conversion strategy, and co-defendants' actions in managing investor accounts (Indictment, ¶¶ 10-20, 34-43). *See United States v. Richards*, 302 F.3d 58, 67 n. 6 (2d Cir. 2002) (allegations in an indictment that the government need not prove as essential elements of the charged offenses are surplusage). A motion to strike surplusage from an indictment should be granted when the "challenged phrases are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Ferguson*, 653 F.3d 61, 67 n. 32 (2d Cir. 2011) (quoting *United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996)); *see also United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 1999). Depending on how the Court resolves Mr.

Bonventre's motion for particularization, he may move to strike allegations about the Ponzi scheme as surplusage. *See United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008); *see also United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992) (precluding evidence of uncharged related conspiracies in order to protect defendants from guilt by association because while relevant, its probative value substantially outweighed by danger of unfair prejudice).

   3. Whether or not Mr. Bonventre is charged with knowing participation in the Ponzi scheme, at least two of his co-defendants appear to be so charged. For example, the indictment describes the conduct of Ms. Bongiorno and Ms. Crupi, who worked within the investment advisory business and (unlike Mr. Bonventre and Peter Madoff) handled customer accounts, as knowing participation in the Ponzi scheme. The government's civil forfeiture complaints against Bongiorno and Crupi leave no doubt that the government's theory is that Bongiorno and Crupi knowingly participated.

   The government argues that "[e]ach defendant had a role in the conspiracy that was vital to perpetrating and/or concealing the overall fraud." Gov't Response at 26. The "overall fraud," however, as Your Honor has noted [Amended Order of April 5, 2011, at 2] is the Ponzi scheme, but it appears from the government's equivocation that Mr. Bonventre is not charged with the Ponzi scheme. The scope of BLMIS's activities and its employees' disparate roles are too wide-ranging and occurred over too many decades for the government to throw everyone into one case and parrot boilerplate arguments about joinder. It is not the potential for undue prejudice that counsels against the government's approach, it is the reality of it.

   4. The government refusal to say whether Mr. Bonventre is charged with the Ponzi scheme will complicate the Court's ability to resolve motions *in limine* or at trial to

exclude evidence. *See Figueroa*, 618 F.2d at 943 (requiring trial court to make conscientious assessment of whether probative value on a disputed issue is substantially outweighed by prejudicial effect); *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982) (conscientious assessment required to avoid acting arbitrarily). If the government is permitted to leave its accusations muddled and vague as to the Ponzi scheme and Mr. Bonventre's participation in it, the Court will be less able to determine relevance and weigh prejudice and the probative value of any such evidence down the line.[1]

2. The Government Should Be Directed to Narrow the Scope of the 43 Gigabytes on Mr. Bonventre's Work Hard Drive, Just as it Narrowed the Scope of Its Database

The government in opposition to Mr. Bonventre's motion for narrowing the scope of the 43 gigabytes of documents on his office hard drive has declined to posit any rational reason why it cannot immediately do so. As Mr. Bonventre demonstrated in his initial submission, the government narrowed the scope of its digitized database without limiting its ultimate identification of documents as exhibits, nor without any prejudice to its interests whatsoever. Given the unmanageable volume of discovery in this case, the Court should order the government do narrow the scope of the 43 gigabytes just as it did with the database.

3. The Government Should Be Directed to Identify the False Records and Constituent Entries on Which it Will Rely to Prove Founts Three and Four

Counsel for Jerome O'Hara and George Perez have comprehensively responded to the government's refusal to identify the false records and constituent entries on which it will reply to prove Counts Three and Four of the Indictment. Mr. Bonventre joins in their response

---

[1] Mr. Bonventre reserves the right to make formal motions to both preclude evidence and to strike surplusage, but is unable to do so effectively until the government commits to whether or not he knew of the Ponzi scheme.

and incorporates their response as if fully set forth here. In sum, the government's response does not identify the particular documents on which the government will rely to prove these counts. Instead, the government regurgitates its theory of the case [Gov't Response at 64-76], which is wholly inadequate to permit Mr. Bonventre and his expert witnesses to examine the particular false records and constituent entries on which the government will rely and prepare to respond.

The government would not be prejudiced if ordered to identify the false records and entries on which it will rely. The government resists this disclosure for one of two reasons: it has yet to do the work toward identifying the specific documents and entries, or it seeks strategic advantage by keeping Mr. Bonventre in the dark. Neither reason is legitimate. For the reasons stated in the submission filed by Mr. O'Hara and Mr. Perez, the Court should order the government to identify the false records and constituent entries on which it will rely.

Respectfully submitted,

*/s/ Andrew J. Frisch*
Andrew J. Frisch
Jeremy B. Sporn
The Law Offices of Andrew J. Frisch
40 Fulton Street, 23rd Floor
New York, New York 10038
(212) 285-8000
(646) 304-0352 (facsimile)

*Attorneys for Daniel Bonventre*