UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                     :

UNITED STATES OF AMERICA        :
                                       :

          v.                    :       10 CR 228 (LTS)
                                       :

DANIEL BONVENTRE, ANNETTE     :
BONGIORNO, JO ANN CRUPI, a/k/a "Jodi,"   :
JEROME O'HARA, and GEORGE PEREZ   :
                                       :

------------------------------------------------------------------X


### REPLY MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMENTAL PRETRIAL MOTIONS ON BEHALF OF JEROME O'HARA AND GEORGE PEREZ

Gordon Mehler
Law Offices of Gordon Mehler PLLC
747 Third Avenue, 32nd Floor
New York, NY 10017-2803
(212) 661-2414

*Attorneys for Jerome O'Hara*


Larry H. Krantz
Krantz & Berman LLP
747 Third Avenue, 32nd Floor
New York, NY 10017-2803
(212) 661-0009

*Attorneys for George Perez*

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................... 1

I.    THE DEFENDANTS ARE ENTITLED TO A BILL OF PARTICULARS SETTING
FORTH THE SPECIFIC FALSE DOCUMENTS THAT FORM THE BASIS OF COUNTS 3
AND 4 OF THE INDICTMENT, AND THE ENTRIES ON THOSE DOCUMENTS THAT THE
DEFENDANTS ALLEGEDLY KNEW TO BE FALSE ..................................................... 1

   A.   The Particulars Sought Here Are Not Evidentiary in Nature, But Rather, Go to the Very Heart
   of the Crimes Charged, and are Crucial for the Preparation of the Defense and to Avoid Unfair
   Surprise at Trial.................................................................................................................. 3

   B.   Neither the Indictment, Nor the Complaint, Nor the Government's Discovery Letter,
   Sufficiently Particularize the Documents Forming the Basis of Counts 3 and 4 ................................ 6

   C.   The Government Erroneously Distinguishes *Bortnovsky*, And Otherwise Relies On Inapposite
   Authority ........................................................................................................................ 13

   D.   There is No Danger of Unfair Prejudice to the Government ........................................ 17

II.   THE DEFENDANTS ARE ALSO ENTILED TO A BILL OF PARTICULARS AS TO
COUNT 1 .................................................................................................................... 19

III.  THE DEFENDANTS CONSENT TO THE COURT'S *IN CAMERA* REVIEW OF THE
REDACTED *BRADY* MATERIAL ............................................................................. 19

IV.   THE SEVERANCE MOTION OF MR. O'HARA AND MR. PEREZ SHOULD BE
GRANTED.................................................................................................................. 20

CONCLUSION ............................................................................................................. 24

This Reply Memorandum is filed in further support of the motions of defendants George Perez and Jerome O'Hara for a bill of particulars and for a severance.  For the reasons set forth below, the defendants' motions should be granted.

<u>ARGUMENT</u>

I. **THE DEFENDANTS ARE ENTITLED TO A BILL OF PARTICULARS SETTING FORTH THE SPECIFIC FALSE DOCUMENTS THAT FORM THE BASIS OF COUNTS 3 AND 4 OF THE INDICTMENT, AND THE ENTRIES ON THOSE DOCUMENTS THAT THE DEFENDANTS ALLEGEDLY KNEW TO BE FALSE**

Counts 3 and 4 of the Indictment, which comprise the only substantive charges against Mr. Perez and Mr. O'Hara, charge that the defendants caused BLMIS to keep false and fraudulent books and records of a broker-dealer (Count 3), and false and fraudulent records of an investment advisor (Count 4).  As to these two counts, defendants Perez and O'Hara have moved for a bill of particulars seeking the most critical and basic charging information:  *the specific false documents that form the basis of each count, and the specific entries on those documents that these particular defendants, respectively, allegedly knew to be false*.

As explained in defendants' moving memorandum, the reason for this request – and why it is so crucial – is that the Indictment, despite its length, *does not identify a single specific document covered by Counts 3 or 4, nor does it delineate a single entry on any of those documents that the defendants allegedly knew to be false.*  Rather, the Indictment speaks solely in terms of *generic categories* of documents and *generic categories* of computer programs, and even then, refers to these generic categories as illustrative, rather than exclusive (i.e., "among other documents").  Thus, defense counsel are truly lost in a sea of millions of documents produced by the government in discovery -- covering a 16 year period -- with no means to determine which of those documents form the basis of the substantive charges against Mr. Perez and Mr. O'Hara, respectively.  Indeed, defense counsel do not even know which of the millions

of documents produced the government alleges constitute books and records of a broker-dealer and/or an investment advisor, let alone which ones Mr. Perez and O'Hara are accused of knowingly falsifying.

Under these circumstances, where it is *impossible* for defense counsel to determine which of the millions of documents produced in discovery are the allegedly false documents comprising Counts 3 and 4, or which entries on those documents the defendants allegedly knew to be false, *a bill of particulars is essential to avoid trial by ambush and a potential miscarriage of justice.* Indeed, given the nature of the charges (false documents counts) and the nature of the information being requested (the identity of the false documents), it is plain that the information sought constitutes crucial charging information without which defendants simply cannot properly prepare for trial.

