UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                         No.  10 Cr. 228 (LTS)

DANIEL BONVENTRE  et al.,

          Defendants.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Defendants Daniel Bonventre ("Bonventre"), Annette Bongiorno ("Bongiorno"), Jo Ann Crupi, ("Crupi"), Jerome O'Hara ("O'Hara") and George Perez ("Perez") (collectively, the "Defendants") are charged in a 33-count Superseding Indictment, S8 10 Cr. 228, filed on October 1, 2012 (the "Indictment," docket entry no. 273), with conspiring to commit securities fraud, falsifying records of a broker dealer, falsifying records of an investment adviser, mail fraud, making a false filing with the Securities Exchange Commission ("SEC") and certain additional crimes, all arising out of Defendants' allegedly illegal activities as employees of Bernard L. Madoff Securities LLC ("BLMIS").[1]  Currently pending before the court are: (1) the five Defendants' joint motion for immediate disclosure of all Brady material,[2] early disclosure of Giglio material,[3] early disclosure of certain material pursuant to Federal Rule of Criminal Procedure 16 and the Jencks Act (18 U.S.C. § 3500) materials, early disclosure of materials that

---

[1]     Six other defendants charged in various earlier superseding charging instruments have pled guilty.

[2]     See Brady v. Maryland, 373 U.S. 83 (1963).

[3]     See Giglio v. United States, 405 U.S. 150 (1972).

the Government intends to offer into evidence pursuant to Federal Rule of Evidence 404(b),[4] and

other relief (docket entry no. 320); (2) Crupi's motion requesting that the trial of her bank and

tax fraud counts be severed from that of the other charges against her and that the Government

provide her with a bill of particulars (docket entry no. 323); (3) Bonventre's motion requesting

that his trial be severed from that of his co-defendants, that his tax- and ERISA-related charges

be tried separately from the other charges against him, and that the Government produce all

exculpatory information under Brady and certain particulars and discovery (docket entry no.

326); (4) Bongiorno's motion requesting severance of the trial of her tax fraud counts from that

of the other fraud counts against her and that the bank fraud and ERISA charges against the other

Defendants also be tried separately, and requesting a bill of particulars (docket entry no. 330);

and (5) Perez and O'Hara's motion requesting that the trial of charges against them be severed

from the trial of the charges against the other Defendants, and that the Government produce a

bill of particulars and unredacted Brady material (docket entry no. 333).  The Court has reviewed

thoroughly the parties' submissions and, for the following reasons, the Defendants' motions are

granted in part and denied in part.

<u>BACKGROUND</u>

All five Defendants are charged with crimes allegedly committed in connection

with the massive Ponzi scheme that was uncovered around the time of the December 11, 2008,

---

[4]     See Federal Rule of Evidence 404(b) (providing that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this type of evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," and requiring the prosecution to give advance reasonable notice of the nature of such evidence upon request by the defense).

arrest of Bernard L. Madoff. Defendant Bonventre (who was employed with BLMIS from in or about April 1968 through December 2008) had worked at BLMIS as the Director of Operations since the 1980s. (Indictment ¶ 5.) The Government alleges that Bonventre was responsible for, inter alia, maintaining and supervising the production of internal accounting documents and maintaining the Stock Record for BLMIS and for supervising certain BLMIS employees, including Defendants O'Hara and Perez insofar as their work related to the production of the General Ledger and other accounting records. (Id.) Bonventre is charged with conspiracy to commit securities fraud, to falsify records of a broker dealer and of an investment adviser, to commit mail fraud (the "Main Conspiracy Charges"), conspiracy to make false filings with the SEC, conspiracy to obstruct and impede the lawful government function of the Internal Revenue Service ("IRS"), conspiracy to falsify statements in relation to ERISA documents,[5] securities fraud, falsifying records of a broker dealer and falsifying records of an investment adviser, filing false documents with the SEC, bank fraud, falsifying statements in relation to ERISA documents, filing false individual income tax returns and obstructing and impeding the due administration of internal revenue laws. Bongiorno (who was employed at BLMIS from approximately 1968 to December 2008) and Crupi (who was employed at BLMIS from approximately 1983 to December 2008) worked in BLMIS's Investment Advisory ("IA") business, managing the IA accounts. (Indictment ¶¶ 7, 10.) Bongiorno is charged with the Main Conspiracy Charges, securities fraud, falsifying records of a broker dealer, falsifying records of an investment adviser, tax evasion, and obstructing and impeding the due administration of internal revenue laws, and Crupi is charged with the Main Conspiracy Charges, securities fraud, falsifying records of an investment adviser, falsifying records of a broker dealer, conspiracy to

---

[5]     Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

commit bank fraud, bank fraud and tax evasion.  The Government alleges that O'Hara and Perez

(who were employed at BLMIS from 1990 and 1991, respectively, to December 2008) worked as

computer programmers and created custom-designed computer programs that were used to

facilitate the fraud.  (Id. ¶ 13.)  Both O'Hara and Perez are charged with the Main Conspiracy

Charges, securities fraud, falsifying records of an investment advisor and falsifying records of a

broker dealer.

