UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

   -v-                                                   :
                                                      S10 10 Cr. 228 (LTS)
DANIEL BONVENTRE,                 :
ANNETTE BONGIORNO,                     Filed Electronically
JOANN CRUPI,                      :
   a/k/a "Jodi,"
JEROME O'HARA, and                :
GEORGE PEREZ,
                                              :
              Defendants.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### GOVERNMENT'S SUPPLEMETNAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE* (REGARDING EXPERT WITNESS DISCLOSURES)


                                                                        PREET BHARARA
                                                                        United States Attorney
                                                                        Southern District of New York
                                                                        Attorney for the United States
                                                                            of America




MATTHEW L. SCHWARTZ
JOHN T. ZACH
RANDALL W. JACKSON
Assistant U.S. Attorneys
     -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
|   -v- : | S10 10 Cr. 228 (LTS) |
| DANIEL BONVENTRE, : <br> ANNETTE BONGIORNO, <br> JOANN CRUPI, : <br>   a/k/a "Jodi," <br> JEROME O'HARA, and : <br> GEORGE PEREZ, <br> : <br>       Defendants. <br> : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**GOVERNMENT'S SUPPLEMETNAL MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
(REGARDING EXPERT WITNESS DISCLOSURES)**

The United States of America, by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this supplemental memorandum of law in further opposition to the motions *in limine* filed by counsel for defendant Daniel Bonventre (reportedly on behalf of all defendants), seeking to exclude the testimony of five expert witnesses: Dara Schneider (accounting), Rich Diedrich (computer programming), Nancy Brady (information technology architecture), Michael Auerbach (ERISA), and John Sardone (handwriting).[1]

---

[1] The objection to Mr. Sardone's testimony was made in a supplemental letter dated September 9, 2013, and was made solely on behalf of Jerome O'Hara and George Perez.

1

On or about September 12, 2013, the parties met and conferred in an attempt to resolve this motion. Subsequently, and in light of additional disclosures and conversations amongst the parties, the defendants agreed to withdraw their motions in their entirety, except with respect to Dara Schneider, the Government's proposed accounting expert, as to whom counsel for Daniel Bonventre continues to object in part.[2]  For the reasons that follow, Bonventre's motion should be denied.

A.    **The Government's Disclosures**

The Government made its disclosures with respect to Ms. Schneider in three waves.  *First* – pursuant to an agreement among the parties that the Government would reveal the general types of experts it intended to call in advance of the expert disclosure date, in order to afford defendants sufficient time to retain their own experts – the Government disclosed in a letter dated July 19, 2013, that it intended to call, among other experts, experts in the fields of "forensic accounting," "hedge fund/investment advisor accounting," "broker-dealer accounting," and hedge fund/investment advisor/broker-dealer "operations, including trading [and] back-office" operations.

*Second*, in a letter dated August 23, 2013, the Government made the following specific disclosure concerning Ms. Schneider, pursuant to Federal Rule of Criminal Procedure 16:

---

[2]    In addition, counsel for O'Hara and Perez have raised a discrete question about Ms. Schneider's testimony.  Although that objection actually goes beyond the defendants' original objection, the parties expect to be able to resolve it without the Court's intervention.

2

> **Dara Schneider.** Ms. Schneider is a graduate of the State University of New York at Buffalo, with degrees in finance and accounting. She is currently Audit Senior Manager at BDO USA, LLP, where she performs external audits for clients in the financial services industry, with a particular focus on clearing brokers. During the course of a career stretching over nearly two decades, she has participated in numerous audits of large broker-dealers and investment advisors. Ms. Schneider is an expert on the application of accounting principles, including U.S. Generally Accepted Accounting Principles ("GAAP"), to broker-dealers and investment advisors, as well as about the books and records required to be maintained by broker-dealers and investment advisors. Specifically, Ms. Schneider will testify about the proper accounting treatment of customer assets (whether held for the customer or pledged to the firm to be posted as security), firm assets, income, liabilities, and other items. Ms. Schneider's testimony will describe the operation of regulatory agencies, such as the SEC and FINRA, with regard to the accounting operations of broker-dealers. She will offer testimony on related disclosure requirements, explaining the function of FOCUS reports and associated training requirements, such as the Series 27 examination conducted by FINRA. Ms. Schneider will also explain the industry role of organizations such as the American Institute of Certified Public Accountants and the use of its broker-dealer related publications in the industry. Ms. Schneider will explain the meaning of various terminology used in the accounting and book-keeping of broker-dealers. She will explain in detail how the various transactions of broker-dealers are appropriately translated into their general ledgers, stock records, and other books and records. Ms. Schneider will also testify about certain instances in which Madoff Securities' books and records diverged from GAAP accounting.

