# SERCARZ & RIOPELLE, LLP
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
(212) 586-4900
FACSIMILE (212) 586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

*ADMITTED IN NY & NJ

October 6, 2013

<u>**VIA ECF AND EMAIL**</u>

Hon. Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 755
New York, NY  10007

               Re: <u>United States v. Annette Bongiorno, et al.,</u>
                         (S-10) 10 Cr. 228 (LTS)

Dear Judge Swain:

      We move, <u>in limine</u>, to limit the testimony of Bruce Dubinsky, a proposed expert whom we understand may be proffered as a witness early in the government's case.  We file this application on behalf of all defense counsel.

      We attach for Your Honor's review a 143 page PowerPoint[1] presentation which the government intends to utilize during his testimony.  This Power Point presentation was emailed to the defense on October 1st at approximately 9 p.m.

      The testimony the government intends to elicit through Mr. Dubinsky is inadmissible in many respects.  The Power Point presentation is also inadmissible and improper.  As the PowerPoint presentation makes strikingly clear, the government intends to offer through Mr. Dubinsky testimony that improperly amounts to a government summation during trial, constitutes improper opinion testimony which usurps the province of the jury, and is replete with hearsay and violates the confrontation rights of the defendants.  Moreover, it is clear that Mr. Dubinsky will also be asked to characterize documents and programs in inflammatory language, such as "fake" and "manipulated."  We ask for an opportunity to address all of these issues in detail with the Court, and if common ground with the government cannot be found, we ask that a hearing be held, pursuant to Rule 104 (a) of the Federal Rules of Evidence, before Mr. Dubinsky

---

[1]  Because the PowerPoint presentation is too large to file on the ECF system, it will be emailed directly to the Court's law clerk together with a copy of this letter, with a copy to the government.  Only this letter itself will be filed on the ECF system.

The Honorable Laura Taylor Swain
October 6, 2013
Page 2

is allowed to testify.  The hearing should be conducted outside the jury's presence pursuant to R. 104 (c) (3).  We raise these concerns now, so that time and resources will not be wasted and so that an orderly schedule can be maintained.

      To be fair, there is much testimony that Mr. Dubinsky can properly give.  The securities industry background and explanations of highly technical terminology that the jury will hear over and over again comprise a useful and impartial primer that the defense does not object to and even welcomes.  Mr. Dubinsky can also testify to the objective results of his examination of the records and systems maintained by BLMIS, such as the absence of any evidence that the trades reflected in the IA customers' account statements occurred; that the computers associated with the IA business were not linked to any trading systems; and the absence of funds in the Madoff Securities bank accounts at the end of 2008.

      But the government will ask Mr. Dubinsky to testify to much more, including a variety of inappropriate opinions.  Many of those opinions are not expert opinion at all, but subtle and potentially potent inferences of culpability.  In other words, they are opinions as to what documents (not yet even in evidence) mean, how they should be interpreted, and what they mean about the state of mind of some of the defendants and unspecified perpetrators of the "fraud" and "Ponzi scheme."  These "opinions" are thinly veiled assertions that all of the defendants are guilty.  This is not proper expert testimony and should not be permitted.

      To give the Court a sense of the improper testimony the prosecution intends to solicit, we call the Court's attention to several of the slides included in the attached Power Point.  These are particularly egregious examples of why certain testimony by Mr. Dubinsky would be improper:

      First, at page 2 of his presentation, Mr. Dubinsky indicates that he was assigned by the United States Bankruptcy Trustee to determine whether the entity "Madoff Securities" was a fraud, whether it was solvent, and whether it was a Ponzi scheme.  At page 3 all of these questions are answered in the affirmative.

      We respectfully submit that it is inappropriate for Mr. Dubinsky to testify that the entity "Madoff Securities" *was* a "fraud" or *was* a "Ponzi scheme." While such a conclusion may have been appropriate for the civil litigation for which it was prepared (which was on behalf of the entity), it is wholly inappropriate in this criminal case.  This is a case about individual criminal liability, not whether the *entity itself* is considered under the law to have engaged in a fraud or a Ponzi scheme.  Indeed, since an entity acts only through individuals, to label the entire entity as a "fraud" or a "Ponzi scheme" is not only inaccurate in the context of a criminal case where individual criminal liability must be determined, but inevitably suggests that everyone associated with that entity was a participant in the wrongdoing.  Such an inference – while desirable for the government -- is plainly unjustified and unfairly prejudicial.

