**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 16, 2013

BY ECF

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Suite 755
New York, New York 10007

> Re:     *United States v. Daniel Bonventre, et al.*
>          *No. S10 10 Cr. 228 (LTS)*

Dear Judge Swain:

        We write in response to the October 14, 2003 letter to the Court from counsel to George Perez seeking to preclude Matthew Cohen, a government witness, from testifying about certain statements made to him by Mr. Perez.  Perez's application should be denied, because his statements are admissions about his involvement (or claimed lack thereof) in creating the computer programs that are at the heart of the charged conduct.

## I.     The Anticipated Evidence

        Matthew Cohen is a managing director at AlixPartners, the consulting firm retained by the SEC and SIPC appointed trustees to liquidate Madoff Securities, where he specializes in computer forensics and e-discovery issues in connection with investigations and litigation.  The Government expects Mr. Cohen to testify, among other things, that he was tasked with "reverse engineering" the Madoff Securities investment advisory computer system.  As part of the reverse-engineering process, Mr. Cohen worked with George Perez and, later, Jerome O'Hara, the two computer programmers who were responsible for the investment advisory computer system.  Early on, Mr. Cohen asked Mr. Perez to identify all customer accounts.  In response, Mr. Perez printed the so-called a.name file, which is a computer file that contains identifying information about each of the more than 4,000 investment advisory accounts at Madoff Securities.  In subsequent conversations, Mr. Perez explained that another person originally designed the investment advisory systems, but had died, and that he and Mr. O'Hara merely operated and maintained it.  (Mr. O'Hara similarly described his responsibilities to Cohen as maintaining and updated the investment advisory programs).  Mr. Perez explained the meaning and relationship of some, but not all, of the programs that Mr. Cohen asked about.  Later, after Cohen had spent time with the system and understood that Perez and O'Hara had in fact designed and/or materially modified the investment advisory programs, Mr. Perez acknowledged those facts.

In addition, Mr. Cohen will testify that at some point in his work, he learned that O'Hara and Perez's personal investment advisory accounts had been funded with nearly identical journal entries (*i.e.*, internal cash credits not involving actual incoming cash) on the same day, and had later been closed on the same day.  When Cohen asked Perez about those coincidences, Perez explained that Bernard Madoff had asked the programmers to create certain computer programs that made them uncomfortable, and had paid them approximately $100,000.

## II.    Discussion

According to counsel's letter, the *only* portion of this testimony to which Perez objects is Perez's statement that someone else originally designed the investment advisory programs, and that he and Mr. O'Hara merely maintained it.  This testimony, which concerns George Perez's role in the charged conduct – namely, designing and maintaining the computer systems used to perpetrate the fraud at Madoff Securities – is plainly relevant.  Indeed, Rule 401 provides that evidence "is relevant" if it has "any tendency" to make a fact "of consequence" "more or less probable than it would be without the evidence."  Perez's statements make it more probable that (a) he understood the scope of the investment advisory business; (b) he worked on the investment advisory computer systems; and (c) he understood the function and relationship of the programs on that system.  There is, moreover, no plausible argument that this evidence is unduly prejudicial:  it is a straight-forward admission by the defendant that he was responsible for maintaining the programs that are at the heart of certain of the charge against him.

Defense counsel worries, however, that the Government will argue that Perez's statements show that "he was minimizing his role with regard to the [investment advisory] server because he knew he was guilty of the charged crimes," and so are being introduced "in the nature of an alleged false exculpatory statement."  As a result, counsel asks that the statement be precluded.

As counsel admits, however, Perez's statements are not hearsay.  And as set forth above, they go to the heart of the charged conduct.  Unlike the testimony that the Court has already excluded – involving O'Hara and Perez's surreptitious printing of more than 90 incriminating programs, while making sure that no one knew what they were doing – there is no even arguably irrelevant interpretation of this evidence.  Thus, if Perez's statements to Cohen were true, then he was admitting to conduct that comprised the charged crime.  And if they were false, then he was minimizing (but still admitting) his involvement.  Either way, however, the statement is relevant.

Moreover, the request to preclude Mr. Cohen's testimony is premature, at best.  As we have already explained, the Government does not intend to reference these admissions in its opening statement, and although Matthew Cohen will be an early witness, he will simply recount his conversation with Perez and not opine on its truth or falsity.  Given the undisputable relevance of the admissions, the Court should allow the Government to elicit them and then, if appropriate, permit Perez to renew his objection to preclude the Government from *arguing* the

evidence as probative of consciousness of guilt. [1]  Put differently, counsel's fear that the Government may use a bit of plainly relevant testimony to make an argument he believes is not warranted is not a reason to exclude the evidence; it is, at best, a reason to preclude the argument.  As a result, Mr. Cohen should be permitted to testify to the full scope of Mr. Perez's admissions about his involvement in creating and/or maintaining the computer programs at the heart of the charges against him.

Thank you for your consideration.

Respectfully,

/s/

MATTHEW L. SCHWARTZ
JOHN T. ZACH
RANDALL W. JACKSON
Assistant United States Attorneys
Tel.:  (212) 637-1945

cc:     BY ECF

Andrew Frisch, Esq.
Roland Riopelle, Esq.
Eric Breslin, Esq.
Gordon Mehler, Esq.
Larry Krantz, Esq.

---

[1]     Perez also argues that his statements could not be "in the nature of an alleged false exculpatory statement" because Mr. Cohen was not a law enforcement officer.  But it is undisputed that Mr. Cohen and AlixPartners were brought in by the court-appointed trustees for Madoff Securities to investigate the fraud, and that AlixPartners and the FBI were working closely during the first few months of the investigation.  The incentives to lie to Mr. Cohen were therefore virtually identical as the incentives for lying to official law enforcement personnel. And in any case, this is another question that goes to the *use* of the evidence, and not its admissibility.