SERCARZ & RIOPELLE, LLP
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019

1-212-586-4900
FACSIMILE 1-212-586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

*ADMITTED IN NY & NJ

October 20, 2013

**BY FAX AND ECF FILING**

Hon. Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 755
New York, NY  10007

                Re: <u>United States v. Bonventre, et al.</u>,
                    S10 10 Cr. 228 (LTS)

Dear Judge Swain:

      I write to flag an issue for the Court with respect to the testimony of Winifer Jackson.  Ms. Jackson is anticipated to testify later this week.  A review of the 3500 material relating to her testimony and the various exhibits about which she will testify prompts me to write this letter.  I will be brief, because I write simply to flag the issue about which I am concerned.[1]

      It appears that Ms. Jackson will identify some of the reams of handwritten notes made and preserved by Ms. Bongiorno during her 40 year career at Madoff Securities.  I have no objection to Ms. Jackson identifying these notes as notes of Ms. Bongiorno, if she can identify Ms. Bongiorno's handwriting – and I have every confidence that Ms. Jackson knows what Ms. Bongiorno's handwriting looks like.  I also do not object to Ms. Jackson reading brief excerpts from the notes after they are admitted, to the extent the particular excerpts are relevant to the government's case or the defense case.  But I will object to any request by the government to have Ms. Jackson interpret or elaborate on the meaning of the notes, unless they are notes that were directed to Ms. Jackson.

      Ms. Jackson can be permitted to tell the jury what her understanding was of any particular note written to her by Ms. Bongiorno.  But Ms. Jackson cannot opine as to what Ms. Bongiorno meant (as opposed to what she wrote) by her notes.  She would have no way to know this.  All she can know is what she understood a note addressed to her meant.  In addition, Ms. Jackson should not be permitted to interpret the meaning of a

---

[1] Because this issue will likely surface with regard to other government witnesses and with respect to defendants other than Ms. Bongiorno, we submit this letter on behalf of other counsel as well.

SERCARZ & RIOPELLE, LLP

note written by Ms. Bongiorno to someone other than Ms. Jackson or a note written by Ms. Bongiorno to herself (many of the notes appear to be "to do" lists). As to such notes, Ms. Jackson cannot give any interpretation without speculating, since she was not a participant in the "conversation" of which the note was a small part.

In this case, Ms. Bongiorno's notes are the equivalent of tape recorded conversations – they are a record of Ms. Bongiorno's thoughts and statements during her career at Madoff Securities. The notes are in some cases clearly directed to others, and in some cases, they appear to be Ms. Bongiorno's notes to herself.

The Second Circuit has long frowned upon a practice of allowing witnesses to interpret the meaning of conversations in which they did not participate, because such interpretation is inappropriate lay opinion. The Circuit has also limited the interpretation of conversations to those that are ambiguous or in a code language that would make them inscrutable to an ordinary juror. See, e.g., United States v. Aiello, 864 F.2d 257, 265 (2d Cir. 1988) (participant allowed to interpret ambiguous references in conversation in which he participated); United States v. Urlacher, 979 F.2d 935, 939 (2d Cir. 1992) (District Judge properly restricted participant's interpretation of conversations "to the explanation of statements or words on the tape that would be ambiguous or unclear to someone who was not a participant in the conversation"); United States v. Rea, 958 F.2d 1206, 1217-19 (2d Cir. 1992) ("when the [District] court allowed Sarowitz to give his opinion that Rea [another participant in the conversation] had to know [conversation was criminal in nature] it did so in the context of a record in which there had been no testimony that Rea had been told that [others] had agreed to a [criminal] scheme ... [and therefore, the] record, when the opinion was offered, did not permit the court to conclude that the opinion was based on Sarowitz's perceptions"); United States v. Grinage, 390 F.3d 746, 749-751 (2d Cir. 2004) (witness's interpretation of conversations in which he did not participate improperly admitted).

The Circuit has also been wary of permitting a witness to testify as to what another participant in a conversation "knew" where the conversation at issue was clear on its face. See United States v. Garcia, 291 F.3d 127, 140-41 (2d Cir. 2002) (where participant in conversation "offered an opinion about what he understood Garcia [another participant] to mean, he was indirectly offering his opinion about what Garcia knew," and such testimony was impermissible without foundational testimony that conversation was in code and oblique).

Ms. Bongiorno's counsel knows of only one exception to the general rule that a person who did not participate in a conversation should not be permitted to interpret it. That exception is found in United States v. Yanotti, 541, F.3d 112, 126-27 (2d Cir. 2008). In Yanotti, one participant in a loansharking conspiracy was permitted to testify what another conspirator meant by coded language in a conversation in which the witness did not participate. In that case, the conversation at issue was "cryptic and required interpretation" for a jury to understand, and the Circuit found that the explanation of terms used in the conversation by a co-conspirator who was not himself a participant in the conversation was helpful to the jury and appropriately admitted.

2

SERCARZ & RIOPELLE, LLP

   Here, Ms. Bongiorno's notes are not cryptic, and they don't require much interpretation to be understood. Indeed, the Court will recall that I displayed several of Ms. Bongiorno's notes for the jury during my opening statement – and their meaning was quite clear to anyone who read the notes carefully. In these circumstances, Ms. Jackson should not be permitted to interpret Ms. Bongiorno's notes or embellish on them, unless they are notes to Ms. Jackson herself. In the case of notes written to Ms. Jackson, Ms. Jackson should be permitted to testify to her own understanding of what Ms. Bongiorno meant when she gave Ms. Jackson the note, but she should not be permitted to opine as to Ms. Bongiorno's state of knowledge when the note was written. Ms. Jackson's interpretations or embellishments of notes not written to her, and her opinion as to the status of Ms. Bongiorno's knowledge would constitute improper lay testimony, and would also be cumulative and a waste of time in the context of this case. See Fed. R. 403, and 701.

                Respectfully submitted,

                Roland G. Riopelle

Cc: Jocelyn Courtney, Esq. and All Counsel (By E-mail)

3