*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 20, 2013

**BY ELECTRONIC DELIVERY/HAND**

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *United States v. Bonventre, et al.*
               **No. 10 Cr. 228 (LTS)**

Dear Judge Swain:

      The Government respectfully writes to request certain curative instructions and to move to preclude cross-examination and arguments related to various themes raised by defense counsel during the parties' opening statements. Specifically, the Government requests that the Court provide two curative instructions to the jury: (1) instructing the jury that it is appropriate and expected that the Government and defense counsel will meet with and prepare witnesses for trial testimony; and (2) instructing the jury that the defendants are properly joined as defendants in this trial because a grand jury returned an Indictment against all of them charging them with participating jointly in the charged conspiracies and other related crimes. The Government requests that the Court preclude the defendants from further arguing or cross-examining witnesses with regard to: (1) the guilty pleas of non-testifying alleged co-conspirators; (2) topics related to the nature of the work of the U.S. Attorney's Office, including the suggestion that it is a "political" office; and (3) the SEC Inspector General report on Madoff and more generally the alleged "failure" of the SEC or other entities to discover the Madoff Ponzi scheme. For the reasons explained in more detail below, the Court should give the requested instructions on Monday and should preclude each of these arguments as irrelevant or otherwise impermissible.

**I.    Background**

      On Thursday, October 17, 2013, defense counsel for the five defendants in the above-captioned case gave their opening statements. During the opening statements of counsel for the defendants, a number of themes were developed by one or more of the defendants, including the following:

- <u>That the Government has acted improperly in meeting with and preparing witnesses:</u> (Tr. 155 (Mr. Frisch: "Over the last four or so years the government has met with DiPascali about 56 separate times so he can

help them build a case against Dan and others"); Tr. 155 (Mr. Frisch: "the government lawyer did not even mention Frank DiPascali's name until over an hour into his opening. Even though the government has met with DiPascali 56 times, 56 times, even though so much of all that the lawyer told you yesterday about Dan is straight from the government's 56 meetings with DiPascali"); Tr. 159 (Mr. Frisch: "After Madoff was arrested, Enrica met with the government. In fact, she met with the government about 14 times over the 2½ years following Madoff's arrest in 2008. 14 times. Most of those meetings were very lengthy. That is, they were lengthy and they were usually attended by a total of about six employees of the government, that is, the United States Attorney's office and the U.S. Securities and Exchange Commission. **Some of the same government people sitting in the well of the courtroom helped conduct those meetings.** After those 14 meetings over 2½ years -- and let me say that again -- after those 14 meetings over 2½ years, Ms. Cotellessa-Pitz typed a two-page single-spaced letter to the government. She wrote in her letter that the government had told her lawyer that the government was about to indict her and that she should plead guilty pursuant to a cooperation agreement. That is, she should say she was guilty and testify"); Tr. 161 (Mr. Frisch: "Ladies and gentlemen, it will be for you to decide whether Ms. Cotellessa-Pitz, after 2½ years and 14 meetings, suddenly realized she was guilty or whether she succumbed to unrelenting and urgent government pressure and government power and capitulated when facing the impossible choice at sitting at one of these tables and fighting the federal government or accepting an easier path, saying what the government needs you to say so the government is on your side and not using every resource at its disposal, every tool in its arsenal, every bit of its power, the unrelenting attacks and unforgiving urgency of its every word to convict you."); Tr. 190 (Mr. Riopelle: "Well, **testimony is like sausage, too, and the government would probably prefer you to just enjoy the end product, but we're going to get into how it's made. 56 meetings? Over two years? Do you think that Mr. DiPascali might have got some hints about what he was expected to say?** You'll hear that the government has met with these sorts of witnesses over and over and over and over again. You'll hear that they have agreements . . . . and you'll ultimately decide whether those agreements are some kind of truth serum or a carte blanche, as long as you say whatever the government needs you to say") (emphasis added);

- That the Government has improperly joined the defendants for trial: Tr. 290 (Mr. Krantz: "I cast no aspersions against them whatsoever, but I do want to point out to you that you cannot just lump everyone together who's at this defense table. **This group is at the defense table because the government has chosen them to be a group**, not because they

raised their hand and said, we want to come to this trial together") (emphasis added);

