SERCARZ & RIOPELLE, LLP
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
1-212-586-4900
FACSIMILE 1-212-586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

*ADMITTED IN NY & NJ

November 17, 2013

BY FAX AND ECF FILING

Hon. Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 755
New York, NY 10007

Re: United States v. Bonventre, et al.,
S10 10 Cr. 228 (LTS)

Dear Judge Swain:

I write to flag two issues for the Court with respect to the cross-examination of Enrica Cotellessa-Pitz, who is expected to testify later this week. I write so the Court is aware of the issues, and can rule on them (if it chooses to do so) before Ms. Cotellessa-Pitz testifies. I have discussed these issues with AUSA Randall Jackson briefly, and as I understand it the government takes the position that the first piece of testimony I would like to elicit is inadmissible hearsay, and that the second piece of testimony I would like to elicit may be objectionable as "beyond the scope" of the witness's direct testimony. I believe both areas of testimony are admissible, for the following reasons.

**A. The Conversation Between Ms. Bongiorno and Ms. Cotellessa-Pitz After Mr. Madoff's Arrest**

In Government's Exhibit 3502-10, pages 3-4, Ms. Cotellessa-Pitz describes a conversation with my client after Mr. Madoff's arrest. In that conversation, Ms. Cotellessa-Pitz and my client exchange their beliefs about where the trading was occurring. According to Ms. Cotellessa-Pitz, she expressed the belief that the trading in the Madoff Securities accounts occurred overseas, and my client incredulously expressed the belief that the trading for the Madoff Securities accounts was done "upstairs," in the trading area of the firm. Then, the two agree that if they "had not been so concerned about confidentiality, they could have 'blown the lid off the whole thing.'" For the Court's reference, I will enclose a copy of the relevant FBI 302 report with the copy of this letter I email to Ms. Courtney, but I will not include that report in the publicly filed copy of this letter, since the report is covered by the protective order entered in this action.

I recognize that the first part of this conversation -- the two views expressed by Ms. Cotellessa-Pitz and Ms. Bongiorno about where they believed the trading was occurring -- is hearsay, and therefore not admissible (unless simply admitted for context). But I believe the second part of the conversation – in which the witness and Ms. Bongiorno agree they "could have blown the lid off the whole thing" -- is admissible as non-hearsay, or as a statement of "then existing state of mind, [and] emotion[al] condition." FRE 803(3). I believe this evidence is relevant because it shows that both Ms. Cotellessa-Pitz and my client acted in good faith (and with no knowledge of any fraud) during the time before Mr. Madoff was arrested. It also shows the manner in which Mr. Madoff restricted his employees' knowledge of his business operations so as to accomplish his fraud without detection by them. Mr. Jackson has informed me that he takes the position that the entire conversation is inadmissible hearsay, and that the statement about "blowing the lid off" the Madoff fraud is itself an inadmissible statement of belief which should be precluded as admissible under FRE 803(3).

In the interests of resolving what we can before Ms. Cotellessa-Pitz takes the witness stand, I respectfully request that the Court issue a ruling on this issue.

**B. The Conversation With David Kugel**

In Government Exhibit 3502-10, at page 4, Ms. Cotellessa-Pitz also reports a conversation she had with David Kugel in which Mr. Kugel "said he believed the [IA trades] were executed overseas." The Court may recall that I asked Mr. Kugel about this conversation during his cross-examination. At pages 2144-45 of the Trial transcript, Mr. Kugel denied making the statement Ms. Cotellessa-Pitz attributes to him, stating emphatically at page 2145, lines 20-21 "I never said the trades were done overseas." A copy of the relevant pages from the transcript is enclosed. I would like to question Ms. Cotellessa-Pitz about her version of this conversation to impeach Mr. Kugel's testimony on the point, and also as an offer of substantive evidence of a misrepresentation made by Mr. Kugel to a person whom he had good reason to believe might be interviewed by the government. Mr. Kugel's statement is not, of course, being offered for the truth, and I submit that it is admissible pursuant to FRE 613(b) because Mr. Kugel was given plenty of opportunity to explain the statement during his own examination. Instead, he chose to deny that the statement was ever made.

As I understand it, Mr. Jackson may take the position that my few questions to Ms. Cotellessa-Pitz in this area may be beyond the scope of his direct examination if he avoids references to Mr. Kugel and this conversation. In my view, even if Mr. Jackson's questioning does not explicitly open the door to my asking questions in this area, I should be allowed to elicit Ms. Cotellessa-Pitz's testimony about her conversation with Mr. Kugel. Allowing me this latitude will promote judicial efficiency by permitting me to put into the trial record important testimony for Ms. Bongiorno's defense without being forced to recall Ms. Cotellessa-Pitz to the witness stand several months from now.

The testimony I seek to admit will be very brief, and it includes highly relevant impeachment material and substantive evidence of a falsehood told by one of the principal witnesses against Ms. Bongiorno. Ms. Bongiorno should not be required to recall Ms. Cotellessa-Pitz to give this testimony in her direct case. Instead, it is more efficient to permit this brief snippet of testimony now, and the Court should allow me this latitude so as to avoid the "needless consumption of time" that will result from recalling Ms. Cotellessa-Pitz during the defense case. FRE 611(a).

Respectfully submitted,

Roland G. Riopelle

Cc: Jocelyn Courtney, Esq. and All Counsel (By E-mail)