KRANTZ & BERMAN LLP

Larry H. Krantz
Marjorie E. Berman

Wendy Gerstmann Powell
*Special Counsel*

Kimberly A. Yuhas

David V. Kirby
Aaron Twersky
*Of Counsel*

Writer's E-mail
lkrantz@krantzberman.com

February 17, 2014

BY ECF

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    U.S. v. Bonventre, et al., 10 Cr. 228 (LTS)

Dear Judge Swain:

    We write on behalf of defendants George Perez and Jerome O'Hara, in response to the letter from AUSA Matthew Schwartz, dated February 16, 2014 (the "Government's Letter"), concerning prior inconsistent statements.  In this letter we address the prior inconsistent statements we seek to introduce through Agents Hanish, Fish and Takla. For the following reasons, the Government's application should be denied, other than as to those aspects consented to below.

**Special Agent Julia Hanish**

    Defendants Perez and O'Hara gave the Government notice of an intention to offer three prior inconsistent statements through Agent Hanish.  However, by this letter we withdraw our request to offer one of those statements, namely, DiPascali's statement that "The involvement of GEORGE PEREZ and JEROME O'HARA ended the night they said they would not participate in 'special' projects anymore." (3501-11, p.1).  Since we have withdrawn this request, there is no need for a ruling as to this prior statement.  The other two statements we seek to introduce are addressed below:

    1.    Perez and O'Hara seek to offer through Agent Hanish a prior inconsistent statement of DiPascali that, with regard to the  Swanson audit:

> DIPASCALI, PEREZ, and O'HARA worked with MADOFF to figure out who the 'special' clients were going to be. . . . PEREZ and O'HARA worked on making reports for the 'special' clients.  DIPASCALI eventually told PEREZ and O'HARA the reports

were for the SEC and that MADOFF did not want all the clients to go to the SEC. . . .
PEREZ and O'HARA thought this was crossing the line but did the work anyway."
3501-4 at p. 22.

These statements are being offered because they are inconsistent with DiPascali's trial
testimony to the effect that it was Madoff himself who determined who the special clients were
going to be, and that Perez and O'Hara were falsely told by DiPascali that those were the only
clients as to whom the SEC had asked for information.

In its chart (Exhibit A), the Government indicates that it has no objection to the
introduction of these prior statements of DiPascali.  However, in the text of its letter, it indicates
that the substance of a portion of the preceding paragraph of the FBI 302 Report should be
elicited for context, under the rule of completeness.  We have no objection to eliciting the
substance of the entire prior paragraph, which reads as follows:

> . . . [W]hen ERIC SWANSON of the SEC in Washington D.C. came to
> conduct an investigation. MADOFF began to ask DIPASCALI to do things
> he had not done before because MADOFF needed to supply SWANSON with
> a lot of data. DIPASCALI went to PEREZ and O'HARA to talk to them about
> producing records that were subsets of the whole, i.e. portions of the
> customer data on the 17th floor. MADOFF told DIPASCALI he was
> going to present data on a small set of clients he presumed the
> SEC already knew about. Some were the hedge funds invested with
> BLMIS. The funds had mentioned their association with BLMIS in
> circulars which the SEC might have seen. The smaller subset was
> individual customers the SEC already knew about or would probably
> find out.  3501-4, p. 22.

Since we are willing to elicit this testimony from Hanish (per the Government's request),
we do not believe there is any need for a ruling from the Court at this time.

2.      Perez and O'Hara seek to offer the following prior inconsistent statement of
DiPascali, to which the Government has no objection:

> "[DIPASCALI] often took PEREZ and O'HARA out to dinner at some of the best
> restaurants in New York. [DIPASCALI] was charged by MADOFF to take PEREZ and
> O'HARA's 'temperature.' The dinners with PEREZ and O'HARA became significant
> because during the dinners [DIPASCALI] found out how PEREZ and O'HARA were
> feeling and what they were thinking. PEREZ and O'HARA were told to take a car service
> home after the dinners so they could drinker alcohol with the meal. Often after several
> drinks, [DIPASCALI] would start asking the questions about how PEREZ and O'HARA
> felt. When PEREZ and O'HARA withdrew from handling the 'special' projects, the
> dinners tapered off. [DIPASCALI] was still able to talk PEREZ and O'HARA into the
> occasional dinner.  3501-11 at p.8.

To:  Hon. Laura Taylor Swain
February 17, 2014
Page 3 of 5

Since the Government does not object, there is no need for a ruling at this time.

**<u>Special Agent Fish</u>**

We seek to introduce through Agent Fish the following prior inconsistent statements from DiPascali:

After the Certain Hedge Fund Trading Practices audit was finished, [FDP] went out to dinner at a Greek restaurant on Third Avenue with O'HARA and PEREZ in the summer of 2006.  After some drinks, they asked [FDP] directly if the IA business was legitimate. [FDP] laughed off the suggestion and gave them an explanation MADOFF had provided to [DiPascali] many times over the years. The explanation involved the idea that because MADOFF was trading not as agent but as principal, making these trades out of his own inventory that was kept at various places overseas, he was able to allocate these trades to customers after the fact, back date their trades, and do other things with accounts a broker acting as agent would not be able to do. 3501-41 at 1-2.

