UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

   -v-                                                                                     No.  S10 10 Cr. 228 (LTS)

DANIEL BONVENTRE et al.,

        Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Defendants Daniel Bonventre, Annette Bongiorno and Jo Ann Crupi moved, pursuant to Federal Rule of Criminal Procedure 29, at the close of the Government's case in the trial on the above-captioned Indictment, seeking judgments of acquittal on Counts Four, Five, and Nineteen through Thirty-Three of the Indictment, which charge Defendants Bonventre, Bongiorno and Crupi with tax violations, Defendants Bonventre and Bongiorno with obstruction of the administration of the tax laws, and Defendant Bonventre with violating the Employment Retirement Income Securities Act ("ERISA").  Defendants Bonventre, Bongiorno and Crupi request that the Court decide their Rule 29(a) motions with respect to these Counts prior to the submission of the case to the jury.  The Court has carefully considered the parties' voluminous submissions and arguments.  For the following reasons, Defendant Bonventre's motion is granted in part and denied in part and the motions of Defendants Bongiorno and Crupi are denied.

DISCUSSION

Under Federal Rule of Criminal Procedure 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "In considering [a Rule 29] motion, the Court must determine whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt.'" United States v. Choullam, No. 05 Cr. 523(LTS), 2008 WL 3861356, at *1 (S.D.N.Y. Aug. 19, 2008) (citations omitted). "A defendant challenging the sufficiency of the evidence bears a heavy burden," United States v. Kozeny, 667 F.3d 122, 139 (2d Cir. 2011) and faces "an uphill battle." United States v. Jones, 30 F.3d 276, 281 (2d Cir. 1994). In considering the sufficiency of the evidence, the Court must view the trial evidence in the light most favorable to the government. "Viewing the evidence in the light most favorable to the government means crediting every inference that the jury might have drawn in favor of the government, and recognizing that the government's evidence need not exclude every other possible hypothesis[.]" United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011). Moreover, the Court must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999). A "court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." Id.

Defendant Daniel Bonventre's Rule 29(a) Motion

        Counts Four and Twenty-Four

Counts Four and Twenty-Four of the Indictment charge Defendant Bonventre with corruptly obstructing and impeding the due administration of the internal revenue laws based on Mr. Bonventre's alleged involvement in the preparation of taxes for Bernard Madoff, and with conspiring to commit tax fraud against the United States on the basis of the same conduct.  In order to prove a violation of 26 U.S.C.§ 7212(a), the Government must prove that the defendant acted corruptly and that the defendant acted with the intent to impede or obstruct the due administration of the federal tax laws.  See United States v. Coplan, 703 F.3d 46, 73 (2d Cir. 2012).

The Government has introduced substantial evidence that Bernard Madoff systematically and arbitrarily understated his income from Madoff Securities in connection with his personal tax returns.[1]  Defendant Daniel Bonventre concedes that there is ample evidence that Mr. Bonventre provided false books and records in support of Mr. Madoff's tax audits, but contends that there is no proof that Mr. Bonventre knew that the profit and loss statements that he gave to David Friehling, Mr. Madoff's outside accountant, were false and fictitious.  Mr. Bonventre argues that the Government's evidence cannot support a finding of corrupt knowledge and intent on his part beyond a reasonable doubt because Mr. Friehling testified that Mr. Bonventre did not show unwillingness or discomfort in providing the supporting documents, Mr. Friehling never told Mr. Bonventre that the documents created were "fake" or "fraudulent,"[2] Mr.

---

[1]     Income from Madoff Securities, a sole proprietorship, was reported on Mr. Madoff's personal tax returns.  (Tr. 2869.)

[2]     (Tr. 3176-77, 3180.)

Madoff claimed substantial flexibility in determining a "haircut" for tax purposes and there was an institutional history of his doing so at Madoff Securities, as Mr. Madoff's tax return had long been prepared in a similar fashion by Mr. Friehling's father-in-law or Paul Konigsberg.[3] Thus, Mr. Bonventre concludes, there is no evidence that Mr. Bonventre knew that the profit and loss statements he gave to Mr. Friehling were fraudulent or fictitious beyond having been run according to specifications provided by Mr. Madoff, or that Mr. Bonventre understood that the documents were calculated to deceive auditors and help Mr. Madoff obtain improper tax advantages.

