THE LAW OFFICES OF
# Andrew J. Frisch

40 FULTON STREET  
23RD FLOOR  
NEW YORK, NEW YORK 10038

(212) 285-8000  
FAX: (646) 304-0352  
WWW.ANDREWFRISCH.COM

March 23, 2014

**BY ECF**

The Honorable Laura Taylor Swain  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, New York 10007

  Re: United States v. Daniel Bonventre, et al.  
     Criminal Docket No. 10 CR 228 (LTS)

Dear Judge Swain:

  On behalf of all defendants, and as contemplated by Your Honor this past Friday, I write to memorialize and explain the defense proposal for how to respond to the jury's note inquiring about Counts 9-14, which charge falsifying records of broker-dealers or investment advisers. For the reasons stated herein, we object to the government's proposed supplemental instruction discussed in its letter filed earlier this morning.

  The jury asked,

  Please clarify for the jury.

  Does Counts 9, 10, 11 only pertain to the Broker Dealer (House 05)

  Does 12, 13, 14 only pertain to the IA Business (House 17)

  Being two separate businesses under one company.

The defendants ask the Court to answer as follows:

  I have received your note asking about counts 9, 10, and 11 and counts 12, 13, and 14. I refer you to my instructions at pages 76 to 91. It is for you the jury to determine if the government has proven each of the elements set forth in Counts 9 to 14 beyond a reasonable doubt.

The jury appears to have zeroed-in on an ambiguity that the defendants have urged the government to correct literally for years, going back to 2010. *See Memorandum of Law in Support of Supplemental Pretrial Motions on Behalf of Jerome O'Hara and George Perez*, dated March 16, 2012 (Document No. 222, "First O'Hara and Perez Motion") at 4[1] (discussing request for bill of particulars on April 8, 2010, as to false books and records counts). The defendants maintained their position through the first round of pre-trial motions, describing the potential for prejudice if the government did not specify, other than with generalities, the documents that formed the basis for each count. *See Memorandum of Law In Support of Daniel Bonventre's Motion for Severance and Certain Disclosures*, dated March 16, 2012 (Document No. 211), at 6-7; *First O'Hara and Perez Motion*, at 6-14. In substance, the defendants complained that the false books and records counts (what became Counts 9-14 in the government's last superseding indictment) did not make clear what specific documents were alleged to be false and why. *See id.*

After the government superseded and mooted those motions, the defendants again raised the argument in their next battery of motions. *See Memorandum of Law in Support of Supplemental Pretrial Motions By Jerome O'Hara and George Perez*, dated January 28, 2013 (Document No. 335) at 8-29; *Memorandum of Law In Support of Daniel Bonventre's Motion for Severance and Certain Disclosures*, dated January 28, 2013 (Document No. 327), at 8. Prior to trial, the defense proposed a verdict form that would have required the jury to particularize which documents it used to find the defendants' guilt as to Counts 9-14. *See* Document No. 451, at 7-12. Likewise, in October, the defense submitted detailed proposed jury instructions for Counts 9-14, and requested the identification of the specific documents alleged to have been falsified for each particular count. *See* Document 491, at 4, 12. The defense again raised these issues in February as the Court was finalizing its instructions and verdict form. *See* Document Nos. 673, 678, 683, 732, 741.

The ambiguity of the government's charges on the books and records counts and the jury's apparent confusion has long been in the making. While the defense has consistently attempted to rectify this issue, the government has refused to offer a cure. Instead, the government appears to have preferred the ambiguity so it could seek convictions on the breadth and scope of the overall fraud, and suggest that the defendants must have made and kept false records, but without specifying any particular records, what makes them false, how and why the defendants knew they were false, and whether they were maintained in the firm's capacity as a broker-dealer (Counts 9-11) or as an investment advisor (Counts 12-14).

Rather than arguing to the jury precisely how and why these counts were proven beyond a reasonable doubt (among other counts barely mentioned if at all), the government in rebuttal summation elected to bombard the jury with routine misstatements of the record, unfathomably prejudicial *non sequiturs* about Judge Motley, the Sopranos, the A-Team and bank

---

[1] Page numbers refer to the electronic pagination in the ECF header at the top of the page rather than the numeration at the bottom of the page, which sometimes differs.

2

robbers, the aggregate consequence of which we believe exacerbates the deficiencies in this case and casts doubt on the viability of any conviction that may result. To borrow from the government, the elevator to seventeen did not stop on the floor that provided any guidance at all about what Counts 9-14 actually allege, the documents on which they are based, the falsities they contain, and the reasons why they were false, and how the defendants knew of the specific falsities.

Our proposal answers the jury's specific questions with straight-forward, unremarkable and neutral guidance: the scope and meaning of Counts 9 to 14 raise questions for the jury to resolve, and on which it may convict only by finding guilt beyond a reasonable doubt on each element. By contrast, the government's proposed response to the jury's note, among other deficiencies, is advocacy. Apart from usurping the jury's function by suggesting the view that documents of either the broker-dealer or the investment advisory business may qualify as records of the other, it identifies particular categories of documents which, of course, are neither the point of the jury's note, nor the issue for which it seeks guidance. It is as if the government wishes the Court to give a mini government summation to solve a problem it created as a matter of strategy and elected not to cure at the appropriate time.

It is a basic legal principle that the party responsible for creating an ambiguity should not profit from it; that is, ambiguities are resolved against the drafter or the party that created them. Here, the party responsible for any confusion inherent in Counts 9 to 14 is the government, and it should not be permitted now to enlist the Court's help in explaining to the jury precisely how it can convict on Counts 9-14, after denying the defendants a fair chance at focusing on specific charged documents at trial. The government should have anticipated this quandary in drafting the indictment, responding to the defendants' repeated pretrial attempts to clarify, and addressing it fairly in summation. Having elected by its inaction to leave this pivotal question to the jury, in the jury's domain it must stay, without selective non-responsive language tipping the scales.

For these reasons, we respectfully urge the Court to answer the jury's note as we have proposed.

Respectfully submitted,

/s
Andrew J. Frisch

cc: All counsel

3