A F T E R N O O N   S E S S I O N

                              2:07 P.M.

            (In robing room)

            THE COURT:  Afternoon, everyone.  So we're ready to
begin and now, Mr. Krantz, were you requesting that this be a
sealed record, or do you just not want to be in front of the
witness?

            MR. KRANTZ:  Does not need to be a sealed record.

            THE COURT:  Okay.  Thank you.

            MR. KRANTZ:  Your Honor, I just wanted to call
something to the Court's attention which concerns us.  It's a
little bit of a day of accusations.  We're not looking to
belabor things, but from what I understand, during one of the
recent breaks, Agent Takla, who was in the stairwell with
Kimberly Yuhas of my firm, had a confrontation with her which
we view as inappropriate, which is to the effect of -- she was
holding the door for him, and it was just the two of them.  And
in a confrontational manner, he said to her words to the
effect:  The next time that your client's wife is in the
courtroom, she should not hug Mr. O'Hara when the jury can see
it.  Something to the effect of:  That's improper.

            I was not there, but Ms. Yuhas can speak for herself.
I'm told it was said in a hostile manner.  I think it was
probably in some reaction to the comment that Mr. Mehler made
about someone nodding a head.  Maybe that's what led to a

1   little loss of temper, but I do think it's just not appropriate
2   for an FBI agent to confront an associate of our firm in the
3   hallway, in the stairwell, about a legal concern.  That should
4   be done through proper channels.
5       He should tell the AUSAs.  The AUSAs can tell the
6   Court, if they wish.  I have no knowledge of the incident he's
7   referring to about a hug.  I don't know what he's talking
8   about.  I don't know whether it occurred or it didn't occur.
9   It was news to me, but that's not an appropriate way to deal
10  with the problem, and I think it was quite upsetting; so I
11  think we should put it on the record.
12      MR. JACKSON:  May I respond, your Honor?
13      THE COURT:  Yes, Mr. Jackson.
14      MR. JACKSON:  First, your Honor, as an initial matter,
15  the government certainly wish that there hadn't been any
16  offense taken at any comment.  We hope that everyone is all
17  right.  I hope that no one's tone was inappropriate.  I wasn't
18  there for that.
19      I disagree completely with Mr. Krantz's suggestion
20  that it's improper for a member of the prosecution team to tell
21  one of the members of the defense team -- and Ms. Yuhas is an
22  attorney, she's an attorney representing a client in this
23  case -- about activity in the courtroom that he perceives is
24  improper.  There's nothing in this allegation that suggested
25  that he engaged in any improper activity.

1          It's been a normal part of this trial for attorneys
2   and other members of the prosecution and defense team to
3   regularly communicate with each other.  A number of the defense
4   team people here have communicated regularly with Ms. Baskin,
5   the paralegal specialist.  That's normal.
6          THE COURT:  To reprimand her for perceived
7   improprieties?
8          MR. JACKSON:  Well, your Honor, to instruct them about
9   what they thought was improper.  I think that there have been
10  members of the defense team who have stated to Ms. Baskin,
11  asking her to take things down, reminding her about
12  highlighting of things in connection with what your Honor said.
13         And, your Honor, I want to raise a concern here, okay?
14  We have not, as a prosecution team, felt a need to raise every
15  single thing that occurs in this case with your Honor.  There
16  are many things that don't need to be raised with the Court.  I
17  think it was appropriate for Agent Takla to point out to a
18  member of the defense team, since we're talking about things
19  that I think are quite petty and based on nothing, to talk
20  about something which is highly improper which a number of the
21  FBI agents raised with me, but I chose not to -- I didn't want
22  to embarrass or make anyone uncomfortable and chose not to
23  bring it up with the judge because I thought that defense
24  counsel would recognize --
25         THE COURT:  Out with it.  Out with it.