Given the obvious necessity of this basic charging information, the government's refusal to be more forthcoming -- and its opposition to this motion -- is simply gamesmanship. Indeed, in its zeal to obtain a tactical advantage, we respectfully submit that the government has lost sight of the defendants' basic right to be properly apprised of the charges against them. Accordingly, the defendants have no other refuge but the Court to ensure that their right to a fair trial is protected, and that they obtain this critical charging information

In opposing the defendants' motion, the government makes a number of erroneous and uncompelling arguments. **First,** the government mischaracterizes the defense requests as a mere "fishing expedition" that seeks evidentiary detail and legal theories, rather than basic charging information. In essence, the government contends that the defendants are not entitled to have the specific documents at issue comprising Counts 3 and 4 identified for them prior to trial. This is incorrect for the most basic reason: in a false documents case, the defendants *are* entitled to the

pre-trial identification of the false documents at issue. **Second,** the government provides the Court with a blizzard of seeming detail to make it appear that the defendants' have been provided with enough information to understand the charges and prepare for trial. This argument fails because the generic information provided is illustrative, rather than restrictive, and in any event, *covers millions of documents the bulk of which cannot possibly form the basis of Counts 3 and 4 against defendants Perez and O'Hara*. Thus, the generic information provides wholly inadequate notice of the charges. **Third,** the government attempts to distinguish the controlling caselaw set forth in defendants' moving brief. However, the government's distinguishing features are beside the point, and the government simply ignores the key cases with which it is unhappy and cites inapposite caselaw. **Fourth,** the government cites wholly irrelevant policy considerations for denying the defendants' motion. Accordingly, all of the government's arguments should be rejected, and the defendants' motion granted.

A. **THE PARTICULARS SOUGHT HERE ARE NOT EVIDENTIARY IN NATURE, BUT RATHER, GO TO THE VERY HEART OF THE CRIMES CHARGED, AND ARE CRUCIAL FOR THE PREPARATION OF THE DEFENSE AND TO AVOID UNFAIR SURPRISE AT TRIAL**

In its opposition papers, the government fundamentally misstates what the defense has asked for by way of a bill of particulars. Specifically, the government makes the baseless accusation that the defendants to seek to learn the "specific documents the Government will rely on in its case in chief and the specific legal theories the Government will rely upon to prove its case." Government's Opposition Memorandum at p. 47. The government even goes so far as to claim that "the defendants' requests for a bill of particulars amounts to nothing more than a fishing expedition for evidentiary detail." Government's Opposition at p. 64. This argument is baseless, as the defendants seek *not* evidentiary detail or legal theory, but only basic charging information.

3

As set forth in defendants' moving papers, in order to determine if a request for particulars constitutes a search for mere "evidentiary detail," rather than legitimate charging information, the court must analyze the information sought *in light of the charges the defendants are facing*.   The question to be asked is whether the request seeks necessary charging information, or whether it instead seeks the *manner* in which the government will prove the already particularized charges.   If it is the former (basic charging information), and the information has not been otherwise provided, then a bill of particulars is *required*.   If it is the latter (merely a request for the manner of proof), then a bill of particulars should be denied.

In this case, the two substantive charges against the defendants both involve the alleged knowing creation of false books and records required to be maintained by a broker-dealer or an investment advisor.   *As to these charges, it is the false documents themselves, and the false entries of which the defendants were allegedly aware – which form the very essence of the charges*.   Under these circumstances, identification of the false documents and entries at issue does not constitute "mere evidentiary detail," as claimed by the government.   Rather, it constitutes critical charging information that is absent from the Indictment.   Put another way, defendants here are not asking *how* the government will prove the already particularized charges, but rather, *what are the specific charges?*   Under these circumstances, the government errs in contending that a bill of particulars is unnecessary.   Indeed, it is crucial.

This basic principle was recognized in *United States v. Trie*, 21 F.Supp.2d 7 (D.D.C. 1998), a case relied upon in defendants' moving memorandum, *but entirely ignored by the government in its opposition brief.*   *Trie* involved a request for a bill of particulars in a case where the defendant was charged with multiple false statement counts, based on the submission of allegedly false campaign contribution forms.   Thus, *Trie* was a false statement case *based on*

*false documents*.  There, the court held, in language wholly applicable to the false documents charges here:

> The defendant faced with false statements charges should not have to waste precious pretrial preparation time ***guessing*** which statements he has to defend against . . . The government must provide information as to exactly what the false statements are, what about them is false, who made them, and how [the defendant] caused them to be made.

> *Id*. at 21-22. (emphasis supplied).

This same principle was recognized by Judge Glasser in *United States v. Upton,* 856 F.Supp. 727 (E.D.N.Y. 1994), another case cited in defendants' moving brief -- *but wholly ignored by the government*.  In *Upton*, the defendants were charged with falsification of documents, namely, the falsification of airplane maintenance records.  In granting the defense request for a bill of particulars, the Court held:

> [I]t would be unfair under the circumstances of this case to allow the government to introduce allegedly falsified maintenance records buried in thousands of documents already produced without prior notice to defendants of those documents upon which the government intends to rely. The same rationale applies to defendants' request for a bill of particulars regarding which specific documents have been allegedly falsified; without prior knowledge of these documents, defendants are unduly hampered in the preparation of their defense and there is the risk of unfair surprise.

*Upton*, 856 F. Supp. at 753.