<u>DISCUSSION</u>

<u>Severance Motions</u>

Typically, in this jurisdiction, "[alt]hough Rule 8(a) addresses joinder of offenses

and Rule 8(b) concerns joinder of defendants, when a defendant in a multi-defendant action

challenges joinder, whether of offenses or defendants, the motion is construed as arising under

Rule 8(b)."  United States v. Ohle, 678 F. Supp. 2d 215, 224 (S.D.N.Y. 2010) (quoting United

States v. Stein, 428 F. Supp. 2d 138, 141 (S.D.N.Y. 2006)).  Joinder is proper under Rule 8(b)

"only when the charged offenses are either (1) 'unified by some substantial identity of facts or

participants,' or (2) 'arise out of a common plan or scheme.'"  Id. at 224 (quoting United States v.

Attanasio, 870 F.2d 809, 815 (2d Cir. 1989)).

Under Federal Rule of Criminal Procedure 14(a), courts have the discretion to sever

trials, even when the defendants and charges are properly joined.  See United States v. Stewart,

433 F.3d 273, 314 (2d Cir. 2006) (decision whether or not to grant severance is within the sound

discretion of the trial court and "virtually unreviewable").  When bringing a severance motion

under Rule 14(a), the defendant bears the heavy burden of showing "facts demonstrating that he

will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial[,] . . . not

that he might have had a better chance for acquittal at a separate trial." United States v. An–Lo, 851 F.2d 547, 556 (2d Cir. 1988) cert. denied, 488 U.S. 966 (1988) (internal quotation marks and citation omitted).  "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993).  Moreover, "it is well established that 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'" United States v. Todd, No. 12 Cr. 45(RJS), 2013 WL 499857, at *10 (S.D.N.Y. Jan. 28, 2013) (citation omitted); see also United States v. Rosa, 11 F. 3d 315, 341 (2d Cir. 1993) ("[t]he principles that guide [a] district court's consideration of a motion for severance usually counsel denial;" a severance motion should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence").

> Motions to Sever Trials of Defendant Bonventre and of Defendants O'Hara and Perez

Defendant Bonventre moves, pursuant to Federal Rule of Criminal Procedure 14, to be tried separately from the other Defendants.  Bonventre asserts that, if he is tried with the other Defendants, evidence pertaining to the IA business, in which Bonventre alleges that he was not directly involved, coupled with the magnitude of the underlying Ponzi scheme, will overwhelm the jury, resulting in spillover prejudice against him.  Perez and O'Hara also jointly move, pursuant to Rule 14, to be tried separately from the other Defendants.  Perez and O'Hara contend that they only joined BLMIS in the early 1990s (whereas the other Defendants had been employed with BLMIS since at least the early 1980s) and that they were merely computer programmers while the other Defendants were more intimately involved in the fraudulent financial transactions that were

allegedly perpetuated at BLMIS.  Moreover, according to Perez and O'Hara, the exculpatory material turned over thus far undermines the Government's case against them and further attenuates the connection between them and the other Defendants, as the evidence demonstrates that Bernard Madoff and Frank DiPascali lied to O'Hara and Perez and hid the fraudulent activities from them.

        The Indictment charges that Bonventre, O'Hara and Perez were integral participants in the securities fraud and related schemes and were involved in creating documents to deceive regulators, auditors and the IA clients.  (See Indictment ¶¶ 47-104.)  For example, Paragraph 65 alleges that "Jerome O'Hara and George Perez, the defendants, also developed and maintained Special House 17 Programs, that in connection with the 2004, 2005 and 2006 SEC Reviews, enabled Madoff and DiPascali to change information about trades that purportedly already had occurred." (id. at ¶ 65).  Paragraph 58 alleges that, "[b]eginning at least as early as in or about December 2003, in connection with the ["European Accounting Firm" and SEC] Reviews, Madoff and/or DiPascali caused Daniel Bonventre, Joann Crupi, a/k/a 'Jodi,' Jerome O'Hara and George Perez, the defendants, Enrica Cotellessa-Pitz, Eric Lipkin and others, to create additional false and fraudulent BLMIS books and records."  (Id. at ¶ 58).  Although O'Hara and Perez contend that they were repeatedly misled by DiPascali and Madoff, the Government alleges that O'Hara and Perez knew about the fraud and in fact, took raises and salary bonuses in exchange for keeping quiet.  (Id. ¶¶ 112-114.)  The Government further asserts that a substantial amount of the evidence regarding the participation of Bonventre, O'Hara, Perez, Bongiorno and Crupi in the larger fraud is overlapping and, thus, that severing the trial of O'Hara and Perez will result in the duplicative and inefficient use of judicial and governmental resources.