The Government also provided defendants with a copy of Ms. Schneider's profile.

On August 30, 2012, Bonventre filed his motion to preclude Ms. Schneider's testimony, in part. He argued that, with respect to Ms. Schneider, "the identified

3

subject matter of her testimony includes accounting principles, other matters of general application, and 'certain instances in which Madoff Securities' books and records diverged from GAAP . . . ,' but no identification of any specific such instances is provided. (Bonventre Br. at 3; *see also id.* at 5 (arguing that the Government had failed to identify which "certain instances" Ms. Schneider would testify about); *id.* at 8 (asking Court to preclude Ms. Schneider's opinions "as to 'certain instances' of accounting irregularities about which the government has not provided proper expert notice")).

After the parties' meet-and-confer, by letter dated September 12, 2013, the Government provided supplemental information to defense counsel, identifying the specific instances of improper accounting that will be the subject of her testimony:

> Ms. Schneider will also testify about certain instances in which Madoff Securities' books and records diverged from GAAP accounting. For example, Ms. Schneider will testify regarding a transaction that occurred at Madoff Securities in 2006, in which $100 million worth of bonds were transferred to the custody of Madoff Securities and subsequently used as [] collateral for a $95 million loan. Ms. Schneider will examine the general ledger and stock record of Madoff Securities, and will explain that this transaction was improperly reflected on the company's books and records, as evidenced by GX 105-a55. Ms. Schneider will also testify regarding a separate 2006 transaction in which Madoff Securities secured a $50 million loan using approximately $54 million worth of bonds as collateral. She will examine the general ledger and stock record of Madoff Securities, and will explain that this transaction was also improperly reflected on the company's books and records, as evidenced by GX 105-a55. Ms. Schneider will testify regarding FOCUS reports filed by Madoff Securities, and will testify that the FOCUS reports improperly reflected the assets and liabilities of Madoff Securities.

In an e-mail sent yesterday afternoon, Bonventre's counsel agreed to withdraw his motion to preclude all other experts, but said he was "pressing" his motion with respect to Ms. Schneider. He explained, "the government's notice that she will testify 'about certain instances in which Madoff Securities' books and records diverged from GAAP accounting,' and about 'the proper treatment of customer assets (whether held for the customer or pledged to the firm to be posted as security), firm assets, income, liabilities, and other items' is inadequate. Those disclosures do not meet the letter or spirit of Rule 703, especially under the circumstances of this case." Counsel's e-mail did not address the specific instances of accounting misconduct identified in the Government's supplemental disclosures.[3]

### B.  Legal Standard

The disclosure of expert testimony in criminal trials is governed by Federal Rule of Criminal Procedure 16, which provides:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or

---

[3] Bonventre's reply brief, filed earlier this afternoon, misleading states that "[w]hile the government supplemented its disclosures regarding its tax expert, it has to date not supplemented its disclosure about Ms. Schneider," and then goes on to repeat the complaint that the Government has not disclosed the "certain instances" of non-GAAP accounting at Madoff Securities that will be the subject of Ms. Schneider's testimony. (Bonventre Reply at 3). As set forth above, however, the Government *did* supplement its disclosure, providing precisely this information. There is no doubt that Bonventre's counsel received this additional disclosure, either; it was made in the same letter in which the Government supplemented its disclosures about the tax expert, Ms. Dabney. If nothing else, Bonventre's deliberate choice to ignore the Government's supplemental disclosure should foreclose any further reply on his part, notwithstanding his asserted reservation of rights. (*See* Bonventre Reply at 4).

5

> 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G). Where, as here, the defendant requests that the Government make such a disclosure, the defense is under an identical reciprocal disclosure obligation. *See* Fed. R. Crim. P. 16(b)(1)(C).