      Second, at pages 32 and 37, the government seeks to illustrate for the jury sample trade confirmations upon which the expert purportedly bases his conclusions.  These particular

The Honorable Laura Taylor Swain
October 6, 2013
Page 3

confirmations relate to trading in the account of Annette Bongiorno. This is clearly unfair and unduly prejudicial. The government should be directed to redact this reference to the defendant, or to use another IA client's account confirmations for this purpose.

       Third, at pages 93 to 99, the government improperly seeks to illustrate through Dubinsky that Daniel Bonventre engineered a bogus backdated trade in his investment advisory account. The pages include handwritten notes, purportedly written by Mr, Bonventre with criminal intent, culminating in a check drawn to him and his wife for $999,375. The government is entitled to introduce the documents, attempt to demonstrate a relationship, and press an inference of criminal intent, but it is improper to use a witness as a surrogate for summation. Further, Dubinsky's proposed testimony on this point is also improper because it appears that the government never provided proper expert notice that Dubinsky would testify about this transaction. The Big Lots trade is listed in Dubinsky's expert report on one line among 14,687 bogus Ponzi scheme trades, but the exhibits that appear at pages 93 to 99 of the PowerPoint and Dubinsky's proposed testimony relevant thereto are not part of his voluminous report (or are so buried somewhere therein as to constitute inadequate notice).

       Fourth, at page 139, Mr. Dubinsky defines the term "Ponzi scheme" pursuant to the Association of Certified Fraud Examiners, Fraud Examiners Manual § 1.1731 (2009). The ensuing slides offer the witness' expert opinion regarding the key indicators of a Ponzi scheme. The slide at page 141 then provides a graphic display of the witness' opinion that the mechanism described in earlier slides was used to siphon money not only to Bernard Madoff but to others. It is worthy of note that this slide pictures five individuals – two women and three men, as the others who are purportedly the recipients of the ill-gotten gains. Clearly, this is intended to represent the five defendants (3 men, 2 women) on trial. The only thing the government forgot to do was to make one of the women substantially shorter than the others.

       More generally, throughout the slides, Mr. Dubinsky asserts what the "evidence is" to support his opinions, even though almost all of that evidence will not have been admitted at the time of his testimony, and the import of the evidence will be hotly disputed. These assertions allow him to give his imprimatur to what are allegations only. Mr. Dubinsky can be permitted to say what the government alleges, but he cannot opine on what the evidence says, what it may or may not mean, or whether the "evidence" amounts to 'fraud' or anything else.

       Mr. Dubinsky's slides are replete with similarly prejudicial characterizations of the documents he has examined. For example, he refers to a "fake DTC report" at page 84, even though he has no capacity to testify to what is "fake" in these circumstances. And he uses inflammatory terms such as "manipulate customer statements," "fictitious trading data," and "fake DTC computer programs" at page 107. All of these terms require speculation concerning the intent of the creator of these records, and are not a proper subject of expert testimony. See United States v. Scop, 846 F.2d 135 (2d Cir. 1988) (reversing securities fraud conviction after government's expert offered opinion testimony tracking statutory language such as "manipulative" and "defraud").

The Honorable Laura Taylor Swain
October 6, 2013
Page 4


Finally, Mr. Dubinsky even appears ready to testify as an expert in computer programming, computer systems and computer forensic analysis, *see, e.g.,* pages 4, 39 and 108-113, although he has no such expertise.  Indeed, his expertise is as a fraud examiner, *not* as a computer programmer.

**These Slides, And The Testimony That Will Accompany Them Are Replete With Hearsay And Will Violate The Confrontation Rights Of The Defendants**

The Federal Rules of Evidence prohibit as hearsay the receipt of out-of-court statements offered to prove the truth of the matter asserted.  See Fed.R.Evid. Rule 801 and 802; United States v. Gomez, 617 F.3d 88, 91 (2d Cir. 2010).  Moreover, such testimony violates the confrontation clause when the defendant has no meaningful opportunity to confront or cross examine the hearsay declarant.  See Crawford v. Washington, 541 U.S. 36 (2004).