- That the jury should consider the guilty pleas of coconspirators who will not appear as witnesses: Tr. 275 (Mr. Krantz: "Of course, we know now that they were not doing their jobs at all. In fact, you will learn that Peter Madoff has pleaded guilty and is in jail."); Tr. 254 (Mr. Breslin: "Not all of them have been charged with a crime. Most in fact have not. Of all the people who ever worked for Madoff Securities, you have these five defendants who have pled not guilty, you have another handful that have pled guilty. [Government objection]"); Tr. 183 (Mr. Riopelle: "Let's do that. Let's compare Ms. Bongiorno's conduct to the persons who have pled guilty. . . . Peter Madoff, his reaction was to try to smuggle documents out of the firm. And I believe you will also hear that Mr. Madoff attempted to destroy documents as well. These are people who pled guilty.");

- That the U.S. Attorney's Office is a "political" entity with improper motives: Tr. 136 (Mr. Frisch: "in the United States of America, guilty or not guilty is decided . . . not on the say-so of federal government employees who answer to a federal government political appointee, but by a jury"); Tr. 154 (Mr. Frisch: "Madoff has something in common with the United States Attorney under whose name this case is brought and to whom these government lawyers answer. Both the United States Attorney and Madoff embraced DiPascali, the guy who ran and hid when Madoff was arrested in 2008.");

- That the jury would be able to appropriately consider the details of the SEC Inspector General's report on the SEC Madoff investigation, and more generally that the alleged "failure" of that investigation was a relevant issue at this trial: Tr. 156 (Mr. Frisch: "you will see that this is the same federal government that sent junior staff to audit Madoff rather than seasoned veterans, whose auditor in charge of scrutinizing Madoff married Madoff's niece, which took a government employee off the case when she urged a closer look at DiPascali and Madoff's IA business, that failed to make that simple call to DTC in 2006 which would have stopped the fraud right there and saved investors billions of dollars."); Tr. 211 (Mr. Mehler: "You will learn that even the SEC's own Inspector General blamed the government auditors for not taking necessary and basic steps that would have uncovered the fraud years before it collapsed. You know, growing up, my dad -- and I don't have as many anecdotes as Mr. Riopelle. I simply can't compete with him. However, let me tell you one. My dad always told me to point the finger at yourself before you point it at others. The government will not point the finger at itself in this trial very much.")

At the conclusion of the defense summations, the Court adjourned the proceedings and instructed the jury that trial would resume on Monday morning, October 21, 2013.

## II.     Discussion

### A.     The Court Should Give Two Curative Instructions Now to the Jury Regarding the Preparation of Witnesses and the Joinder of the Defendants

As detailed above, the defendants' opening statements are likely to have created misimpressions in the minds of the jurors regarding the propriety of meeting with witnesses and the reasons that the jurors will be acting as fact-finders in a lengthy, multi-defendant trial. (Tr. 155, 159, 161, 190, 290). Both of these misimpressions have significant potential to prejudice the jury against the Government and should be cured with instructions from the Court early in the case. Specifically, the Court should instruct the jury: (1) that it is appropriate and expected that the Government and defense counsel will meet with and prepare witnesses for trial testimony; and (2) that the defendants are properly joined as defendants in this trial because a grand jury returned an Indictment against all of them charging them with participating jointly in the charged conspiracies and other related crimes.

It is axiomatic that the preparation of witnesses for trial is an appropriate and expected activity of litigants in federal court. As a result, it is customary at criminal trials in this district and elsewhere that judges instruct the jury in their charge at the end of the trial that such preparation is appropriate. *See, e.g.*, *United States* v. *Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313 at *18 (S.D. N.Y. Jul. 3, 2007) (indicating that the jury charge in a criminal trial would include an instruction stating, in relevant part, "[y]ou have heard evidence that some witnesses have discussed the facts of the case and their testimony with lawyers before the witnesses appeared in court to testify. There is nothing either unusual or improper about a witness meeting with lawyers before testifying"). Here, however, the defendants' arguments regarding the Government's preparation of witnesses were so inflammatory that it would be unfair to allow any misimpression to linger in the jurors' minds until the conclusion of the trial. Not only did defense counsel repeatedly argue that the mere number of times the Government had met its witnesses indicated possible impropriety, defense counsel explicitly argued that this was an indication that the Government had used its meetings to structure false testimony. (Tr. 159, 190). Mr. Frisch spent significant time during his opening statement suggesting that the Assistant U.S. Attorneys and FBI agents prosecuting the case, "[s]ome of the same government people sitting in the well," had participated in convincing a Government witness to enter a false guilty plea. This was false and extremely inflammatory. (Tr. 159). The potential prejudice to the Government from this argument was compounded by Mr. Riopelle's argument suggesting that the Government's process of meeting its witnesses was analogous to the sausage-making process, and that in the "56 meetings" that the Government had conducted with one witness, the witness had likely "got some hints about what he was expected to say." (Tr. 190). These comments warrant some curative instruction to the jury explaining that meeting with witnesses is neither improper nor unusual. Specifically, the Government requests that the Court provide the jury with an amended version of requested instruction Number 49 from the Government's filed Requests to Charge, which provides:

> You have heard [arguments] that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

Gov. Req. To Charge, No. 49 (bracketed language added/amended). Such an instruction will undoubtedly reduce confusion amongst the jurors regarding the propriety of meeting with witnesses in the weeks to come. The instruction will be particularly important because the preparation of witnesses now appears likely to be a significant area of cross-examination.