The Government takes the position that these statements are inconsistent with DiPascali's trial testimony only as to the date the conversation (*i.e.*, after the Certain Hedge Funds Audit in 2006).  The Government asserts that this is a "meaningless inconsistency," but we strenuously disagree.  In fact, the date discrepancy is the principal reason why the statement is so significant, because it undermines DiPascali's trial testimony to the effect that he *stopped* giving Perez and O'Hara "cover stories" sometime after the Swanson audit in 2004.  Indeed, DiPascali testified at trial as follows:

Q.  Now, Mr. DiPascali, last week  you mentioned that in the initial discussions with respect to  this first SEC investigation out of Washington, that you were trying to fool the computer guys; do you remember that?
A.  I do.
Q.  And were you referring to Mr. O'Hara and Mr. Perez as the computer guys?
 A.  I was.
Q.  Now, Mr. DiPascali, were you trying to fool the computer guys the entire time you worked with them on the false documents?

[Robing room conference omitted.]

 MR. ZACH:  Could you read back my last question please (Question read)
 A.  No.
 Q.  Mr. DiPascali, why were you no longer trying to fool them with respect to false documents?
 A.  I didn't believe I had the ability to do it any longer.  There came a time where I could not   come up with a viable explanation as to why we were doing certain things, so I just didn't try to explain it away in the form of a lie.

Transcript at pp. 5257-5267.

To:  Hon. Laura Taylor Swain
February 17, 2014
Page 4 of 5

As can be seen, the date discrepancy in the prior inconsistent statements is highly relevant, as it undermines DiPascali's testimony that the cover stories stopped after the Swanson audit.  This alone is a proper basis for admitting the prior statements.  Moreover, the inconsistency goes beyond the date alone, as the prior statements themselves are a more complete version of the cover stories than DiPascali admitted to at trial, thus further undermining DiPascali's trial testimony.  Accordingly, these prior inconsistent statements plainly should be admitted.

## Special Agent Takla

The Government reasserts its argument against admission of the prior inconsistent statement of Matthew Cohen regarding his conversation with George Perez.  Since we have briefed this issue before, we respectfully refer the Court to our letter dated February 3, 2014, which letter fully addresses this issue at pp. 1-7.  For the reasons stated therein, we respectfully ask that the Government's application be denied.

The Government also now requests that if the prior inconsistent statement is permitted, the Government be allowed to introduce allegedly prior consistent statements of Cohen at that same interview with Agent Takla.  Specifically, it seeks to introduce the following statement contained in Takla's report:

> PEREZ repeatedly told COHEN that he and O'HARA had not designed the systems or written the code for the House 17 server but rather, LIZ WEINTRAUB, who was deceased, did. . . . PEREZ also said he and O'HARA did not understand the code and were just there to keep the system running.

This application should be denied because there is no possible basis for admission of this statement, which is pure hearsay.  Indeed the Government cannot meet the criteria for admissibility set forth in this Court's Order of February 14, 2014.

First, the statement the Government seeks to introduce does not directly relate to the subject matter of the prior inconsistent statement that the defense seeks to offer, namely, the conversation that Cohen had with Perez concerning projects as to which Perez was uncomfortable, and Madoff's response to those concerns.  As this Court quite properly held in its its February 14, 2014 Order:  "Any use of prior consistent statements will be limited to statements directly corresponding to the subject matter of the allegedly inconsistent statement.  No general repetition of statements consistent with other aspects of trial testimony will be allowed, in order to avoid juror confusion, undue delay or unfair prejudice . . . ."

Here, the statement the Government seeks to offer – while coming from the same interview of Cohen -- is on an entirely different subject, namely, Perez's responsibility for the design of the House 17 server and his knowledge of that system.  This is an entirely distinct

subject from Perez's conversation with Cohen about projects as to which he (Perez) was uncomfortable, and Madoff's reaction to that.  Since it is a wholly separate topic, there is no possible basis for eliciting the allegedly prior consistent statement as to Perez's knowledge of House 17.

Second, the Government cannot possibly argue that the "prior consistent statements" it seeks to introduce somehow predate Cohen's alleged motive to fabricate his trial testimony. Indeed, the alleged bias in this case is Cohen's status as a Partner of AlixPartners, a company whose client is the Trustee, and which has earned over $75 million in fees in this matter.  It is undisputed that this alleged bias existed both at the time of Cohen's interview with Takla, and during his trial testimony.  Thus, there is no possible basis for admissibility.  As the Court noted in its Order of February 14, 2014: "The Court finds that none of the witnesses' prior consistent statements to the testifying FBI agents is admissible as substantive evidence under Federal Rule of Evidence 801(d)(1)(B), because the trial record supports Defendants' contention that the cooperating witnesses were all motivated or influenced by a desire to impress the Government with their cooperation and the potential value of their information, a motive that predates all of their statements to the Government."  While this statement was made by the Court in the context of cooperating witnesses, its logic is fully applicable here as well.

Third, the statements the Government seeks to elicit are not even consistent with Cohen's trial testimony. Indeed, Cohen never testified at trial that Perez told him that he (Perez) "did not understand the code."  Thus, the Government is actually seeking to expand Cohen's trial testimony through the use of rank hearsay.

In short, since none of the "prior consistent statements" the Government seeks to offer (1) are on the same subject matter, (2) predate the alleged motive to fabricate, or (3) are sufficiently consistent with the trial testimony, they should not be admitted.

 We thank the Court for its consideration of this letter.


Respectfully submitted,


Larry H. Krantz

cc:     All Counsel (By ECF)