As noted above, the Court must view all evidence in the light most favorable to the Government when evaluating a Rule 29(a) motion. Applying that standard, the Court recognizes that, here, the very nature of the documents that Mr. Bonventre created is sufficient to support a strong inference that he knew that they were false and calculated to deceive. If accepted as credible, the evidence introduced by the Government on its principal case shows that Mr. Bonventre did not merely provide "versions" of the books and records, but rather created a second set of books for use in the audits that systematically reduced Bernard Madoff's income and, thus, his tax liability. Mr. Friehling's testimony that Mr. Bonventre falsified the General Ledger so as to support the fabricated figures in the Schedule C of Mr. Madoff's personal tax return and the fact that Mr. Bonventre stored the false books and records in the boxes marked "tax audit," together with the Government's exhibits comprising the original and altered records and the testimony of Enrica Cotellessa-Pitz regarding the trial-and-error process by which she and Mr. Bonventre created the records used for the audits, provide sufficient grounds upon

---

[3] (Tr. 2886-86, 3173-75, 3178.)

which a rational jury could find guilt on these Counts beyond a reasonable doubt.  Accordingly, Mr. Bonventre's motion is denied insofar as it seeks a judgment of acquittal on Counts Four and Twenty-Four.

Counts Twenty through Twenty-Three

These Counts charge Mr. Bonventre with violating 26 U.S.C. §7206(1) by making false personal tax filings for the tax years 2003, 2004, 2006 and 2007, insofar as he did not report certain benefits on his individual tax returns as taxable income (e.g., payments made to Richmond Country Club, Dalton school tuition, personal expenses charged to an American Express account paid by Madoff Securities and life insurance premiums on policies owned by Mr. Bonventre and his wife).  To secure a conviction on a Section 7206(1) charge, the Government must prove beyond a reasonable doubt that the defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true; that the tax return was false as to a material matter; that the defendant signed the return willfully and knowing it was false; and that the return contained a written declaration that it was made under penalty of perjury.  See 26 U.S.C. § 7206(1).

In addition to the identification of large check amounts paid to Mr. Bonventre, and family travel, expensive wine and cigars, and country club dues paid for Madoff Securities on Mr. Bonventre's behalf in the tax years charged, the Government has introduced evidence of substantial company-paid unreported additional income to Mr. Bonventre over a period of more than twenty years.  The Government has introduced evidence that certain transactions in Mr. Bonventre's Investment Advisory account did not qualify as capital gains transactions and were, nonetheless, reported on his tax return as such, based on backdated record entries.  The

Government has also introduced computations demonstrating the impact of the omitted amounts on Mr. Bonventre's tax liabilities for the years in question.

This evidence is sufficient to support a rational jury's determination that the Government has met its burden of proving beyond a reasonable doubt that Mr. Bonventre substantially underreported his taxable income and therefore had substantial tax debt for the relevant years. While consideration of possible scenarios in which some, or all of the benefits might have been reimbursed to the company or otherwise provided in a non-taxable manner might lead a jury to conclude that there is reasonable doubt, the Government is not required to disprove all possible defenses. See Persico 645 F.3d at 104 ("the government's evidence need not exclude every other possible hypothesis") (quotation marks and citations omitted).

The Government has also introduced evidence that, when taken in the light most favorable to the Government, is sufficient to enable a rational juror to infer that Mr. Bonventre knew that the returns were false and that he knowingly and willfully signed the false returns. AlixPartners employee Meaghan Schmidt testified that, after reviewing the accounts payable sub-ledger, she asked Mr. Bonventre about one of the checks that he had written to himself and he acknowledged that the checks were part of his compensation for working at Madoff Securities. Ms. Schmidt testified that Mr. Bonventre told her that he had an agreement with Bernard Madoff that "because his salary was already so high, [Mr. Madoff] didn't want Mr. Bonventre's bonus to be scrutinized by others at the firm." (Tr. at 798.) Mr. Friehling, the outside accountant for Madoff Securities, also testified that he had asked Mr. Bonventre about one of the expense account entries, which was for charges for an apartment that Mr. Bonventre used in Manhattan. The Government introduced evidence that Madoff Securities stopped

making direct payments for Mr. Bonventre's apartment and for his mortgage beginning in 2000, a development that a rational jury could conclude was the result of Mr. Friehling's inquiry.

Accordingly, the Court finds that there is evidence upon which a rational juror could conclude that the Government has met its burden of proving that Mr. Bonventre willfully subscribed to income tax returns that were false as to material matters, which he verified as true and which contained written declarations that they were made under penalty of perjury. Mr. Bonventre's Rule 29(a) motion is denied as to Counts Twenty to Twenty-Three.