1        MR. JACKSON:  It's the fact that one of the -- what

2   the FBI agents observed was that on at least one, and I think

3   they mentioned multiple occasions, when we came into the robing

4   room to discuss objections, there was interaction between the

5   family members of certain of the defense team and the

6   defendants at the table, which seemed designed perhaps to

7   elicit sympathy, but whatever the case may be, it was not

8   appropriate court conduct.

9        The specific incident that I think disturbed the FBI

10  agents, that Agent Takla was talking about, was apparently

11  Mr. Perez's wife, while we were in the robing room, coming to

12  the front of the courtroom, planting a kiss on the cheek of

13  Mr. O'Hara, generally demonstrating some sort of, like,

14  support, et cetera, in the presence of the jury.

15       And I think that the FBI agent's appropriately thought

16  that that was improper while court was in session, that it

17  could be misinterpreted or confused by the jury, and that it

18  should be reserved for when the jury is not in the courtroom.

19  And I think he raised that concern with a member of the defense

20  team.  There's nothing improper in that, and we object to any

21  suggestion otherwise.

22       MR. KRANTZ:  Your Honor, could I briefly respond to

23  that?

24       THE COURT:  Very briefly.

25       MR. KRANTZ:  If that occurred, and I have no idea if

1  it did, I would have no problem with telling Mr. Perez's wife
2  that when we're in the robing room, of course, there should be
3  no interaction with any defendant. That's self-evident.
4        If anyone from the prosecution team had asked me about
5  it, I would do that. If they said it to the Court, I would do
6  that. But it occurred two weeks ago, and to confront
7  aggressively Miss Yuhas in a stairwell about it is not
8  appropriate, and I couldn't disagree more with Mr. Jackson.
9  There's a way to do things here. Ms. Yuhas has never spoken to
10 Agent Takla for this entire trial. I think it's fairly
11 obvious, with all due respect to Ms. Yuhas, that I'm lead
12 counsel for Mr. Perez, and it seems very strange to do that.
13        THE COURT: All right. First, quite literally,
14 everybody in this room is going to take ten deep breaths, and
15 then I'll speak. Thank you. We're getting toward the end of
16 what has been a very challenging, very long and very stressful
17 in ways that are appropriate because it's serious and important
18 and, indeed, historic in its length and complexity trial. And
19 I think we would all do well, at this point, to default to
20 formality as opposed to informality, and default in
21 communications and raising issues lead counsel to lead counsel
22 and/or lead counsel to Court.
23        And if there is something that anyone on a team is,
24 you know, terribly upset about or thinks is inappropriate, it
25 would be best for that person to process it with their lead

counsel before raising it with anyone else. And it would be helpful that things not come from left field for anybody at any time.

When I say that court is in session and everyone is to remain quietly, I mean that. I mean everyone. And as you know, I started saying that when, early on, in a couple of pauses we had what I think I characterized as coffee klatch activity. And today I noticed that with the visiting delegation, who seemed to be into playing musical chairs and walking in and out all the time, when I walked out of the room for a minute, I came back and there were people all over the place. There were people from in front of the bar, some back there with them. There was talking going on, and I said: We're in session. Everybody be quiet.

So everybody talk to your clients, talk to your teams. When the jury is in the courtroom, other than to go back and forth to the bathroom, let's have no crossing of the bar of the well and nobody chatting or relaxing with anyone except insofar as it has to do with the case and it's among counsel and clients. And that level of formality is important for the jury, who otherwise sit there awkwardly like, you know, half spectators of the coffee klatch to which they're not invited, and it's appropriate for the dignity of the courtroom.