Likewise, the government ignores *United States v. Nachamie*, 91 F.Supp.2d 565 (S.D.N.Y. 2000), wherein Judge Scheindlin ordered a bill of particulars in a Medicare fraud case. That case involved the submission of allegedly false Medicare claims, but the government refused to identify the specific allegedly false submissions that it would rely upon at trial.  In that context, Judge Scheindlin held that a bill of particulars was required, reasoning that:

> The teaching of *Bortnovsky* is particularly relevant here. The Government in this case has produced over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims. But it has not yet informed the defendants which of these claims were false and in what way they were false. ***While the***

> ***Indictment specifies five ways in which claims were falsified, . . . no claims are
> identified by defendant, type of falsity, claim number and date***. In addition, the
> Indictment is less specific with respect to some defendants than with respect to
> others. . . . Under the facts of *Bortnovsky,* the Government has not yet complied
> with its obligation to provide adequate notice to the defense.

*Nachamie*, 91 F Supp. 2d at 571 (emphasis supplied).   Similarly, in this case, a bill of particulars

is required because, just as the specific "five ways in which claims were falsified" were deemed

insufficient notice in *Nachamie,* the generic categories of documents and programs provided in

the Indictment here are wholly insufficient to apprise the defendants of the specifics of the

charges against them.

It is not surprising that the government's opposition papers ignore these critical cases, as

they fully undermine the government's position.[1]  What these cases make crystal clear, is that

when the essence of the charge is the falsification of documents or records, the defendants are

entitled to know the particular false documents and false entries at issue.   This information is

hardly "evidentiary detail."   Rather, it is the gravamen of the offense, and to deprive the

defendants of this basic information would be unfair and contrary to law.  Indeed, defendants

respectfully submit that in this case it would constitute reversible error.   Accordingly, the

defendants' motion for a bill of particulars as to Counts 3 and 4 should be granted.

B.   NEITHER THE INDICTMENT, NOR THE COMPLAINT, NOR THE GOVERNMENT'S
     DISCOVERY LETTER, SUFFICIENTLY PARTICULARIZE THE DOCUMENTS FORMING
     THE BASIS OF COUNTS 3 AND 4

The government next contends that the Indictment in this case, especially when coupled

with the Complaint and its discovery letter of September 20, 2010 (the "Discovery Letter"),

---

[1]      The government also entirely ignores the *Rajaratnum* case, cited by the defendants.  In
that complex white-collar case, case, Judge Holwell ordered the government to provide a bill of
particulars because the Indictment did not provide the defendants with sufficient detail to prepare
for trial, and because the issues were complex and discovery voluminous.  The same is true here.

adequately apprise defendants Perez and O'Hara of all the information to which they are entitled pertaining to Counts 3 and 4.  This argument is specious.  In truth, the Indictment not only fails to identify a single specific document at issue, or a single specific entry on any such document, but it is otherwise wholly inadequate to provide sufficient notice of the charges.  Moreover, the Complaint and the Discovery Letter add no information of any use to the mix.  Accordingly, for this reason as well, the government's argument should be rejected and the defendants' motion granted.

    **i.**    **The Indictment is Woefully Inadequate to Apprise the Defendants of the Specific Documents and Entries at Issue**

In support of its contention that "the Indictment in this case is sufficiently detailed to apprise the defendants of the charges against them," Government's Opposition Memorandum at p. 52, the government spends no less than eight pages of its opposition brief summarizing some of the "specific" allegations contained in the Indictment.   *See* Government's Opposition Brief at pp.52- 60.  Indeed, the government's tactic seems designed to make the Court's head spin with so much seeming detail that it will conclude that the specifics requested by the defense must be in there somewhere.  However, upon a close review of the government's "detail," this is plainly not the case.

The allegations cited by the government, covering a 16 year period (despite the 5 year statute of limitations), reference only illustrative, non-exclusive, generic categories of documents and programs.   *Not a single specific document is identified as being covered by Counts 3 or 4.* In fact, the government refers to no less than a dozen different programs and to over a dozen generic categories of documents created by those programs.  Thus, the documents embraced by these generic categories *are literally in the millions*.

By way of example, among the generic categories of documents listed by the government in its opposition brief (taken from the statutory charging language of Indictment) are "false account statements, trade confirmations, trade blotters, and other books and records related to BLMIS's purported IA business."   Government's Opposition Memorandum at p. 52.   The government provides this litany as a purported example of the specificity provided by the Indictment. What the government fails to point out, however, is that millions of documents produced in discovery fall under these generic categories, and the defense has absolutely no way of determining  (1) *which* of these documents were allegedly falsified by defendants Perez and O'Hara; (2) *which* constitute books and records required to be maintained by an investment advisor or a broker-dealer; (3) *which* of the millions of documents the defendants allegedly knew to be false; and (4) *what* about them the defendants allegedly knew to be false.  Indeed, the government entirely ignores the Affirmation of Larry H. Krantz, submitted in support of the motion, which explains why it is *impossible* for defense counsel to determine which are the documents and entries at issue.

Further, as pointed out in defendants' moving memorandum, given that this case involves a conceded Ponzi-scheme, it goes without saying virtually *all* of the accounts statements, trade confirmations, trade blotters, and other financial records of BLMIS, *were in fact false*.  The critical questions at trial, therefore, will not be the falsity of the documents, but rather: (1) whether the defendants knowingly played any role in the creation of the document in question; (2) whether the documents constituted books and records of a broker-dealer or an investment advisor, and (3) whether the defendants had knowledge of any false entries contained in the documents.  *Unfortunately, it is as to this critical information that the Indictment is silent, and the defendants are left to guess.*  In fact, a careful review of pages 52-60 of the government's

opposition brief reveals *not a single instance where the defendants' knowledge is mentioned with respect to any particular document.*   This shortcoming is devastating to the defendants' ability to prepare for trial, and can only be cured through a bill of particulars.