        The Court finds that the charges against all of the Defendants are sufficiently

interconnected to warrant trying all of the Defendants jointly.  Bonventre, O'Hara and Perez have

not shown that a joint trial with the other Defendants will prejudice them to a degree amounting to

a miscarriage of justice.  See Rosa, 11 F.3d at 341.  Moreover, proper limiting instructions to the

jury will protect against any prejudice arising from a joint trial.  See United States v. Page, 657

F.3d 126, 129 (2d Cir. 2011) ("less drastic measures [than severance], such as limiting instructions,

often will suffice to cure any risk of prejudice and permit joinder") (internal quotation marks and

citation omitted)); United States v. DeVillio, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (admission of

evidence relating to an attempted murder by only some of the defendants was not sufficiently

prejudicial to the others so as to have warranted severance when a limiting instruction was given).

Accordingly, Bonventre, O'Hara and Perez's motions for severance of their trials from that of the

other Defendants are denied.


### Bonventre, Bongiorno and Crupi's Motions to Sever Certain Charges

Bonventre, Bongiorno and Crupi also ask the Court to sever the trial of their tax,

ERISA and bank fraud counts from the trial of the other charges against them.  Bonventre moves

pursuant to Federal Rule of Criminal Procedure 8, requesting that the seven counts charging him

with filing false individual tax returns for the years 2003 to 2007, with the exception of 2005

(Counts 20 through 23 of the Indictment), tax fraud relating to his alleged participation in the

falsification of Bernard Madoff's taxes (Counts 4 and 24) and the ERISA charges relating to the

"no-show job" that he allegedly obtained for his son (Counts 5 and 19) be severed from the rest of

the charges against him because, he contends, they are insufficiently connected to the underlying

fraud perpetrated at BLMIS or the process of concealing that fraud.  Bongiorno also moves for

severance of the five counts of tax evasion against her for the years 2004 to 2008 (Counts 25

through 29), as well as her one count of obstructing and impeding the due administration of internal revenue law (Count 30) from the trial of her securities fraud and records falsification charges.  Bongiorno contends that the accounts from which the unreported payments to her were made were not part of the larger scheme, were not reflected in BLMIS's records and had no relationship to securities fraud or to her allegedly phony trading profits.  Bongiorno also requests that the bank fraud and ERISA counts against her co-defendants Crupi and Bonventre (Counts 16 through 19) be excluded from any joint trial, characterizing those charges as "one off" crimes that were not part of the alleged common scheme.  She asserts that there is no allegation that Bongiorno did anything to assist in the commission of those other crimes, and that she will suffer spillover prejudice from the Government's evidence against her co-defendants.  Crupi moves to have the trial of the tax counts against her which are based on personal charges that she allegedly incurred on a corporate American Express card and failed to declare on her income tax returns (Counts 31 to 33), and the bank fraud counts against her for allegedly creating false documents used by David Kugel and others in securing personal loans from the banks (Counts 16 and 17), severed from the trial of the rest of the charges against her.

"[J]oinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme.  In this context, [the Court] also appl[ies] a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to [one or more] of the defendants resulting from the joinder."  United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (internal quotation marks and citations omitted).  "[T]ax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged" or, when the link

between the two offenses is that "one scheme stemmed from the other[,]. . . that link provides a sound basis for joinder under Rule 8(b)." United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988) (holding that "the tax fraud hinged on the fraudulent activities taken to advance the . . . conspiracy" and so "the proof of one scheme is indispensable for a full understanding of the other"). Any defendant seeking to sever counts "under Rule 14 carries a heavy burden of showing that "joinder will result in substantial prejudice," as "[t]he danger that Rule 14 authorizes a district judge to cure is not merely that the jury will think worse of a defendant charged with two crimes rather than one, but that the jury will use the evidence cumulatively." United States v. Ezeobi, No. 10 Cr. 669(DLC), 2011 WL 3625662, at *2 (S.D.N.Y. Aug. 17, 2011).