Although Rule 16 thus requires a criminal party to disclose a summary of "the witness's opinion," including the "bases and reasons" for those opinions, that disclosure obligation does not contemplate a complete recitation of each and every opinion expected to be offered by a witness, nor does it require an expert in a criminal trial to index the materials he or she relied upon. Indeed, the Government's expert disclosure obligations under Rule 16 stand in stark contrast to, for example, the expert disclosures contemplated by the Federal Rules of Civil Procedure, which requires a "written report . . . prepared and signed by the witness," containing (among other things), "a *complete* statement of *all* opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them," and copies of "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B) (emphases supplied). *See generally United States v. Nacchio*, 519 F.3d 1140, 1152-53 (10th Cir. 2008) (contrasting criminal and civil expert disclosure requirements, and concluding that "[i]n a criminal trial the proponent of expert testimony is not under any obligation to provide a 'complete statement' of the reasons for the expert's opinion,

or an explanation of the expert's methodology"), *vacated on other grounds*, 555 F.3d 1234 (10th Cir. 2009) (en banc);[4] *United States v. Mehta*, 236 F. Supp. 2d 150, 155-56 (D. Mass. 2002) ("One way to decipher the meaning of the criminal expert discovery rules is to compare them to the civil discovery rules, which are much broader. While Fed. R. Civ. P. 26(a)(2) requires a 'complete statement' of the expert's opinion, the criminal rule requires only a 'summary of testimony.' Civil Rule 26(a)(2) additionally requires the disclosure of: '*all* opinions to be expressed and the basis and reasons therefore'" (emphasis supplied)).

**C.    The Government Provided Adequate Expert Disclosures**

Applying these principles, the Government's disclosures were more than sufficient to provide a "summary" of Ms. Schneider's opinions, and the bases and reasons underlying them. Indeed, Bonventre has never objected to the bulk of Ms. Schneider's proposed testimony, which concerns general accounting principles relevant to broker-dealers and investment advisors, record-keeping requirements,

---

[4]    In *Nacchio*, a panel of the Tenth Circuit held that the District Court abused its discretion in excluding a defense expert on both Rule 16 and *Daubert* grounds. The en banc Tenth Circuit subsequently vacated the panel decision and affirmed the district court's exclusion of the defense expert, but did so solely on *Daubert* grounds, leaving the panel's opinion in tact on the Rule 16 issue. *See Nacchio*, 555 F.3d at 1257 n.21 (noting that the en banc court had "elected not to opine on the Rule 16 issue"); *id.* at 1264 (McConnell, *J.*, dissenting) ("all parties now seem to agree that Mr. Nacchio's disclosure was sufficient under Rule 16"). Thus, the *Nacchio* panel decision continues to be good law on Rule 16 expert disclosure issues. *See, e.g., United States v. Biglow*, No. 07-10221-MLB, 2012 WL 887485, at *1 (D. Kan. 2012) (quoting *Nacchio* panel on the "differences between expert discovery in a criminal action and a civil action," and denying defense motion to preclude Government expert because "*Nacchio*'s interpretation of Rule 16 does not require the additional disclosure being sought by defendants").

and the role of regulatory agencies and industry organizations.  In addition, Ms. Schneider will testify to her opinion that, in certain instances, Madoff Securities' books and records diverged from GAAP.

The Government's original disclosure was therefore a sufficient "summary" of Ms. Schneider's opinions – as well as the bases (the books and records) and reasons (GAAP) underlying them.  When Bonventre complained that the Government had failed to identify the specific "certain instances" about which Ms. Schneider will testify, however, the Government voluntarily supplemented its disclosure to provide this information.  Specifically, the Government identified three particular examples of her general opinion that Madoff Securities' accounting books and records diverged from GAAP:

- A 2006 transaction, in which $100 million worth of bonds was transferred to the custody of Madoff Securities and subsequently used as collateral for a $95 million loan, which was improperly reflected on the firm's books and records, including its general ledger and stock record.

- A separate 2006 transaction, in which Madoff Securities secured a $50 million loan using approximately $54 million worth of bonds as collateral, which was also improperly reflected on the firm's books and records, including its general ledger and stock record.

- Madoff Securities' FOCUS reports, which improperly reflected the firm's assets and liabilities

The Government, in other words, has provided precisely the specificity that Bonventre demanded – particularly in view of the fact that the particulars of the two collateralized loan transactions and the false FOCUS reports have previously been spelled out at length in charging documents in this case.  Rather than

8

withdrawing his motion or explaining what additional disclosure he believes is required, however, Bonventre simply reported that he was "pressing" his motion. That motion should be denied.