It appears that Mr. Dubinsky will testify that he was assigned by the United States Bankruptcy Trustee to determine whether Madoff Securities was a fraud and a Ponzi scheme.  It follows that in reaching his conclusions on these issues, he relied upon interviews and data which have not been offered into evidence at this trial, and will not be offered as evidence.  To the extent that he does so, Mr. Dubinsky's testimony will violate the defendants' right to confront the sources of information on which Mr. Dubinsky relies.

For example, at slide 57 of his presentation, Mr. Dubinsky is apparently prepared to describe the history of an accounting firm named Avellino & Bienes, which held an account at BLMIS for many years.  As slide 57 indicates, Mr. Dubinsky will not limit his testimony to the information in the Avellino & Bienes account statements he examined.  Instead, he will regurgitate the entire history of Avellino & Bienes as an "accounting firm that developed into a private investing firm… [which] promised rates of return to clients … and [ultimately] divested its 'investment advisory' business."  Mr. Dubinsky can only know these facts based on his discussions with other, unidentified persons – the case agent, the Assistant United States Attorneys, or someone else? – whose own sources of information may themselves be hearsay.  This sort of summary testimony based on statements of others will violate the defendants' right to confront and cross examine the real sources of information on which Mr. Dubinsky relied when he prepared slide 57 of his presentation.

Moreover, while we acknowledge that experts may examine the multitude of documentary evidence that may be introduced by stipulation for the purpose of determining, inter alia, whether the trades reflected in monthly account statements were actually made, it appears from the slides that this witness will go well beyond this appropriate expert testimony and offer legal conclusions which embrace issues of knowledge and intent, and which are based on hearsay learned from others.

The Honorable Laura Taylor Swain
October 6, 2013
Page 5

In <u>United States v. Gomez</u>, 617 F.3d 88 (2d Cir. 2010), this Court held that testimony by a case agent describing the background and content of recorded conversations between an informant and the defendant violated the proscription against hearsay.  The Court found that implicit in the agent's testimony regarding the instructions he gave to the witness, and the witness' subsequent phone call, was evidence that the informant had, indeed, purchased drugs, and that he purchased them from the defendant.  Since the detective was not a participant in the conversations his testimony was hearsay.  Moreover, while the issue was not raised in <u>Gomez</u>, the Court added:

> While we decide this case on hearsay grounds, we recognize that Gomez's claim directly implicates the confrontation clause and his right to confront his accusers in court.  [The agent's] testimony told the jury, by implication, that [the drug purchaser] had accused Gomez of being his drug supplier.

Id. at 96.

Just as the case agent's testimony in <u>Gomez</u> implied that the cooperating witness accused the defendant of being his drug supplier, Mr. Dubinsky's proffered testimony will allege, based upon evidence not offered at this trial that BLMIS conducted its business as a widespread fraud, meaning that those involved possessed the requisite knowledge and intent to commit crimes.

Accordingly, we submit that the testimony and the slides will result in a violation of the proscription against hearsay, and the denial of the defendants' confrontation rights.

**The Use Of These Slides Before The Underlying Evidence Is**
**<u>Admitted Will Result In The Admission Of Additional Impermissible Hearsay</u>**

It is hornbook law that summary charts may be admitted only upon a proper foundation establishing the underlying evidence.  <u>United States v. Citron</u>, 783 F.2d 307, 316 (2d Cir. 1986).  The District Court must determine as part of the foundation that the summary charts "fairly represent and summarize the evidence on which they are based."  See <u>United States v. O'Connor</u>, 237 F.2d 466, 475 (2d Cir. 1956); <u>see</u> <u>Citron</u>, 783 F.2d at 316; <u>see</u> also <u>United States v. Koskerides</u>, 877 F.2d 1129 (2d Cir. 1989).  Since many of Mr. Dubinsky's slides are summary charts, these principles apply to their admissibility.  For this reason, even if Mr. Dubinsky will be permitted to testify, the Court must ensure that any opinion testimony is based on facts adduced at <u>this</u> trial.