The Court should also provide an instruction to the jury regarding the proper joinder of the defendants for trial. As detailed above, during the opening statement of Mr. Krantz, defense counsel argued "[t]his group is at the defense table because the government has chosen them to be a group." (Tr. 290). This statement was both false and likely to create a misimpression that the Government had improperly joined the defendants, necessitating a lengthy and complicated trial. The potential prejudice to the Government from this statement is compounded by the anticipated length of the trial. The real reason, of course, that the defendants are being tried together is that a grand jury returned an indictment finding that they were all joint participants in criminal conspiracies and other crimes related to their work at Madoff Securities. *See* Fed. R. Crim. Proc. 8(b) (indicating that joinder of multiple defendants in one Indictment is proper where "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses"). Indeed, Your Honor rejected the defendants' arguments that joinder was improper – essentially, defense counsel has now improperly attempted to relitigate the issue before the jury. *See United States* v. *Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726 at *3 (S.D.N.Y. May 28, 2013) (finding that "the charges against all of the Defendants are sufficiently interconnected to warrant trying all of the Defendants jointly"). The argument that the Government "chose[] them to be a group," was misleading. The jury should not be left with the misimpression that, but for the Government's whim, there would be no need for a lengthy trial of these five defendants. The Government respectfully requests that the Court provide the following curative instruction to the jury, or any other instructions that the Court views as appropriate:

> You have heard arguments suggesting that the defendants are being tried together because the Government chose to do so. You should disregard such arguments. The defendants are being tried

> together because a grand jury in this district returned an Indictment charging all of the defendants together with participating in various crimes related to their work at Madoff Securities. The Indictment properly joined the defendants, and both the Government and defense counsel are now acting appropriately in litigating this trial where the defendants are tried together as a group. As I will explain later in my instructions to you, you must consider the guilt or innocence of each of the defendants separately, with regard to each of the charges in the Indictment. But you should not question whether it is proper for them to be tried together – it is entirely proper.

**B.    The Court Should Preclude the Defendants from Further Arguing or Cross-examining Witnesses with Regard to Three Improper Areas of Inquiry**

As described in detail above, the arguments of defense counsel during their opening statements intruded into multiple areas of improper inquiry. The three most significant areas were: (1) the guilty pleas of non-testifying alleged co-conspirators; (2) topics related to the nature of the work of the U.S. Attorney's Office, including the suggestion that it is a "political" office; and (3) the SEC Inspector General report on Madoff Securities and more generally the alleged "failure" of the SEC or other entities to discover the Madoff Ponzi scheme. Each of these areas is irrelevant to the genuine issues in this trial and should be excluded.

First, the Court should exclude any reference to the guilty pleas of non-testifying alleged co-conspirators. During several of the defense opening statements, references were made to the guilty pleas of Peter Madoff and others. (Tr. 183, 206, 254, 275). Notably, none of the defendants objected to these references and the fact that others have pleaded guilty will not be a secret at this trial – several cooperating coconspirators are expected to testify. Nevertheless, for a host of reasons, the Court should exclude references to the pleas of those who did not testify. As a general matter, it is impermissible for the Government to introduce the pleas of codefendants as substantive evidence against a defendant. *See, e.g., United States* v. *Riggi*, 541 F.3d 94, 108 (2d Cir. 2008) (relying on *Crawford* v. *Washington*, 541 U.S. 36 (2004)). The *Crawford* concerns at play in *Riggi* are, of course, inapplicable where a defendant seeks to introduce a codefendant's guilty plea. But nevertheless, the impropriety of such evidence if offered by the Government serves as a backdrop to concerns that could arise in a multi-defendant trial.[1] More importantly, these guilty pleas are irrelevant. *See* Fed. R. Evid. 401. That Peter Madoff, or any other non-testifying co-conspirator, entered a guilty plea is irrelevant to the issues in this trial. *See United States* v. *Torres*, 901 F.2d 205, 238 (2d Cir. 1990 (observing that plea minutes of co-defendant that defendant sought to admit at trial were irrelevant to defense), *overruled on other grounds as recognized by United States* v. *Marcus*, 628 F.3d 36 (2d Cir. 2010); *United States* v. *Ramirez*, 426 F.3d 1344 (11th Cir. 2005) (finding no prejudicial error but observing that district court was correct to instruct jury to disregard irrelevant reference to co-defendant's guilty plea). Counsel