Counts Five and Nineteen

In Counts Five and Nineteen, the Government charges Defendant Daniel Bonventre with, respectively, conspiracy in violation of 18 U.S.C. §371 to put a no-show employee on the Madoff Securities payroll and cause the filing of false United States Department of Labor Forms 5500 that misrepresented the total number of Madoff Securities employees, in violation of 18 U.S.C. §§ 1027 and 2(b) (Count 5), and a substantive violation of 18 §§ 1027 and 2(b), namely the causing of a false Form 5500 to be filed with the Department of Labor. Section 1027 provides:

> Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified [is guilty of a crime].

A person is liable as an aidor and abettor under 18 U.S.C. § 2(b) (the statutory provision upon which the Government relies in this case) where that person "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Here, the Government's evidence is sufficient to support jury determinations that Mr. Bonventre intended that his son be put on the Madoff Securities payroll and enrolled in the Madoff Securities health plan.  The evidence is also sufficient to support the charge of conspiracy to that extent.  The criminal object charged in Count Four, and the crime Mr. Bonventre is charged with aiding and abetting in Count Nineteen is, however, the filing of a false Form 5500 report or reports with the United States Department of Labor.  The evidence introduced on the Government's principal case is insufficient to support a finding beyond a reasonable doubt that Mr. Bonventre intended to cause anyone at Madoff Securities to violate the Form 5500 filing requirement.  The Government observes in its argumentation on this motion practice that the filing of a Form 5500 with false employee census information for the medical plan was a natural result of the allegedly fraudulent employment arrangement.  However, both the Government's charging instrument and the law of aiding and abetting require more than passive causation.  The Government charges that the object of the conspiracy was the filing of the form; it must therefore prove that Mr. Bonventre knowingly and willfully joined such a conspiracy, knowing of its unlawful object.  For an aiding and abetting conviction on Count 19, the Government must prove that Mr. Bonventre intended to violate ERISA in the manner charged, <u>and</u> that he willfully caused another person to file the false form.

Craig Kugel, the Madoff Securities employee who actually filed the false Form 5500 in question, testified that he had never consulted with Mr. Bonventre about that form and that Mr. Bonventre had never reviewed that form.  There is no evidence that Mr. Bonventre directed Mr. Kugel to prepare or file that form, much less to include any particular information in the filing.  Indeed, there is no evidence that Mr. Bonventre ever reviewed or participated in the preparation or filing of any Form 5500.  While Mr. Kugel stated, in the context of testimony concerning auditing of the firm's retirement plan, that funding for the Madoff Securities 401(k) retirement plan came from Mr. Bonventre's department, he made no proffer of knowledge of any direct involvement of Mr. Bonventre in that work or with Form 5500 reporting for that plan.  This evidence, construed in the light most favorable to the Government, at best supports an inference that Mr. Bonventre was aware of retirement plan financial auditing.

The Government has also introduced evidence that Madoff Securities employees were given lengthy summary plan descriptions that generally referenced ERISA rights and oversight, and referred to the Form 5500.  The one specific reference to Form 5500 informs participants that they have the right to examine and receive a copy of the plan's "annual report (Form 5500 series)."  (GX 800-10.)  There is no evidence that Mr. Bonventre ever requested or received such a report.  The Summary Plan Description language supports, at best, an inference that Mr. Bonventre was familiar with the fact that annual plan reports exist and are designated with a number in a "5500 series."  It cannot support a rational fact finder's determination beyond a reasonable doubt that Mr. Bonventre knew, and intended, that a Form 5500 report including a false employee census figure taking his son into account would be filed with the Department of Labor, much less that Mr. Bonventre willfully caused Craig Kugel to file such a false report.

The authorities cited by the Government in support of the sufficiency of its evidence do not bear the weight of the argument. None involves similar facts, and none supports the proposition that where, as here, a defendant is charged with violating 18 U.S.C. §1027 and 18 U.S.C. § 2(b) by willfully causing the filing of a false Form 5500 or with violating 18 U.S.C. § 371 by conspiring to violate ERISA by causing such a filing, a finding of guilt can properly be premised on creation of the situation that was the subject of another person's false reporting, where there is no evidence to support a finding that the defendant even knew of the reporting in question.  Cf. United States v. Perez, 565 F.2d 1227 (2d Cir. 1977) (holding evidence sufficient to support charge of aiding and abetting filing of false Form 1099 tax information where evidence showed that defendant personally supplied false identification data to issuing entity when receiving the reported payment of gambling winnings).

For the foregoing reasons, and for the reasons set forth in Mr. Bonventre's reply submission on this issue (docket entry no. 688), the Court finds that the Government's evidence in support of Counts Five and Nineteen of the Indictment is insufficient to sustain a conviction, and Mr. Bonventre's motion pursuant to Federal Rule of Criminal Procedure 29(a) for judgment of acquittal on those Counts is granted.