And if there ever is a conduct issue that can't be resolved politely and civilly among counsel, you know, bring it

1   to me in the robing room. But let's just do that, and
2   everybody give people the benefit of the doubt on goodwill.
3   Thicken up your skin, be formal, and we'll all get through
4   this, and continue to get through it at the high level of legal
5   work and thought and dignity that we've been able to maintain
6   so far.
7           MR. KRANTZ:  Thank you, your Honor.
8           MR. MEHLER:  Your Honor, I don't disagree with
9   anything the Court has said, and I'm not making a complaint but
10  rather a slight confession that I -- my informant got the wrong
11  prosecutor this morning, and I was wrong about that. And I
12  apologize to Mr. Schwartz. I will not give up the other
13  prosecutor and the conduct ended, and I never claimed
14  intentionality, but I did want to put that on the record.
15          THE COURT:  Thank you.
16          MR. JACKSON:  Your Honor, before we --
17          THE COURT:  Yes, Mr. Jackson?
18          MR. JACKSON:  Just based on the nature of the
19  conversation, we would ask the Court if this proceeding could
20  be temporarily sealed until the conclusion of the trial. I
21  think that it does not relate to the actual issues at play in
22  the trial, and I would not like any undue concern about these
23  matters to somehow improperly influence the case otherwise. So
24  we'd request temporary sealing of this record.
25          THE COURT:  Is there any objection?

1             MR. KRANTZ:  I have no objection.

2             MR. MEHLER:  No objection.

3             MR. RIOPELLE:  No objection.

4             MR. BRESLIN:  No objection.

5             THE COURT:  The request is granted.  This particular

6    conference is sealed until after the trial has ended and the

7    verdict has been received in order to avoid distraction.

8             MR. RIOPELLE:  Thank you, Judge.

9             THE COURT:  And Ms. Courtney will keep track of that

10   communication.  Mr. Breslin?

11            MR. BRESLIN:  Your Honor does seem to have sort of a

12   regular flow of guests coming in, and while the lawyers this

13   morning were especially aggressive in sort of asking questions,

14   and I want not to speak to them and be perceived as rude to

15   your Honor's guests and people who were here from another

16   country, perhaps some guidance as to what the Court's

17   preference would be for the people that come in here to observe

18   a portion of the trial and routinely at breaks will approach

19   counsel, as we take our biology breaks, with questions or

20   points of clarification.

21            THE COURT:  When the jury is in the room, the response

22   should be:  Judge considers court in session.  I can't have a

23   conversation.

24            MR. BRESLIN:  Understood.

25            THE COURT:  When the jury is not in the room, it's

Case 1:10-cr-00228-LTS   Document 991   Filed 05/14/14   Page 9 of 10
8833
E26PBON5                    S E A L E D

```
 1   whatever your comfortable with, as long as it's not scandalous
 2   and in violation of a local rule.
 3            MR. RIOPELLE:  That leaves me out.
 4            MR. BRESLIN:  I was this close to getting away.
 5            THE COURT:  And just so you know, I can't --
 6            MR. BRESLIN:  Well, but it's your courtroom.
 7            THE COURT:  We're the biggest ongoing show in town,
 8   and so when there are visiting delegations --
 9            MR. RIOPELLE:  That is a sad commentary.
10            THE COURT:  -- of 60 judges from Israel --
11            MR. BRESLIN:  They were from the Supreme Court
12   Israeli.
13            THE COURT:  Is it like the Supreme Court like here?
14            MR. BRESLIN:  No, they said, like, the Israeli --
15   there's a justice here from The Supreme Court.
16            THE COURT:  Yes.  So that's not inconsistent with my
17   understanding that there were 60 Israeli judges.  All right.
18   In any event, it's something that we do, and we are an example
19   of American justice at, as close as we can get to, the finest.
20   And so you just bear that in mind in our personal conduct and
21   interactions with them and what we have on our computer screens
22   where they can see and all of that.
23            MR. RIOPELLE:  That was me.  Mea culpa.
24            THE COURT:  So sometimes I get five minutes warning of
25   this, sometimes a little bit more, but when the jury are in the
```

(212) 805-0300

1   room, just everybody be quiet and that is best.  All right?
2           MR. BRESLIN:  Okay.
3           MR. KRANTZ:  Will do.
4           (Continued on next page)