Moreover, given the secretive nature of the Ponzi scheme alleged in the Indictment, and the fact that Mr. Perez and Mr. O'Hara were concededly hired as lower level employees in the early 1990's with no alleged knowledge that they were joining a fraudulent enterprise, the government cannot in good-faith contend that Mr. Perez and Mr. O'Hara somehow had knowledge that *all* of the documents the defendants participated in creating, in *all* of the generic categories cited in the Indictment, for the *entire* period of their employment, were false.   Rather, as punctuated by the *Brady* material discussed in defendants' opening memorandum -- involving the pervasive lies told to the defendants by Bernard Madoff and Frank DiPascali in an attempt to legitimize the programs and documents the defendants were being asked to work on -- the government's theory in this case – at best – is that the defendants eventually saw through these lies and *acquired* guilty knowledge, at *some* unknown point in time, about *some* of the entries on *some* of the documents that they were being asked to help create.   Given that this *must* be the nature of the proof at trial, it is even more obvious that the defendants should be provided with the requested particulars, because they have no way of knowing which particular documents, and which particular entries on those documents, the government will contend at trial the defendants knew to be false.   Without that critical information, it is impossible to prepare properly for trial, and to avoid unfair surprise.[2]

---

[2]      The government incorrectly asserts in its opposition memorandum that the defense has asked for "the date on which the Government alleges they each 'acquired guilty knowledge.'" Government's Opposition Memorandum at p. 76.  This is a mischaracterization of the defendants' argument.  We do not seek the date on which they allegedly acquired "guilty knowledge," but rather, merely identification of the documents forming the basis of Counts 3 and 4.  We point to

Finally, the Indictment is insufficient because Counts 3 and 4 are multi-defendant Counts, and it simply cannot be the case that *all* of the defendants are charged with falsifying *the same documents.*  Rather, the government's theory of guilt against the defendants other than Mr. Perez and Mr. O'Hara is entirely different, since they were all much higher level employees, who had entirely different roles at BLMIS.   Moreover, none of them were computer programmers.  Indeed, even a cursory comparison of the types of documents the government cites relating to defendants Perez and O'Hara concerning Counts 3 and 4 (*see* Government's Opposition Memorandum at pp. 52-60), with the types of documents the government cites relating to defendant Bonventre on those same Counts (*see* Government's Opposition Memorandum at pp. 65-75), reveals that the underlying documents *are entirely different.*  Surely, the same is true as to defendants Bongiorno and Crupi, since their roles were quite distinct from Mr. Perez and Mr. O'Hara, and since the allegations against them are entirely different.  Accordingly, to simply lump all of the defendants in two false document counts, without any specification of the particular false documents allegedly attributable to Mr. Perez and Mr. O'Hara, is acutely unfair, and places an impossible burden on defense counsel.   Accordingly, a bill of particulars is required.[3]

---

the ambiguity on the date of alleged guilty knowledge only to emphasize how impossible it is for defense counsel to determine, on their own, which documents the government will claim are covered by Counts 3 and 4.

[3]     In reviewing the purported specificity of the false document charges with respect to Mr. Bonventre, the government goes so far as to rely in part on the Information filed against Enrica Cotellesa-Pitz.  Specifically, the government refers to false documents allegedly created in response to various tax audits, which documents are described in the Cotellesa-Pitz (cont.) Information.  *See* Government's Memorandum at pp. 74-75.   However, the Indictment *in this case* contains no reference whatsoever to these documents or even to these tax audits.  Obviously, the government cannot expand the charges of the instant Indictment by reference to an Information filed against *another defendant.*  Indeed, that the government has even attempted to enlarge the charges here by reference to the Cotellessa-Pitz information serves only to demonstrate just how critical it is that the defendants receive a bill of particulars.  For without it,

In sum, the Indictment concededly does not provide the particular documents at issue for Counts 3 and 4 as to defendants Perez and O'Hara.  Further, the illustrative generic categories of documents and programs it does provide are not sufficient substitutes.  Accordingly, the defendants' motion for a bill of particulars should be granted.

### ii.    The Complaint Suffers from the Same Shortcomings

The government next claims that the defendants have additional detail about the charges by virtue of the "extremely detailed complaint."  Government's Opposition Memorandum at p. 59.  A review of the Complaint reveals that this argument is unsupportable.

The Complaint merely echoes *some* of the allegations contained in the Indictment. Indeed, on the critical subject of specific documents that the defendants allegedly falsified, *it too is entirely silent.*    In fact, the only additional information even cited in the government's memorandum as coming from the Complaint is the identification of several additional computer programs allegedly used to create false documents (identified as SPCL23, SPCL24, SPCL25 and SPCL26).    The identification of additional programs, however, does nothing to cure the problems noted above, as defense counsel still have no way of determining which documents provided in discovery were actually created by these programs, and even more importantly, which, if any, of those documents comprise the basis of Counts 3 and 4 against the defendants. Indeed, identification of additional programs just adds to the mountain of documents potentially covered by Counts 3 and 4.  Accordingly, the Government's citation of the Complaint as a basis for denying the motion is baseless.