According to the Government, each of the tax fraud, ERISA fraud and bank fraud counts reflects one or more of the means through which Bernard Madoff compensated the Defendants, or allowed them to enrich themselves, in order to ensure their continued participation in the fraudulent investment scheme. The Government alleges that the ways in which Defendants were enriched included: "profits" from fake backdated trades that came out of the Ponzi scheme account and from sham IA brokerage accounts with negative balances; personal charges on the corporate charge card; and the creation of no-show jobs for the Defendants' family members. The culture of impunity that existed at BLMIS, according to the Government, enabled and encouraged these secondary crimes, and such crimes also helped facilitate the continuance of the securities fraud Ponzi scheme. Furthermore, the Government contends that many of the same fraudulent documents (e.g., fake trade confirmations and account statements) and the means of creating them, that were central to the securities fraud scheme were also used to perpetrate these other crimes.

The Government's contention that all of the charged crimes were part of a larger common scheme makes it clear that there is a "substantial identity of facts or participants" with

respect to the charges as a whole, in light of which joinder was permissible under Rule 8(b).

Trying them together will permit the jury to see the "full picture" of BLMIS's illegal operations

and the Defendants' alleged involvement in the same.  United States v. Zafiro, 945 F.2d 881, 886

(7th Cir. 1991).   The risk of spillover prejudice does not warrant severing these charges pursuant

to Rule 14, as the Court finds that proper limiting instructions and carefully tailored verdict sheets

will provide appropriate protection against any potential for confusion or prejudice.  "To the extent

that certain evidence will not be admissible against [one of the Defendants], or admissible against

him [or her] for only a limited purpos[e], the Court is satisfied that curative and limiting

instructions to the jury will negate any prejudice."  See United States v. Johnson, No. S2 10 Cr.

431(CM), 2013 WL 150104, at *3 (S.D.N.Y. Jan. 10, 2013) (citing United States v. Potamitis, 739

F.2d 784, 790 (2d Cir.1984)).  Therefore, Defendants Bonventre, Bongiorno and Crupi's motions

for severance of charges are denied.


Bills of Particulars Requests

Each of the five Defendants also moves for a bill of particulars setting forth the

identification of specific documents that the Government intends to rely on to prove its case-in-

chief against that particular defendant, and the specification of certain of the Government's legal

theories.  Federal Rule of Criminal Procedure 7(f) authorizes the Court to order the provision of a

bill of particulars.

"The standard for determining whether a bill of particulars is appropriate is based

on necessity."  United States v. Mandell, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010).  "A bill of

particulars is required only where the charges of the indictment are so general that they do not

advise the defendant of the specific acts of which he is accused" and it "is not necessary where the

government has made sufficient disclosures concerning its evidence and witnesses by other means." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quotations omitted). "The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense." Mandell, 710 F. Supp. 2d. at 384 (internal quotation marks and citation omitted); see also United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is not a discovery device and 'should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." Mandell, 710 F. Supp. 2d at 384 (citation omitted). "[R]equests for a bill of particulars should not be granted where the consequence would be to restrict unduly the Government's ability to present its case." United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987).

Bonventre seeks a bill of particulars identifying by photocopy or Bates numbers the allegedly false records upon which the Government intends to rely to prove its case, the particular entries in those records that the Government alleges that Bonventre knew were false, and the documents on which it will rely from the 43 gigabytes of data on Bonventre's office computer. Bonventre further asks the Government to clarify whether the general allegations of paragraph 190 of the Indictment regarding transfers and withdrawals are limited to $273,620.[2]4 in transfers from BLMIS to Bonventre that were specified and itemized by date and amount in the prior indictment.[6]  Finally, Bonventre requests that the Government state whether he is being charged as a "knowing participant" in the Ponzi scheme.  The current Indictment describes specific situations

---

[6]       In its Opposition papers, the Government answers this question in the negative. (Gov. Opp at 82.)

in which Bonventre is alleged to have committed fraud (e.g., in connection with the SEC's suit against Avellino & Bienes (Indictment ¶¶ 37-39)); the types of documents that Bonventre is alleged to have falsified (e.g., entries in the BLMIS General Ledger and the BLMIS FOCUS Reports (Id. ¶¶ 131-34 )); and specific acts of fraud that Bonventre was allegedly involved in concealing (e.g., the 2006 wire transfers to keep the IA Bank Account afloat (Id. ¶ 142-47)).[7]