*United States v. Mehta* is directly on point.  In *Mehta*, the defendant was charged with tax and wire fraud in connection with understating gross sales receipts of three businesses, both for tax purposes and for purposes of calculating payments under a franchise agreement.  The parties made reciprocal disclosures with respect to tax experts; in addition, the defendant provided notice that he would call an expert to opine about certain conduct of the defendant's accountant "and whether it was in compliance with 'generally accepted accounting practices.'" *Mehta*, 236 F. Supp. 2d at 154.  After the Government objected, Mehta provided additional disclosure, identifying certain specific topics, such as "identification of the accounts used for the deposit of business income" (but not identifying those accounts), or "deposit and withdrawal activity in relation to these accounts" (again without identifying the activity or accounts).  *Id*.  The Magistrate Judge, however, held that this disclosure did not comply with Rule 16, and required the defendant to identify "specific instances in which [the accountant's] conduct was not in keeping with [GAAP], the specific generally accepted accounting principles which were not followed, and the reasons why the expert holds the opinion that the act or failure to act of [the accountant] were not in keeping with [GAAP]."  *Id*.

The District Court reversed, holding that the Magistrate's decision was not only wrong, but it was "clearly erroneous or contrary to law."  *Id*.  After reviewing

the differences between civil and criminal expert disclosures, Judge Gertner concluded that the defendant was not required to identify "specific instances" in which the accountant's work diverged from GAAP:

> [T]he defendant's disclosure made clear that the expert would opine that [the accountant] failed to comply with appropriate standards of professional conduct when preparing Mehta's taxes. . . . [The Magistrate's] Order requires more extensive disclosure regarding both the expert's opinion and the bases for the opinion – namely "the specific instances" in which [the accountant's] conduct was not consistent with [GAAP], the specific principles that were not followed, the reasons why the expert believes that [the accountant's] acts failed to comply with [GAAP]. *Nothing in the rules requires that degree of specificity. . . .*

*Id.* at 156-57 (emphasis supplied); *see also id.* at 157 ("To require Mehta's expert to disclose why he challenges each purported item of 'income' – essentially going line by line – would be to require not an expert summary, but effectively an expert deposition.").[5]

Just as the expert in Mehta was not required to disclose the "specific instances" in which the accountant's work diverged from GAAP, the Government was not required to disclose here the "certain instances" in which Madoff Securities' books and records diverged from GAAP. Nonetheless, the Government *did* identify those instances, just as Bonventre requested. Because the Government's expert

---

[5]     *Mehta* (and *Nachhio*, for that matter) concerned the sufficiency of disclosures for defense experts. Because the disclosure requirements of Rule 16(a)(1)(G) (Government experts) and 16(b)(1)(C) (defense experts) are identical, the analysis of those decisions – which turn on the text of the rule – has equal force when applied to Government experts. *See, e.g., Biglow*, 2012 EL 887485, at *1 (applying *Nacchio* to Government expert).

10

disclosures are not only more than sufficient under Rule 16, but exactly what Bonventre asked for, his motion should be denied.[6]

## CONCLUSION

For all of the foregoing reasons, and for the reasons set out in the Government's August 12, 2013, opposition brief, the defendants' motions *in limine* and for other relief should be denied.

Dated:   New York, New York
        August 19, 2013

                            PREET BHARARA
                            United States Attorney

        By:          /s/
                MATTHEW L. SCHWARTZ
                JOHN T. ZACH
                RANDALL W. JACKSON
                Assistant United States Attorneys
                One Saint Andrew's Plaza
                New York, New York 10007
                Telephone:   (212) 637-1945 / 2410 / 1029
                Facsimile:    (212) 637-2452
                E-mail:         matthew.schwartz@usdoj.gov
                                john.zach@usdoj.gov
                                randall.jackson@usdoj.gov

---

[6]     Should the Court for some reason disagree, the appropriate remedy – particularly in light of Bonventre's failure to identify any specific deficiency in the Government's disclosure that has not been cured – is not to exclude Ms. Schneider, but to permit an opportunity for further supplementation. *See, e.g., United States v. Cuellar*, 478 F.3d 282, 294 (5th Cir. 2007) (holding that where Government's failure to comply with Rule 16 did not "frustrate[]" its "purpose" – "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through cross-examination" – then exclusion of Government's expert, "the most extreme sanction possible," was not warranted (internal quotation marks and citations omitted), *vacated on entirely different grounds*, 128 S.Ct. 1994 (2008); *see also Nacchio*, 555 F.3d at 1274 (McConnell, *J.*, dissenting) (trial court abuses its discretion when it excludes expert because of inadequate Rule 16 disclosures "unless those violations seriously affect the trial").