The admission of Mr. Dubinsky's summary testimony and the display of his summary charts to the jury before all the evidence on which they are based is admitted is manifestly prejudicial.  The government is seeking to have an expert witness provide a detailed roadmap of the manner in which BLMIS conducted its business, and an expert conclusion that the business amounted to a rampant fraud in which the defendants had to possess the requisite knowledge and intent – all before the jury hears from a single witness with first-hand knowledge of the conduct

The Honorable Laura Taylor Swain
October 6, 2013
Page 6

of business operations at BLMIS.  This through- the- looking- glass manner of proof is just the kind of procedure criticized in United States v. Garcia, 413 F.3d 201, 208 (2d Cir. 2005)

The offending testimony and slides should be precluded on these grounds as well.

**It Appears That Mr. Dubinsky Will Provide Improper Expert Testimony That Usurps The Province Of The Jury.  The Slides Contain Improper Opinions And Must Be Precluded On These Grounds As Well**

Although opinion testimony, whether offered by a lay witness pursuant to Fed.R.Evid. Rule 701 or by an expert pursuant to Fed.R.Evid. Rule 702, is not inadmissible simply "because it embraces an ultimate issue to be decided by the trier-of-fact," Fed.R.Evid. Rule 704, it is not properly received "merely to tell the jury what result to reach."  See Advisory Committee Notes on 1972 Proposed Rules; Weinstein's Federal Evidence § 701.05 (2d Edition 2004)(noting that courts should be wary of opinion testimony whose "sole function is to answer the same question that the trier-of-fact is to consider in its deliberations); see also United States v. Garcia, 413 F.3d 201 (2005).

Mindful of this concern, the Second Circuit has ruled that it is error to allow law enforcement witnesses to express opinions as to a defendant's culpability based on the totality of information gathered in the course of their investigation.  See United States v. Grinage, 390 F.3d 749, 751 (2d Cir. 2004) (rejecting receipt of such evidence as lay opinion under Rule 701); United States v. Dukagjini, 326 F.3d 54 (2d Cir. 2003)(rejecting receipt of such evidence as expert opinion under Rule 702); see also, Garcia, supra.

Yet, this is exactly what will occur if Mr. Dubinsky's testimony and the accompanying slides are admitted into evidence. First of all, the term "fraud" embraces a legal conclusion and relates directly to numerous counts in the Indictment against these defendants.

Moreover, the efforts at pages 139-143 to define for the jury a "Ponzi scheme" add an additional layer of prejudice by suggesting that the type of business operation conducted here is well known to experts in the field, such as the Association of Certified Fraud Examiners.  In order to establish the charges contained in the Indictment, it is not necessary for the government to demonstrate that the business operations of BLMIS amounted to a "Ponzi scheme" or that the term is a matter of common usage among experts in the field.  Such testimony will amount to an improper argument that those involved possessed the requisite knowledge and intent and that they should have been on notice of the common practice by unscrupulous participants in the securities industry of taking money from new investors in order to make payments to earlier investors – inferences which it is the exclusive province of the jury to draw.

This expert testimony will be particularly damaging to Ms. Bongiorno given the government's decision to use as an example of a trade confirmation, a trade made in her account.

The Honorable Laura Taylor Swain
October 6, 2013
Page 7

This slide takes all of Mr. Dubinsky's inappropriate expert conclusions regarding knowledge and intent and attributes them directly to this defendant.

      Finally, the Second Circuit has also ruled that experts may not overstep their legitimate role in helping jurors understand concepts beyond their ken by pressing the expert's view on issues before the jury, providing legal conclusions or embrace ultimate issues in the case.  See United States v. Duncan, 42 F.3d 97, 102 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination. In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion"); Scop, supra, 846 F.2d 1235 (reversing securities fraud conviction where government's expert allowed to give opinion that embodied legal conclusions). The use of an expert to state a legal conclusion is not permissible. "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir 1991).  Mr. Dubinsky's testimony would go beyond factual conclusions and would embrace the ultimate issue the jury is deciding, in violation of Federal Rule of Evidence 704.  See United States v. Neresian, 824 F.2d 1294, 1308 (2d Cir. 1987) (warning that the "use of expert testimony may have the effect of providing the government with an additional summation by having the expert interpret the evidence.")

### Conclusion

      For all the reasons set forth herein, we respectfully submit that Mr. Dubinsky's testimony should be limited to a helpful tutorial on the securities industry and the factual results of his examination of BLMIS' business records and systems; and, that testimony and slides that stray beyond this firm boundary  be excluded ..

                                     Most respectfully,

                                     /S/

                                   Maurice H. Sercarz

Encl.