---

[1] Moreover, the guilty pleas of non-testifying co-conspirators are hearsay. See Fed. R. Evid. 801 & 802. While it is conceivable that such statements could be elicited for a non-hearsay purpose, the defense opening statements made clear that they were being referenced for their truth.

for Ms. Bongiorno is entitled to argue that she did not destroy evidence. He is not entitled to argue that her conduct should be compared to what ever activities Peter Madoff pleaded guilty to undertaking. Furthermore, the Government concedes that the guilty pleas of the testifying co-conspirators are relevant to the issue of their credibility. This logic does not apply to the guilty pleas of co-conspirators who will not appear as witnesses in this case.

Second, the Court should preclude as irrelevant any reference to the nature of the work of the U.S. Attorney's Office, including the suggestion that it is a "political" office. (Tr. 136). *See United States* v. *Duran*, 596 F.3d 1283, 1288-89 (11th Cir. 2010) (affirming judgment and observing that district court had precluded as irrelevant evidence of alleged "political prosecution"); *United States* v. *Smith*, 550 F.2d 277, 285 (5th Cir. 1977) (affirming district court's use of jury instruction that prosecution was not political or for "political purposes" where defense attorney had made this suggestion in his summation); *see also United States* v. *Shakur*, No. SSS 82 Cr. 312 (CSH), 84 Cr. 220 (CSH), 1988 WL 25134 at *3 (excluding evidence pursuant to Rule 403 where the probative value of the evidence was very minimal and went only to defendants' claim, of which there was no evidence, that they were subjected to "political prosecution"). It is obvious that it would be improper for the Government to comment on the nature or structure of Mr. Frisch's law office, and the converse should be equally true. There is simply no relevance to the fact that the U.S. Attorney is appointed by the President of the United States. Mr. Frisch's reference to this fact, and his argument referencing "the United States Attorney under whose name this case is brought and to whom these government lawyers answer," are difficult to construe as anything other than a misguided attempt to inflame the jury with the suggestion that the prosecution of the defendants is somehow politically motivated. There will be no evidence to support such an argument in this case and it is irrelevant to the genuine issues in this trial.

Finally, the Court should exclude any reference to the SEC Inspector General report on Madoff and more generally to the alleged "failure" of the SEC or other entities to discover the Madoff Ponzi scheme. More broadly, the court should exclude any reference to hearsay articles, reports or opinions reaching conclusions on the nature and/or conduct of the fraud, the investigation of Madoff or the relative culpability of alleged participants in the fraud. References to the SEC were features in multiple opening statements of the defendants. (*e.g.* Tr. 156, 211). Indeed, Mr. Krantz went so far as to argue, relevant to nothing, that "there is unfortunately some serious egg on the government's face." (Tr. 270). It is entirely unclear what relevant testimony Mr. Krantz anticipates eliciting to support this argument. It is well-established, however, that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States* v. *Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (quoting *Taylor* v. *Illinois*, 484 U.S. 400, 410 (1988)). As an initial matter, the SEC Inspector General report, to the extent that it is offered for the truth of its criticisms of any investigative steps, as indicated in Mr. Mehler's opening statement, is pure hearsay. Moreover the content of that report is irrelevant. Whether the SEC Inspector General concluded that any SEC employees could have potentially discovered the fraud has no bearing on the core question of whether the defendants participated in the various criminal activities the Indictment alleges occurred at Madoff Securities. Similarly, the alleged failure of the SEC, or any other government entity, to "uncover" the frauds being perpetrated by the defendants is irrelevant. The defendants should not be permitted to argue that the jury should take into