Defendant Jo Ann Crupi's Rule 29(a) Motion

### Counts Thirty One-to Thirty Three

Counts Thirty-One to Thirty-Three of the Indictment charge Defendant Crupi with tax evasion in violation of 26 U.S.C. § 7201 for the years 2004, 2007 and 2008. As explained above, to secure a conviction on a Section 7201 charge, the Government must prove beyond a reasonable doubt "(1) the existence of a substantial tax debt, (2) willfulness of the non-

payment, and (3) an affirmative act by the defendant, performed with the intent to evade or defeat the calculation or payment of the tax." Coplan, 703 F.3d at 66 (citation and internal quotation marks omitted).

The Government contends that Crupi received unreported income in the form of personal expenses charged to her Madoff Securities-issued American Express card, and that the exclusion of such personal charges from her income as reported for tax purposes resulted in substantial underpayments of income tax for the years in question. Crupi attacks the sufficiency of the Government's proof on several grounds.

Crupi points first to the absence of any expert testimony, and indeed any definitive testimony, by any Government witness as to identification of the precise charges that the Government contends were personal. William Duffin, an Internal Revenue Service ("IRS") Special Agent, presented a summary chart that totaled large charges incurred on the card in Ms. Crupi's home state of New Jersey at wine purveyors, a consumer warehouse store, and restaurants, all of which were located within a few miles of Ms. Crupi's home, a pet care establishment and an awning supplier, as well as charges incurred for travel to Las Vegas and Florida for Ms. Crupi and family members, but never opined as to the personal nature of the charges, nor did he testify that the charges were not reflected in Forms W-2 issued to Ms. Crupi or otherwise reported on her tax return. As to the latter point, the Government has introduced exhibits that support its contention that the expenses charged to the American Express card were neither included in the W-2 nor reported on the tax returns in question. (See February 19, 2014, Supplemental Government Letter (docket entry number 724).)

Margo Dabney, an IRS Revenue Agent, testified for the Government as to the purported computational effect on Ms. Crupi's income tax liability of the addition of figures

substantially similar to those totaled up by Mr. Duffin, identifying resultant tax deficiencies for the years in question.  Ms. Dabney disclaimed any role in determining what American Express charges were included in the additional sums upon which her tax computations were based, and acknowledged that the personal or business nature of the charges could not be determined definitively based solely on the American Express billing entries.  The Government introduced no evidence as to the nature of the charges other than copies of the American Express billing statements themselves, which provide no details as to the goods or services purchased, or to whom they were delivered.

The Government's case for understatement of Ms. Crupi's tax liability thus rests almost entirely on inference, based on the amount, vendor and purchase location of the non-travel expenses, the travel destinations, and the fact that Ms. Crupi's family joined her in traveling, that sufficient portions of the expenses charged to Ms. Crupi's American Express card during the tax years in question were personal to have resulted in a substantial tax debt.  The Government also points to testimony by cooperating witnesses as to their personal use of credit cards issued to them by Madoff Securities or a Madoff Securities affiliate, but none of the Government's witnesses testified to any knowledge of personal use of the Madoff Securities credit card issued to Ms. Crupi.  Frank DiPascali, a cooperating witness, testified that Ms. Crupi had observed his own use of a Madoff Securities American Express card to pay for "a lot of personal expenses" as well as business expenses.  (Tr. 5379.)  Ms. Crupi, according to Mr. DiPascali, asked whether she might be able to get such a card, and Mr. DiPascali had told her that she could request one because she had legitimate business expenses that could be put on the card.  There was no testimony as to Ms. Crupi's knowledge, if any, as to how others' personal charges were treated for tax purposes.  There was no testimony concerning official company

policies concerning the use of the card or as to how, if at all, personal charges were treated for tax reporting purposes in computing employee compensation. Nor was there any evidence as to whether Ms. Crupi reimbursed Madoff Securities for any or all of the charges.

        The Government is not required to negate all possible scenarios in which the charges might not have been personal, although the defense is free to argue absence of such evidence in seeking to persuade the jury that there is reasonable doubt. Thus, the personal nature of the charges could be found beyond a reasonable doubt by the jury based on the information that is of record (location, type of stores, travel destinations, family members accompanying Ms. Crupi on travel). As noted above, the Government has introduced evidence sufficient to show that none of the charges to Ms. Crupi's American Express card was reported on her tax return. This evidence, together with Ms. Dabney's computations illustrating the tax effects of a sum comparable to the unreported charges for travel, local shopping and dining and the like, is sufficient to support an inference of a substantial tax liability. A jury could, of course, decline to draw the requisite inferences as to some or all of the charges; in such event the jury could determine that the Government has failed to show a substantial tax liability, especially since the Government has proffered no evidence of the particulars of Ms. Dabney's deficiency calculations.