---

the trial will be a free-for-all, with the government contending that they can offer any of millions of documents and argue that they comprise Counts 3 and 4, whether they are described within the Indictment or not.

### iii.    The Government's Discovery Letter Does Not Cure the Problem

The government also claims that its Discovery Letter somehow helps the defendants to determine the documents covered by Counts 3 and 4.  This argument is disingenuous.

The Government's Discovery Letter was *not* provided in response to defendants' request for a bill of particulars, and was not in any way designed to address the issues raised in this motion.  Rather, it was provided in response to the defendants' request, under Fed. R. Crim. P. 16(E)(i), that the government identify, out of the millions of documents produced, which documents were being produced because the government reserved the right to use them in its case in chief at trial (as opposed to documents being produced under any other provision of Rule 16).  In response to that request, the government identified 40 boxes of documents that, in its words, "may be relevant to its case in chief" against defendants Perez and O'Hara.

Accordingly, the government's Discovery Letter did not attempt to identify the documents forming the basis of Counts 3 and 4 at all, and did not, by any of the stretch of the imagination, do so.  Indeed, *defense counsel have been through these 40 boxes, and the documents contained therein do not in any way assist counsel or defendants in the impossible task of determining which documents comprise Counts 3 and 4, or which entries the defendants allegedly knew to be false.*  Rather, the boxes contain an amorphous mass of material with no readily discernible relationship to Counts 3 and 4.  Under these circumstances, it is unfair for the government to argue that the Discovery Letter somehow provides the needed particulars in this case.

Moreover, not only did the Government's letter do nothing to assist the defendants in identifying the documents covered by Counts 3 and 4, but the letter itself is entirely noncommittal as to what is even being identified at all.  Specifically the letter provides that "this list in no way limits the government from offering into evidence at trial any BLMIS or other

documents from sources not listed below.   In addition, the government may use evidence identified as relevant to the charges against defendant Daniel Bonventre [another hundred or so boxes], and vice versa."   (brackets added)   Thus, the Discovery Letter neither identifies the documents covered by Counts 3 and 4, nor limits the charges in any respect whatsoever.   Accordingly, it is entirely irrelevant to this motion for a bill of particulars.

The government also suggests that the particulars sought by the defendants will somehow be provided by the Government's exhibit list, scheduled to be provided 45 days prior to trial.   *See* Government's Opposition Memorandum at p. 61.   This is also incorrect.   The fact is that the Government's Exhibit List, which will presumably be vast, will not specifically identify which documents are covered by Counts 3 and 4, will not specify which of those documents relate to defendants Perez and O'Hara, will not specify which entries on those documents the defendants allegedly knew to be false, and will not specify which of those documents constitute books and records required to be maintained by a broker-dealer or an investment advisor.   Thus, defense counsel for Mr. Perez and Mr. O'Hara will be left in the same predicament they are in now, not knowing which of the mountain of documents produced in discovery the government alleges comprise Counts 3 and 4 as to Mr. Perez and Mr. O'Hara, and which entries on those documents the government contends the defendants knew to be false.   Thus, the anticipation of an exhibit list provides no basis whatsoever for denial of the defendants' motion.

### C.   THE GOVERNMENT ERRONEOUSLY DISTINGUISHES *BORTNOVSKY*, AND OTHERWISE RELIES ON INAPPOSITE AUTHORITY

Aside from ignoring the relevant case-law cited by the defense (as set forth above), the government's opposition also fails in its attempt to distinguish *Bortnovsky,* and relies on inapposite cases.   For these reasons as well, the government's arguments should be rejected.

In distinguishing the seminal Second Circuit case of *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir 1987), the government argues that unlike the instant case, the defendants in *Bortnovsky* were "left unguided as to which documents would be proven falsified." Government's Opposition Memorandum at p. 61. This argument begs the question entirely, for the defense argument here is precisely the same as it was in *Bortnovsky*, namely, that the defense has been left wholly "unguided" as to which specific documents comprise Counts 3 and 4. Indeed, *Bortnovsky* fully supports the principle that where false documents constitute the essence of an offense, the defendants have a right to know the specific false documents comprising the offense charged. As the Court stated in *Bortnovsky*: "We hold that the district court abused its discretion in denying appellants' motion for a bill of particulars identifying which of appellants' insurance claims for burglary losses were fraudulent *and which of the many invoices submitted to substantiate these claims were falsified*. " *Bortnovsky*, 820 F2d at 573-74 (emphasis added). Moreover, as stated in *Bortnovsky*, "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified. . . ." *Bortnovsky*, 820 F2d at 575.

This language is wholly controlling here, since the defendants in the instant case are far more lost in the mountains than were defense counsel in *Bortnovsky*. Indeed, while *Bortnovsky* involved a "mountain" of over 4,000 documents, the "mountain" here is in the millions. Thus, we respectfully submit that *Bortnovsky* compels the granting of defendants' motion, and that the government's attempt to distinguish it is unavailing.

Rather than focus on the relevant case law, the government instead relies on inapposite cases. For example, the government principally relies on *United States v. Dupree*, 10-CR-627 (KAM), 2011 WL 5976006 (E.D.N.Y., Nov. 29, 2011).