Similarly, O'Hara and Perez request that the Government identify the specific books and records that form the basis of the charges against them for falsifying records of a broker dealer (Counts 9 and 10) and falsifying records of an investment adviser (Counts 12 and 13) and the specific entries that the Government alleges that they knew were false.  The Indictment outlines the roles that O'Hara and Perez allegedly played in the larger securities fraud and identifies the computer programs and files that they allegedly used to commit the fraud; it also charges that O'Hara and Perez falsified books and records to show to the SEC and the "European Accounting Firm"[8] between 2003 and 2008.  (Indictment ¶¶ 65-90.)  The Indictment identifies some of the types of books and records that were allegedly falsified, but it does not list the specific documents, or parts of documents, that O'Hara and Perez allegedly falsified.  O'Hara and Perez also request

---

[7]     The Government also proffers that the 4-count, Fifth Superseding Information, charging Contellessa-Pitz with conspiracy to falsify the records of a broker dealer, to falsify the records of an investment adviser, to make false filings with the SEC, and to obstruct and impede the lawful governmental function of the IRS, as well as falsifying the records of a broker dealer, falsifying the records of an investment advisor and false filing with the SEC provides further detailed allegations regarding Bonventre's role in creating false books and records.  (See, e.g., S5 Information ¶¶ 40-43.)

[8]     The "European Accounting Firm" has been identified in the Government's Opposition as KPMG London.  KPMG London conducted two audits on behalf of its client HSBC in or about November 2005 and in or about April 2008.  (Gov Opp at 84.)

that the Government inform them of the date on which the Government believes that they each

acquired guilty knowledge, as they contend that there is significant evidence that they were lied to

by Madoff and DiPascali during the entire course of the securities fraud scheme.

Bongiorno requests a bill of particulars identifying the specific arbitrage trades in

which she was involved that the Government alleges are fraudulent.  Bongiorno argues that the

Indictment does not identify a single trade or provide any specific information about the allegedly

fraudulent trades and that she needs that information to provide a defense.  Similarly, Crupi asks

that the Government identify all of the BLMIS clients on whose accounts the Government intends

to base its prosecution of her and that the Court require the Government to specify: all unnamed

clients and allegedly fake trades referred to in Count 1; the name of the "European Accounting

Firm" referred to in the Indictment, its clients and the dates of the audits; the name of the "High

Net Worth Client" referred to in the Indictment (as well as, inter alia, dates and stock names for all

alleged backdated transactions, dividends allegedly paid, and dates from the account statements);

the documents that Crupi allegedly falsified in relation to IA Account Statements, SEC reviews,

and/or third-party audits; and the name of "Purchaser A" as relating to her Bank Fraud counts.

Crupi also asks that the Government explain why Crupi's alleged criminal tax liability does not

correspond precisely to her corporate American Express charges.[9]

Courts have routinely denied requests for bills of particulars concerning the

"wheres, whens and with whoms" of the crime.  See, e.g., United States v. Mitlof, 165 F. Supp. 2d

---

[9]     The Government's Opposition provides additional information in response to
many of Crupi's requests, including the identity of the "European Accounting
Firm" and the "High Net Worth Client," and explains why the tax fraud charges
involve more money than Crupi charged on the corporate American Express card.
Crupi's unanswered requests relate to the identification of particular documents
that the Government plans to use to prove the specific charges against Crupi at
trial.

558, 569 (S.D.N.Y. 2001) (citations omitted) (collecting cases); United States v. Bin Laden, 92 F.

Supp. 2d 225, 242 (S.D.N.Y.2000) (denying request for bill of particulars where defense sought

detailed information on how the conspiracy was formed, when each participant was alleged to have

joined, and the "when, where, how, and with whom" of the conspiracy, although court required

Government to clarify some allegations and to provide direction on some coded documents and

unidentified co-conspirators).  The purpose of a bill of particulars is not to compel disclosure about

the precise manner in which the charged crimes were allegedly committed or the particular acts in

which a defendant allegedly participated, or for which he is being held responsible.  See United

States v. Jiminez, 824 F. Supp. 351, 365 (S.D.N.Y. 1993).  Rather, the purpose of a bill of

particulars is to enable "a defendant to prepare for trial, to prevent surprise, and to interpose a plea

of double jeopardy should he be prosecuted a second time for the same offense."  In re Terrorist

Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 150 (2d Cir. 2008) (quotation marks and

citations omitted).

      Here, the Indictment and the prior charging instruments are sufficiently detailed

and, combined with the additional information that has been provided and will be provided before

trial, should enable Bonventre, O'Hara and Perez to prepare adequately for trial.  The

Government's opposition brief sufficiently alerts Bonventre as to its theories concerning the crimes

with which he is charged.  It will be the jury's role at trial to determine whether he was a "knowing

participant" in the larger Ponzi scheme.  Similarly, it will be the jury's role to decide when, if at all,

O'Hara and Perez "acquired guilty knowledge."