consideration whether the SEC uncovered the fraud in determining whether these defendants were participants where: (1) no SEC employees had a similar vantage point as the defendants, who were actual employees at Madoff Securities for many years; and (2) the defendants are charged with having engaged in various activities that specifically were designed to prevent the SEC from understanding the true nature of the business activities of Madoff Securities, *i.e.* the defendants were responsible for throwing any "egg" allegedly on the face of the SEC. Given these facts, the defendants simply cannot meet even the low threshold for relevance with regard to their SEC arguments and potential evidence. *See Stewart*, 433 F.3d at 311-12 (affirming the exclusion of Martha Stewart's attempt to call an expert on the legality of trades in trial where she was charged with obstruction of justice, since "the expert's opinion that Stewart's conduct did not violate the securities laws would have increased the potential for confusion because the facts supporting an insider trading charge were not relevant to the charges under consideration"); *United States* v. *Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) (affirming the district court's preclusion of expert testimony that "reasonable investigation" by victim would have prevented the fraud, because "the perpetrator of a fraud may not defend himself by blaming the victim for being duped"); *cf. United States* v. *Preldakaj*, 456 Fed. Appx. 56, 60 (2d Cir. 2012) (affirming conviction where district court instructed the jury that "the government is not on trial" in response to defense arguments questioning investigative techniques of government). That is all to say, even if the defendants could prove that the SEC was grossly negligent in failing to discover the Madoff Securities Ponzi scheme, and they cannot, this would have no impact on the question of whether the defendants were participants in the fraud. *See United States* v. *Thomas*, 377 F.3d 232, 241-44 (2d Cir. 2004) (affirming restriction of cross-examination of victim of fraud scheme and mid-trial instruction to jury that "if you find fraud proved, it will be no defense that a person, well, if he had asked one more question or had probed further might have discovered that the statement was false" where defendant argued that the lack of "vigilance" of victim was relevant"); *cf. United States* v. *Coffman*, 94 F.3d 330 (7th Cir. 1996) ("The fact that a reasonable person would not have been deceived [by a fraud] would be no more relevant than the fact that a murder victim would have survived had he been wearing a bulletproof vest") (Posner, J.)

Moreover, any such reference to the SEC's alleged failure, even if it could be demonstrated to be relevant, should be excluded under Rule 403. The probative value of the fact that the SEC did not "uncover" the Madoff Ponzi scheme is virtually nonexistent, but the potential that such arguments will confuse or mislead the jury, with regard to the appropriate standards for adjudicating the defendants' guilt, is enormous. The very language of Mr. Mehler's argument regarding the SEC in his opening statement underscores this fact. (Tr. 211) ("My dad always told me to point the finger at yourself before you point it at others. The government will not point the finger at itself in this trial very much").[2] This argument suggested that a relevant question in the trial will be whether the Government has assumed its share of the responsibility

---

[2] Similarly, Mr. Frisch's argument focused on the irrelevant details of the seniority of the SEC officials who investigated Madoff and the suggestion that the SEC could have stopped the fraud in 2006 with a call to the DTC. (Tr. 156). He, along with other defense counsel, relatedly argued repeatedly that the fraud was not identified by "some of the wealthiest," "rich," and "billionaire" investors. (Tr. 137, 148, 180, 208, 251, 255, 270). These arguments have no potential bearing on the issues at trial.

for the failure to stop the Ponzi scheme earlier. This is irrelevant. It further suggests that the jury will be required to engage in an exercise of weighing the failure of the SEC to stop the Madoff Ponzi scheme earlier against the defendant's culpability in the crime. Of course, this will not be the question for the jury – the question will be whether the Government has met its burden of proving beyond a reasonable doubt that each of the elements is established with regard to the crimes charged in the Indictment. In a case that already contains a significant number of complex charges, the defendants should not be permitted to confuse the jury by suggesting that they will be forced to answer, essentially, whether an orange is heavier than an apple is sweet. *See Stewart*, 433 F.3d at 311-12 (affirming exclusion of evidence with potential to confuse jury regarding issues at trial); *United States* v. *Toner*, 728 F.2d 115, 121 (2d Cir. 1984) (affirming preclusion under Rule 403 of defense attempt to call FBI informant to describe defendant's unrelated refusals to engage in arms deals, where such evidence did not go to the real issues at trial and "[t]he whole question could well have served to confuse the jury"); *see also United States* v. *Kraeger*, 711 F.2d 6, 7-8 (2d Cir. 1983) ("trial court did not abuse its discretion in excluding documentary evidence, including federal court decisions, which appellant claims to have read in forming his opinions regarding the tax laws" because "[e]vidence such as this is likely to confuse a jury on the distinction between questions of law, which are for the court to decide, and questions of fact, which are for the jury"); *S.E.C.* v. *Badian*, 822 F. Supp. 2d 352, 366 (S.D.N.Y. 20110) (excluding criminal complaint proffered by the SEC where introduction of the complaint was likely to "lead the jury to confuse" allegations in complaint with instant allegations in that trial).

### III.   Conclusion

For the all the reasons stated above, the Court should give the requested instructions and preclude the aforementioned defense arguments.

Respectfully submitted,

_____/s_____
RANDALL W. JACKSON
MATTHEW L. SCHWARTZ
JOHN T. ZACH
Assistant United States Attorneys
Tel.: (212) 637-1029/1945/2410

cc:         BY E-MAIL
            all defense counsel