        The Government's evidence is also sufficient to support a determination that Ms. Crupi's use of a company charge card to obtain significant untaxed personal benefits constituted an affirmative act performed with the intent to evade tax.

        For these reasons, and for the reasons detailed in the Government's February 15, 2014 and February 19, 2014, submissions (docket entry numbers 706 and 724), Ms. Crupi's Rule 29 motion for judgment of acquittal on Counts Thirty-One to Thirty-Three is denied.

<u>Defendant Annette Bongiorno's Rule 29(a) Motion</u>

<u>Counts Twenty-Five to Thirty</u>

Counts Twenty-Five to Thirty of the Indictment charge Defendant Annette Bongiorno with tax evasion in violation of 26 U.S.C. § 7201 for the years 2004, 2005, 2006, 2007 and 2008, and obstruction of the administration of the tax laws.  To secure convictions on the section 7201 charges in Counts Twenty-Five to Twenty-Nine, the Government must prove beyond a reasonable doubt "(1) the existence of a substantial tax debt, (2) willfulness of the non-payment, and (3) an affirmative act by the defendant, performed with the intent to evade or defeat the calculation or payment of the tax."  <u>Coplan</u>, 703 F.3d at 66 (citation and internal quotation marks omitted).  Count Thirty charges Ms. Bongiorno is charged with corruptly obstructing and impeding the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).  In order to prove a violation of 26 U.S.C. § 7212(a), the Government must prove (1) that the defendant acted corruptly; and (2) that the defendant acted with the intent to impede or obstruct the due administration of the federal tax laws.  <u>Coplan</u>, 703 F.3d at 73.

The Government contends that the evidence introduced during the Government's case-in-chief establishes that Ms. Bongiorno failed to report income in the form of cash taken out of the so-called '703 Account and charged backtwo Bernard L. Madoff Special Investment Advisory Accounts.  According to the Government, Ms. Bongiorno made regularly had a Madoff Securities employee cash four-figure checks against the '703 Account, which contained customer deposits.  The checks were account for as withdrawals from two investment advisory accounts (the BLM Special 1 and the BLM Special 2) which were held in Ms. Bongiorno's name, although these two accounts had received virtually no deposits, had no transactional

activity since the early 1980s, and had substantial negative balances for the years in which the tax violations are charged. The tax deficiency allegedly resulting from this activity of this was $239,334 on approximately $813,727 in unreported income. (See Tr. 83332-33, GX 2000-27). Based on this evidence, a rational juror could conclude that Ms. Bongiorno was causing checks to be written to herself from an account with no capital or assets.

Defendant Bongiorno argues that the evidence that she evaded the payment of any income tax owed in these counts in connection with the cash withdrawals is insufficient because there is no specific evidence that the payments received by her were taxable income to her, the checks were recorded in a way that could be interpreted as indicating that they were capital withdrawals and Ms. Bongiorno had substantial balances in other investment advisory accounts that could have been netted against the deficiencies in the Special 1 and Special 2 accounts.

While a jury may ultimately find these arguments sufficiently persuasive to raise reasonable doubt, the evidence presented on the Government's case is, when viewed in the light most favorable to the Government, sufficient to support a verdict of guilt beyond a reasonable doubt on these tax charges. In addition to the evidence of the regular withdrawals against negative balances, the Government's evidence shows that Ms. Bongiorno's final closeout computations for the positive accounts were not netted to set off the negative balances and that many disbursements were labeled "capital withdrawals" although they included amounts that Madoff Securities later reported as taxable gains. Accordingly, and for substantially the reasons stated in the Government's February 15, 2014, letter (docket entry number 706), the Court denies Defendant Bongiorno's Rule 29(a) motion as to Counts Twenty-Five to Thirty.

## CONCLUSION

For the foregoing reasons, Defendant Bonventre's motion, pursuant to Federal Rule of Civil Procedure 29(a), for judgment of acquittal is granted as to Counts Five and Nineteen of Indictment S10 10 Cr. 228, and the pending motions of Defendants Bonventre, Bongiorno and Crupi as to Counts Four and Twenty through Thirty-Three are denied. Decision is reserved with respect to the remaining challenged Counts of the Indictment.

This Memorandum Order resolves docket entry numbers 680, 688, 689, 696.

SO ORDERED.

Dated: New York, New York
       February 21, 2014

>                               /S
>                   LAURA TAYLOR SWAIN
>                   United States District Judge