*Dupree* was a bank fraud case in which three defendants were charged with obtaining bank loans through false pretenses.   One defendant made a motion *in limine* seeking additional information concerning the specific financial documents that the government intended to introduce at trial, in support of the fraud charges.   The government opposed the motion, arguing that it had already provided information "identifying particular invoices that are false." The court construed the defendant's motion as a second request for a bill of particulars, observed that the government had previously provided sufficient detail, and denied the motion.   In so doing, the Court expressly noted that "the government has previously stated that it believes all of the accounts receivable figures on all financial statements [submitted to the banks] during the charged period of the conspiracy are false."  *Dupree*, 2011 WL 5976006, at *7.

The *Dupree* case is wholly distinguishable here, because it was a far more circumscribed scheme, *and the government had previously identified the particular invoices that were allegedly covered by the fraud count.*   In the instant case, however, the government has not made any attempt to identify the specific false documents covered by Counts 3 and 4 as to defendants Perez and O'Hara, and – unlike *Dupree* -- cannot possibly take the position that Mr. Perez and Mr. O'Hara are criminally responsible for *all* of the false documents produced by BLMIS in the generic categories referred to in the Indictment.   Rather, at trial, the government will have to identify a minimal subset of these documents that were allegedly produced by the defendants, with knowledge of their falsity, and which documents constituted books and records of a broker-dealer or an investment advisor.   Thus, *Dupree* has no applicability here.

The Government's reliance on *United States v. Viertel*, S2 01 CR. 571 (JGK), 2002 WL 1560805 (S.D.N.Y., July 15, 2002), is equally misplaced.   As described by the court, *Viertel* was a "straightforward" mail and wire fraud case in which the defendant sought a bill of particulars

identifying each and every allegedly false invoice or bill utilized as part of the fraudulent scheme. The government took the position that *all* of the invoices disclosed during discovery were false and fraudulent, and therefore a part of the scheme. *Viertel*, 2002 WL 1560805, at *12. Under these circumstances, the court denied the motion for a bill of particulars.

Once again, the instant case is wholly distinguishable because the charges here are far more complex and the discovery material far more voluminous. Moreover, the charges here are false documents counts (rather than generic mail or wire fraud as in *Viertel*[4]), and – unlike *Viertel,* the government cannot possibly take the position that defendants Perez and O'Hara are criminally responsible for *all* of the documents they participated in creating for the 16 or so years that they worked at BLMIS. Rather, the government's theory has to be that they are criminally responsible for some heretofore unidentified subset of documents. Thus, *Viertel* is inapplicable.

Finally, the government relies on *Unites States v. Qayyum*, 1998 WL 159056 (S.D.N.Y. 1998), another wholly inapplicable case. *Qayyum* was a single defendant case in which the defendant was charged with Medicaid fraud. The defendant requested "that the Government be required to provide a bill of particulars identifying which of the approximately 900 pharmaceutical prescriptions turned over in discovery are alleged to be fraudulent and itemizing "the specific date, type and nature" of the allegedly false statements. *Qayyum*, 1998 WL 159056, at *3. The government opposed the motion, arguing that "it considers all 900 prescriptions provided to Qayyum in discovery to be false prescriptions for which Qayyum sought reimbursement from Medicaid." In denying the motion, the Court found that "it is abundantly clear from the indictment and the Government's opposition papers that the false

---

[4]      In a generic mail or wire fraud case, it is the scheme to defraud itself that constitutes the essence of the crime, rather than any particular false documents. This is not the case in a false documents charge, where the false documents themselves are the essence of the crime.

statements that are the basis of Count VII are the reimbursement claims submitted by Qayyum on the basis of these same fraudulent prescriptions." *Id.*

The contrasts between this case and *Qayyum* are obvious. In *Qayyum,* there was a clearly defined universe of 900 documents that allegedly formed the basis for the charges. Moreover, there was only one defendant. Under those circumstances, there was no need for a bill of particulars. In contrast, this is a multi-defendant case with highly complex charges and a different theory against each defendant. Moreover, the government has produced millions of documents in discovery, and has not identified a single fraudulent document comprising Counts 3 or 4 against defendants Perez and O'Hara. Moreover, as noted above, the government cannot claim here that the defendants are responsible for *all* of the false documents at issue. Thus, *Qayyum* has no applicability whatsoever.

For all of these reasons, the caselaw relied on by the government is inapposite.

### D.   THERE IS NO DANGER OF UNFAIR PREJUDICE TO THE GOVERNMENT

In opposing the defendants' motion, the government cites three policy reasons why requests for a bill of particulars – like these -- should be denied. First, the government argues that it should not be "required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendants will tailor their testimony to explain away the government's pre-disclosed case." Government's Opposition Memorandum at p. 50. Second, the government contends that "detailed inquiries into the Government's case would unduly restrict the Government in presenting its proof at trial." *Id.* Finally, the government notes that the government should not be required to provide information that might reveal its witnesses, due to the risk of witness intimidation and subornation of perjury.

*Id.*  None of these policy concerns, however, has any applicability here.  Thus, they provide no basis for denial of the motion.

First, there is no risk that in providing the particulars requested the government will be "previewing" its proof or otherwise will face an increased likelihood of the defendants "tailoring their testimony" to explain away the government's "pre-disclosed" case.  Indeed, all that is requested by the defense is disclosure of the documents and entries that comprise Counts 3 and 4.  This is basic charging information only, and does seek disclosure of *how* the government will prove these charges.  Thus, the requested information – to which the defendants are entitled -- will only permit the defendants to prepare a legitimate defense to the charges, which is their right.  It will not otherwise "preview" the government's method of proof or its legal theory.