      However, the Court recognizes that, in "complex conspiracy cases like this one, the

potential for unfair surprise and the difficulty of preparing a defense are amplified."  United States

v. Rajaratnam, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010)

(complexity of case and volume of documents made it necessary to clarify some allegations and to provide direction on certain documents). "It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." Bin Laden, 92 F. Supp. 2d at 234.

Considering the generic categories of documents listed in the Indictment, the fact that the charges in the Indictment span decades, the sheer volume of documents at issue in this case, the number of Defendants allegedly involved and the difficulty for the Defendants in determining which Defendant is alleged to have produced, or been involved in producing, each document, the Court finds that the particular circumstances of this case warrant earlier disclosure of the Government's exhibit copies and list than the date proposed by the Government. The Government is ordered to produce a list of exhibits and copies of the exhibits that it will use to prove the charges in this case no later than 60 days before the commencement of trial. The Government must also disclose to the Defendants at that time which exhibits it will use against which of the Defendants. This additional disclosure is necessary so that the Defendants can prepare adequately for trial.


Defendants' Request for the Disclosure of Brady/Giglio Material and Other Early Disclosures

All five Defendants join in a motion requesting that the Government make an immediate and expanded disclosure of additional information that they characterize as Brady material; that the Government disclose all Giglio information, additional Rule 16 material and Jencks Act ("§ 3500") materials 60 days before trial; and that the Government make its Federal Rule of Evidence 404(b) disclosures 60 days before trial. Under a previous arrangement between

the parties, the Government had agreed to produce "Brady" material [10] as it was uncovered on a

rolling basis, and to produce 45 days before trial all Giglio and § 3500 material as well as the

Government's exhibits and exhibit and witness lists.[11]

        Brady/Giglio Material

        The Government, without conceding that such material actually constitutes Brady

material, has agreed to produce on a rolling basis all information suggesting that Bernard Madoff,

DiPascali or other BLMIS employees "(1) misled any of the defendants concerning the legitimacy

or fraudulent nature of BLMIS or any of its books, records, transactions, or systems; (2) had

explicit conversations, outside the presence of any of the defendants, discussing misleading them,

or concealing from them, information concerning the legitimacy or fraudulent nature of BLMIS or

of any of its books, records, transactions or systems; or (3) misled any others, including customers

and employees, concerning the legitimacy or fraudulent nature of BLMIS or of any of its books,

records, transactions or systems, provided that the government has notice that such misleading

conduct took place in the presence of any of the defendants."  (Letter from Larry H. Kranz,

attached as Exhibit A to Breslin Declaration.)  The Government represents that it has complied

with this undertaking.

        Defendants move for immediate disclosure of an expanded universe of "Brady"

material, which they describe as: "any and all information suggesting that Madoff and others

---

[10]    Brady v. Maryland, 373 U.S. 83, 87 (1963), requires the Government to disclose evidence that is favorable to the defendant and is material to issues of guilt or innocence or punishment.

[11]    See Gov Response to Defendants' Omnibus Motion, May 31, 2012, at 13 (docket entry no. 232; Gov. Opp at 88.)

provided false explanations to customers, financial institutions, regulators, employees and/or

anyone else, to disguise BLMIS's failure to invest customer funds, regardless of whether or not one

of the defendants was present for or heard of the false explanation."  (Def. Joint Mem. in Support

of Mot. to Disclose at 5.)

   Material that is "favorable to the accused" includes information that impeaches the

credibility of the government's witnesses.  <u>Giglio v. United States</u>, 405 U.S. 150, 153-54 (1972).

<u>Brady</u> and <u>Giglio</u> material must be disclosed "'in time for its effective use at trial,'" <u>United States</u>

<u>v. Morgan</u>, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010) (quoting <u>United States v. Coppa</u>, 267 F.2d

132, 146 (2d Cir. 2001)), which is "'no later than the point at which a reasonable probability will

exist that the outcome would have been different if an earlier disclosure had been made.'"  <u>Id.</u> at

285 n. 57 (quoting <u>Coppa</u>, 267 F.2d at 142).  The Government has represented to the Court that it

has provided and will continue to provide timely disclosure of all <u>Brady</u> material (as defined by the

parameters of the parties' earlier agreement) as such material comes to light, and that it intends to

produce <u>Giglio</u> material 45 days before trial.