Second, disclosure of the requested information will not "unduly restrict" the government's proof at trial.  Rather, it is the *charges* that will be restricted, *not the proof thereof*.  Moreover, any such restriction as to the charges will be the inevitable and appropriate consequence of a bill of particulars, *i.e.*, to bind the government to the charges alleged, so as to avoid unfair surprise at trial.  This limitation does not constitute an "undue restriction" at all, but rather is required to ensure a fair trial.

Third, the requested information will not reveal the government's principal witnesses, as those witnesses have already been fully disclosed by virtue of the highly public guilty pleas they have entered.  Moreover, in this white-collar case, there is absolutely no basis to believe there is a danger of witness intimidation or subornation of perjury.

Thus, there are simply no policy considerations militating against the requested bill of particulars.  For all of the above reasons, as well as for those cited in defendants' moving

memorandum, the defendants' motion for a bill of particulars as to Counts 3 and 4 should be granted.

## II.   THE DEFENDANTS ARE ALSO ENTILED TO A BILL OF PARTICULARS AS TO COUNT 1

Count 1 is a conspiracy charge with multiple objects: (1) to commit securities fraud, (2) to falsify records of a broker-dealer, (3) to falsify records of an investment adviser, and (4) to file false documents with the SEC.  As noted in defendants' moving memorandum, while Mr. Perez and Mr. O'Hara are charged as a part of the conspiracy, they are *not* charged in the corresponding substantive counts alleging both securities fraud and the filing of false documents with the SEC. Based on the government's opposition papers, it appears that – despite the lack of substantive charges -- the government *does* allege that they participated in all four alleged purposes of the conspiracy charged.  *See* Government's Opposition Memorandum at p. 80.

As to the defendants' request for a Bill of Particulars concerning Count 1, to the extent that the particular false documents comprising Counts 3 and 4 as to defendants Perez and O'Hara coincide with those comprising Count 1, no further particulars are necessary.  However, to the extent that the false documents comprising Count 1 *do not* coincide with Counts 3 and 4, either because the fraud alleged is broader, or because the government's statute of limitations calculation is different (because it is a conspiracy count), then the defendants would plainly be entitled to the same information they seek as to Counts 3 and 4, namely, the specification of any additional false documents covered by Count 1 of the Indictment, and the identification of what entries on those documents the defendants allegedly knew to be false.

## III.   THE DEFENDANTS CONSENT TO THE COURT'S *IN CAMERA* REVIEW OF THE REDACTED *BRADY* MATERIAL

In response to the defendants' request for unredacted *Brady* material, *see* Defendants' Moving Memorandum at pp. 27-29, the government has provided the Court, on an *ex parte* basis,

with the unredacted versions of the reports previously produced to the defense. *See* Government's Opposition Memorandum at p. 14. While we believe that the government should have sought permission before making an *ex parte* submission, we otherwise have no objection to this procedure. Accordingly, we respectfully ask that the Court review the unredacted materials, bearing in mind the concerns about context raised in defendants' moving memorandum. To the extent that further disclosure is appropriate, defendants request that the Court order such disclosure. In this regard, we urge the Court to err on the side of disclosure, since this information will in any event be made available to the defense prior to trial. Thus, the only issue is timing, and there is no possible prejudice to the government.

## IV.    THE SEVERANCE MOTION OF MR. O'HARA AND MR. PEREZ SHOULD BE GRANTED

The government opposes the severance motion of Mr. O'Hara and Mr. Perez, minimizing, most importantly, the recently-revealed -- and highly significant -- exculpatory evidence. The government also disregards other factors meriting severance, such as the disparity in charges, particularly the fact that these two defendants are the only ones not charged with securities fraud; the disparity in responsibilities, to wit, that Mr. O'Hara and Mr. Perez are the only defendants who did not have financial duties at BLMIS; the disparity in service, to wit, the other defendants had worked at BLMIS between one to more than two *decades* longer than Mr. O'Hara and Mr. Perez; and the disparity in any evidence of guilty knowledge. The government responds with a variety of arguments, all of them unpersuasive, to which we, in turn, respond in the order of their appearance in the government's brief.

First, the government observes, gratuitously, that it is in the interest of Mr. O'Hara and Mr. Perez (and other defendants) to seek a severance so as "to create the opportunity to blame [the other] severed defendants for their own criminal conduct …"  Government's Opposition

Memorandum at p. 15. To the contrary, it is primarily the cooperating defendants, such as Mr. DiPascali, Enrica Cotellessa-Pitz, and Eric Lipkin, along with Mr. Madoff himself, who engineered the fraud that, only incidentally, utilized the computer skills of Mr. O'Hara and Mr. Perez. Thus, in this trial, we will have the "big" people testifying against the "little" people such as Mr. Perez and Mr. O'Hara, just the reverse of almost all other trials. And it is those higher-ups, especially Mr. Madoff and Mr. DiPascali, who must shoulder much of the blame here.