   The Defendants' expanded definition of <u>Brady</u> material is not supported by <u>Brady</u>

and its progeny.  The fact that certain knowledge could be helpful to the defense, or that the

Government's fraud case necessarily involves evidence that victims and regulators were lied to and

misled and could to that extent be consistent with defense theories, does not render evidence of

such third-party deception exculpatory in the <u>Brady/Giglio</u> sense.  "[T]he prosecutor is not required

[under <u>Brady</u>] to deliver his entire file to defense counsel . . . ."  <u>United States v. Bagley</u>, 473 U.S.

667, 675 (1985).  Although Defendants now face a more complex Indictment, no deviation from

the parties' prior timing and scope agreements is necessary to ensure compliance with <u>Brady</u> and

<u>Giglio</u>.  <u>See</u>, <u>e.g.</u>, <u>United States v. Del Rosario</u>, No. 12 Cr. 81, 2012 WL 538243, at *2 (S.D.N.Y.

Feb. 17, 2012) (observing that "the Government has represented that it understands its legal

obligations," and deciding that the court need not become involved in ordering the production of

Brady, Giglio and Jencks Act materials).


### O'Hara And Perez's Request for Unredacted Material

Defendants O'Hara and Perez request that the Court order the Government to

disclose unredacted versions of the Brady material that was previously turned over to them,

arguing that they do not have sufficient context and that the redactions "should not in fairness have

been made." (O'Hara/Perez Mem. at 31.) O'Hara and Perez consented to the Court's in camera

review of such material. Having reviewed the unredacted documents provided by the Government,

the Court has, by separate order, directed the disclosure of additional portions of certain of the

documents. The unredacted version and the versions marked to show the Court's disclosure

instructions will be filed under seal.


### Early Disclosure of Rule 16 and Jencks Material

Defendants also ask that the Court order the Government to provide all additional

Rule 16 and § 3500 disclosures not later than 60 days prior to trial, including the Government's

exhibits, the Government's exhibit list, the Government's witness list, and a list of all indicted and

known unindicted conspirators. The Government had previously agreed to provide all of these

materials and information to Defendants 45 days before trial.

As explained above, the Government must provide a list of exhibits to Defendants

60 days before trial, along with the exhibits themselves and an explanation of which exhibits will

be used against which Defendants. The remaining materials must be disclosed 45 days in advance

of trial, in accordance with the parties' existing agreement.  Even considering the scope of this

case, the 45-day window is "sufficient to allow 'for full exploration and exploitation [of these

materials] by the defense.'"  <u>United States v. Meregildo</u>, No. 11 Cr. 576(WHP), 2012 WL

4378047, at *7 (S.D.N.Y. Sep. 24, 2012) (citation omitted).  <u>See also</u> <u>United States v. Scotti</u>, 47

F.3d 1237, 1250 (2d Cir. 1995) (internal quotation marks omitted) ("[t]he plain language of      .

. .18 U.S.C. § 3500(a) shows that the discovery procedure therein outlined applies only to

statements that must be produced after a witness testifies at the trial") (citing <u>United States v.</u>

<u>Percevault</u>, 490 F.2d 126, 131 (2d Cir. 1974) (court cannot compel pretrial production of Jencks

Act material)).


### Early Disclosure of Rule 404(b) Materials

All Defendants also move to compel the Government to provide 60 days' notice in

advance of trial of its intention to offer at trial evidence pursuant to Federal Rule of Evidence

404(b).  Rule 404(b) provides, in pertinent part, that "[e]vidence of a crime, wrong, or other act   . .

. may . . . be admissible . . . [provided that] [o]n request by a defendant in a criminal case, the

prosecutor must: . . .  provide reasonable notice of the general nature of any such evidence that the

prosecutor intends to introduce at trial."  "The purpose of Rule 404(b)'s notice provision is 'to

reduce surprise and promote early resolution' of any challenge to admissibility of the proffered

evidence.  Rule 404(b) does not define 'reasonable notice' but leaves that determination to the

sound discretion of the Court."  <u>United States v. Saleh</u>, No. 10 Cr. 623(KTD) , 2011 WL 1210207,

at *8 (S.D.N.Y. March 24, 2011) (quoting <u>United States v. Vilar</u>, 530 F. Supp. 2d 616, 640

(S.D.N.Y. 2008)). "Courts in this Circuit have held that two or three weeks notice is reasonable;

however, a longer period may be appropriate, depending on the circumstances."  <u>Id.</u>  (internal

quotation marks and citations omitted).  Due to the complexity of this case and the number of

Defendants involved, the Court finds that a longer advance notice period and a schedule for in

limine motion practice on Rule 404(b) issues are warranted.