To focus on this point in greater detail, the government, in its factual recitations, essentially levels two broad accusations against Mr. O'Hara and Mr. Perez. Initially, it alleges that these two defendants assisted the alleged conspiracy by: (a) creating false documents for the SEC and an accounting firm (KPMG); (b) changing various account statements, reflecting the number of shares, times, transaction numbers and contra parties; (c) maintaining programs with random number generators; and (d) (only Mr. O'Hara) assisting Cotalessa-Pitz and Daniel Bonventre in creating false documents in connection with a Madoff tax audit (a charge not even contained in the Indictment). Government's Opposition Memorandum at pp. 9-10. But in none of these situations does the government provide the Court with any proof of guilty knowledge. In other words, the government does nothing at all to suggest, beyond the acts themselves, that Mr. O'Hara and Mr. Perez did anything other than perform these tasks in a technically proficient manner at the behest of superiors, without reflection, and in the midst of myriad other computer programming duties that are not being charged as criminal conduct.

Then, the government claims that an increase in earnings (salary and bonus) from $219,000 and $204,000, respectively, for Mr. O'Hara and Mr. Perez in 2005 to $350,000 and $330,000 in 2006, was, in effect, hush money to the two programmers, and that they also demanded raises. Government's Opposition Memorandum at pp. 11-13. But the careful

phrasing of the government brief, to wit, that the bonuses were "awarded" makes it clear that Mr. DiPascali will admit what is true:  that the jump in compensation for one year, while no means unprecedented in the Wall Street world, particularly at a highly successful firm like BLMIS, was the brainchild of Mr. DiPascali himself, who engineered the bonus *sua sponte*.   And if the government's theory holds water, why wasn't such hush money paid in 2007 and 2008, when it logically might have been even more compelling to do so?

Second, the government falls back on boilerplate in the case law that counsels against severance so as to avoid "presenting the same evidence again and again" and so as to avoid "the scandal and inequity of inconsistent verdicts."  Government's Opposition Memorandum at p.16 (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).  But what may apply in a run-of-the-mill case does not apply here where there are, in fact, two overlapping but still largely separate cases:  an alleged financial crime case involving other defendants and an alleged computer crime case involving Mr. O'Hara and Mr. Perez.  The potential scandal and inequity here would not be the acquittal of Mr. O'Hara and Mr. Perez; it would be their conviction stemming from massive quantities of spillover prejudice.

Third, when the government turns to the Federal Rules of Criminal Procedure, it devotes six pages of its severance point to the applicability of Rule 8. Government's Opposition Memorandum at pp 17-22.  But none of this has any relevance to Mr. O'Hara and Mr. Perez, who base their argument exclusively on Rule 14.

Fourth, when the government finally engages the specific arguments put forth by Mr. O'Hara and Mr. Perez in their own, separate brief, especially the "disclosure of some exculpatory information relating to them" Government's Opposition Memorandum  at p. 26, it simply ignores the import of that exculpatory evidence by robotically regurgitating allegations in

the Indictment.  For example, the government adverts to the creation of "numerous false documents to deceive the regulators and auditors over the course of years."  Government's Opposition Memorandum at p. 17.  But there is no citation of any proof to refute the reality of what occurred here:  that procedures were instituted by others, some stretching back to the 1970's (long before Mr. O'Hara and Mr. Perez worked at BLMIS), and Mr. O'Hara and Mr. Perez simply followed those procedures, as instructed.  They were "tech guys," not financial types.  They did not prepare FOCUS reports for regulators; they did not interact with clients; they did not oversee bank accounts, general ledgers or other books and records.  They were given technical tasks, and they performed them.  And after performing similar tasks for nearly 20 years, in the very late stages of the fraud, when they did have questions, the exculpatory evidence glossed over by the government shows that Mr. DiPascali convincingly misled them.  There are no tape recordings or even e-mails of either defendant that suggest any guilty knowledge.  But given their prosecution amid a great disparity in proof among defendants, the only just course is to sever Mr. O'Hara and Mr. Perez and let the trial with other defendants proceed.

Fifth, the government completely ignores the fact that all other defendants are charged with securities fraud, unlike Mr. O'Hara and Mr. Perez, which is at the heart of the financial crime here.  All the government can do is respond weakly by referencing the kitchen-sink conspiracy count.  (Gov't Br. at 29)  But this is no response at all, since it fails to account for the gross charging disparities when the additional Counts of the Indictment are considered.  Under these circumstances, there is no just reason to force Mr. O'Hara and Mr. Perez to stand trial with the other defendants.

The Second Circuit has held that "disparity in the quantity of evidence and of proof of culpability are inevitable in any multiple-defendant trial, and by themselves do not warrant a

severance." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). But the Supreme Court has made clear that joint trials do give rise to the danger of prejudice in a way that sometimes, to preserve a sense of fairness, does require a severance. *See, e.g, Bruton v. United States*, 391 U.S. 123, 131 (1968). Although a Rule 14 severance is discretionary, *see United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999), given all the factors enunciated in defendants' moving memorandum, especially the spillover prejudice, administrative concerns should not trump elemental fairness. The motion for severance, therefore, should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. O'Hara and Mr. Perez's pre-trial motions should be granted.

Dated: July 9, 2012

Respectfully submitted,

_____/s/_____
Gordon Mehler
*Attorney for Defendant Jerome O'Hara*
747 Third Avenue, 32nd Floor
New York, NY 10017
(212) 661-2414

_____/s/_____
Larry H. Krantz
*Attorney for Defendant George Perez*
747 Third Avenue, 32nd Floor
New York, NY 10017
(212) 661-2414