The Government must turn over all Rule 404(b) material to the Defendants 60 days

before trial, and must, at that time, initiate in limine motion practice as to such material.  Any

opposition to the motion(s) must be filed within 21 days thereafter and any reply within 7 days

after the opposition is filed.

### The Government's Reciprocal Discovery Requests

The Government requests reciprocal 30-day advance disclosure of exhibits that

Defendants intend to use upon cross-examination and upon their principal case(s), as well as

advance notice of any experts that the Defendants expect to call at trial.  The request is denied as to

documents for use on cross-examination, and as Defendants assert in their reply brief that they do

not expect to formulate exhibit use plans for any defense case(s) prior to the close of the

Government's case, the Government's request is granted only to the extent that Defendants are

hereby directed to make their reciprocal Rule 16 disclosures 30 days prior to the commencement of

trial, or, if later, upon the earlier of their determination to use particular exhibits and the close of

the Government's case.  Defendants' expert disclosures must be made 30 days after the

Government's expert disclosures.


### Alleged Violation of District Court's "Rules for the Division of Business Among District Judges"

Defendants further argue that the Government has violated the Southern District's

Rules for the Division of Business Among District Judges by filing superseding Informations in

this case against Defendants Eric and Irwin Lipkin, David and Craig Kugel, and Enrica

Contellessa-Pitz, and Peter Madoff, and request that the Court "fashion" a remedy for this alleged

violation.  Defendants have no standing to challenge alleged violations of the Rules for the

Division of Business.  The Rules expressly provide that they were "adopted for the internal

management of the case load of the court and shall not be deemed to vest any rights in litigants or

their attorneys."  Rules for the Division of Business Among District Judges (preamble) (emphasis

added).  "The Rules do not vest the individual parties with any substantive rights . . ."  Nixon v.

Diehm, No. 99 Civ. 9843 (KMW)(THK), 2000 WL 280009, at *2 (S.D.N.Y. March 14, 2000).  See

also Latino Officers Assoc. of New York, Inc. v. City of New York, No. 99 Civ. 9568 (LAK),

2000 WL 1030623, at *1 (S.D.N.Y. July 26, 2000) (finding motion seeking to transfer case to

another judge pursuant to Court's internal rules "without basis" because rules conferred no rights

on litigants); United States v. Davila–Bajana, 172 F.3d 38 (2d Cir. 1998) (complaint about

reassignment of case under Eastern District assignment rules "legally baseless" in light of their

identical provision that "[t]hese rules are adopted for the internal management of the case load of

the court and shall not be deemed to vest any rights in the litigants or their attorneys"); United

States v. Gonzalez, 421 F. Supp. 2d 727, 732 (S.D.N.Y. 2006) (same), vacated in part on different

grounds, 291 F. App'x 392 (2d Cir. 2008); United States v. Agate, No. 08 Cr. 76, 2008 WL 699513

(E.D.N.Y. Mar. 13, 2008) (same).

CONCLUSION

For the foregoing reasons, Defendants' motions for severance are denied.

Defendants' disclosure requests are granted in part and denied in part.

The Government must produce a list of exhibits and copies of the exhibits that it

will use to prove the charges in this case no later than 60 days before the commencement of trial.

The Government must also disclose to the Defendants at that time which exhibits it will use against which of the Defendants.  The Defendants' request for earlier and expanded disclosure of Brady/Giglio material is denied.  The Court has, by separate order, directed the disclosure of additional portions of certain of the documents requested by Defendants O'Hara and Perez.

The Government must also turn over all Rule 404(b) materials to the Defendants 60 days before trial, and must, at that time, initiate in limine motion practice as to such materials.  Any opposition to such motions must be filed within 21 days after the motion is filed and reply papers must be field within 7 days after the opposition is filed.  The Government's request for reciprocal discovery is denied, except that Defendants are directed to make their reciprocal Rule 16 disclosures 30 days prior to the commencement of trial, or, if later, upon the earlier of their determination to use particular exhibits and the close of the Government's case.  Defendants' expert disclosures must be made 30 days after the Government's expert disclosures.  The Defendants request for relief from the Government's alleged violation of the Rules for the Division of Business Among District Judges is denied.

This Memorandum Opinion and Order resolves docket entry numbers 320, 323, 326, 330 and 333.  The next pretrial status conference in this case is scheduled to be held on **Monday, June 10, 2013 at 3:00 p.m.**

SO ORDERED.


Dated: New York, New York
       May 28, 2013


                                        /S
                         _____
                         LAURA TAYLOR SWAIN
                         United States District Judge